**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GC2 INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | |
| International Game Technology PLC, | ) | **JURY TRIAL DEMANDED** |
| International Game Technology (IGT), | ) | |
| DoubleDown Interactive LLC, Masque | ) | |
| Publishing, WD Encore Software, DOE | ) | |
| Defendants 1-100, DOE Defendants 101- | ) | |
| 2,000,000 | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, GC2 Incorporated ("GC2"), by and through its undersigned counsel, as and for its complaint for copyright infringement, false copyright management information, and consumer fraud against Defendants International Game Technology PLC ("IGT PLC"), International Game Technology ("IGT"), DoubleDown Interactive LLC ("DoubleDown"), Masque Publishing ("Masque"), WD Encore Software ("Encore"), DOE Defendants 1-100 ("DOE DFT Category 1 IGT Interactive Casino Customers"), and DOE Defendants 101-2,000,000 ("DOE DFT Category 2 End Users"), alleges as follows:

1.      This copyright infringement case involves Defendants' widespread unlicensed copying, use, and distribution of copyrighted artwork and graphics belonging to Plaintiff GC2. Although IGT has characterized its various infringing uses of GC2's copyrighted works as "without rights" and having "slipped through the cracks," the evidence will reveal a knowing and intentional unlicensed use.  In fact, Defendants' knowing, intentional, and extremely profitable use of Plaintiff's artwork and graphics continues through at least the date of the filing of this

matter despite their being on notice that such use is unauthorized. The evidence will further reveal that Defendant DoubleDown, through their "Terms of Use," and via their reckless disregard for GC2's copyright rights and rightful attribution, has fraudulently attempted to saddle about 1.7 million daily users of IGT's DoubleDown Casino with liability for the unlicensed content. In any event, amicable attempts to resolve this dispute without court involvement have failed, which is why GC2 has been forced to seek relief through the court.

## I.      Summary of the Case

2.      **Copyright Infringement.** GC2 seeks injunctive relief, impoundment, a complete accounting, and monetary relief (damages, direct and indirect profits) for the direct, contributory and vicarious copyright infringement under 17 U.S.C. §101, *et seq;* of GC2's Copyrighted Works (as described below) by Defendants and DOE Defendants. Copyright infringement arises as a result of Defendants' and Doe Defendants' unlicensed use of certain GC2 copyrighted video slot machine artwork and 2d graphics and/or unauthorized and unlicensed derivatives thereof (hereinafter collectively referred to as "GC2 Copyrighted Works") in several areas, including but not limited to:

**a)**      Internet Wagering Use (*See*, e.g. Exhibit 23-27[1]);

**b)**      Social Gaming Double Down Casino Website (*See*, e.g. Exhibit 28-32);

**c)**      Social Gaming Double Down Casino Facebook (*See*, e.g. Exhibit 33-37);

**d)**      Social Gaming Double Down Casino Mobile links to Apple, Android, GooglePlay, and Amazon.com (hereinafter Amazon) (*See*, e.g. Exhibit 38-40);

**e)**      Social Gaming Double Down Casino Apple Application (*See*, e.g. Exhibit 41-45);

**f)**      Masque Publishing Website Download (*See*, e.g. Exhibit 46-49);

**g)**      Masque Publishing home Pc/Mac computer physical CD & packaging (*See*, e.g. Exhibit 50-55);

---

[1]Any exhibits containing Page Vault Captures of online materials are provided along with the Page Vault authentication information.

**h)**     Amazon sales of Masque products (See, e.g. Exhibit 56-58);

**i)**     Encore Website Download (See, e.g. Exhibit 59-60);

**j)**     Encore computer physical CD & packaging (See, e.g. Exhibit 61-65);

**k)**     Amazon sales of Encore Products (See, e.g. Exhibit 66-67);

and any other unlicensed wagering or non-wagering use that may hereinafter be discovered.

3.     Defendant IGT, through its representative Todd Nash, has already acknowledged that IGT's use of GC2 Copyrighted Works in this manner is not licensed. *See* Exhibit 1. Quoting IGT from an email dated April 18, 2016, IGT has admitted:

> "When we came across this list of games we realized that we did not have all the rights and wanted to explore getting them. Upon further review, we have realized that somehow this gap in rights slipped through the cracks and these games were brought to interactive." (Exhibit 1, April 18, 2016)

4.     IGT, through Nash, admitted that the unlicensed GC2 Copyrighted Works were Pharaoh's Fortune, Coyote Moon and Kitty Glitter. (Exhibit 1.)

5.     As alleged in detail below, research after contact from Nash has revealed many other unlicensed uses of GC2 Copyrighted Works including Kingpin Bowling, Lucky Lion Fish, Festival Fantastico, and Wild Goose Chase, in addition to Pharaoh's Fortune and Coyote Moon.

6.     Efforts to obtain an accurate accounting from IGT of the name and number of unlicensed GC2 Copyrighted Works, and the various forms of IGT's unlicensed use, have been unsuccessful, necessitating Court involvement.

7.     Efforts to obtain compensation from IGT for the unlicensed use of GC2 Copyrighted Works, have been unsuccessful, necessitating Court involvement.

8.     **False Copyright Management Information.** GC2 further seeks injunctive relief, an accounting, and monetary relief, including statutory damages, actual damages, direct and indirect profits, costs and attorneys' fees for IGTPLC's, IGT's and DoubleDown's knowing, and

with the intent to induce, enable, facilitate or conceal infringement, provision of false copyright management information for certain GC2 games, and/or for IGT's distribution or import of false copyright management information under 17 U.S.C. § 1202-§ 1203.

9.      A true and correct copy of DoubleDown's Terms of Use is attached as Exhibit 2.

10.     IGTPLC, IGT, and DoubleDown falsely state in the Terms of Use for DoubleDown Casino that:

> "DoubleDown and/or its licensors and affiliates **own all right, title, and interest**, **including copyrights**, trademarks and other intellectual property rights, in and to all the Services Content." (Emphasis Added). Exhibit 2.

11.     IGTPLC, IGT, and DoubleDown falsely state in the Terms of Use for DoubleDown Casino that:

> "DoubleDown and its licensors **retain all rights in the content** within the Services (including, but not limited to, applications, software, designs, **graphics**, texts, information, **pictures, video**, sound, music, and other files, and their selection and arrangement) (collectively the "Content")". (Exhibit 2 (emphasis added).

12.     As described below, IGT places IGT's Trademark (and not GC2's Registered Mark  or copyright management information) on the unlicensed GC2 Copyrighted Works.

13.     These representations are false with respect to the video artwork and 2D graphics for at least two GC2 Copyrighted Works, Pharaoh's Fortune and Coyote Moon.  Based on IGT's admission, the representations are false with respect to the Kitty Glitter work as well.  Discovery is likely to reveal additional use and distribution of false copyright management information by these defendants and/or defendants' customers.

14.     IGT, Masque and Encore provide false copyright management information by placing the IGT trademark and not the GC2 Registered Mark on the GC2 games Kingpin Bowling, Lucky Lion Fish, Festival Fantastico, Wild Goose Chase, Pharaoh's Fortune and Coyote Moon.

15.     On information and belief, a reasonable opportunity for discovery will likely show additional instances of these Defendants provision and distribution of false copyright management information.

16.     **Consumer Fraud Act.** GC2 further seeks injunctive relief, an accounting, and monetary relief (damages, direct and indirect profits), punitive damages, costs and attorneys' fees arising out of IGTPLC, IGT, and DoubleDown's bait and switch false licensing scheme wherein a) DoubleDown places unlicensed GC2 works on its virtual casino, b) withholds the identity of the actual owners/rights holder, c) baits consumers to use the unlicensed GC2 works by falsely representing that DoubleDown owns or holds rights that it can license to consumers/end users, d) proceeds to license those "rights", e) then requires the consumer/end user to assume all liability for use of the unlicensed works, and f) to indemnify DoubleDown for all damages.  The bait and switch false licensing scheme constitutes actionable consumer fraud under the Illinois Consumer Fraud Act.  815 ILCS 505/1, *et seq.*

17.     Defendants' acts are willful and intentional.

## I.      JURISDICTION AND VENUE

18.     The Court has jurisdiction under 17 U.S.C. § 101 *et seq.* (Copyright Act) pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction) and 28 U.S.C. § 1338(a) (any act of Congress relating to copyrights). The Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and/or 28 U.S.C. § 1400(a).

20.     Each Defendant, and on information and belief, each DOE Defendant is subject to personal jurisdiction in this judicial district with respect to this civil action.  Each Defendant has

transacted business in this district in connection with the GC2 Copyrighted Works and/or their acts of infringement are causing damage and injury to GC2, a resident of this district.

## II. THE PARTIES

### A. GC2 Incorporated

21. GC2 is a privately-held Illinois corporation with its principal place of business in Hawthorn Woods, Illinois.

22. GC2 is a developer of wagering games primarily for video reel slot machines which are distributed by third party gaming industry manufacturers. GC2 is known for producing high quality games featuring beautiful graphics with detailed layered artwork and entertaining game play.

23. GC2 creates and owns certain game graphics and artwork features which GC2 licenses to others, including licensing certain limited rights to Defendant IGT, in connection with the distribution of certain GC2-approved games with the GC2 Registered Mark and attribution on them.

24. GC2 is the author and owner of the copyrights in the video artwork and 2D graphics for a number of games, including, but not limited to those games on the following list:

| | |
|---|---|
| Kingpin Bowling | Party Animals |
| Pharaoh's Fortune (3x3 & 3x5) | Party Animals (Party Time) |
| Pharaoh' s Fortune (AVP) | Win A Latte |
| Shake Your Booty | Coyote Moon |
| Lucky Lionfish | Prairie Party (Party Time) |
| Lucky Lionfish (AVP) | Pharaoh's Gold |
| Lucky Lionfish (Fort Knox) | Cake Walk |
| Festival Fantastico | Maid of Money |
| Party Fantastico (Party Time) | Penny Palace |
| Wild Goose Chase | Gravy Train/Silver Express |
| Wild Goose Chase (Fort Knox) | Super Money Storm |
| Space For Rent | Nefertiti |
| Space For Rent (AVP) | Kitty Glitter |

Wildwood                                   Wilds Gone Wild
Playaz Club
Spin Cycle

25.     Each work above is an original work of authorship of GC2.

26.     To date, certain of the games on this list have been involved in or are believed, based upon information and belief, to be involved in the unlicensed use by Defendants and/or the Doe Defendants of GC2's copyright rights or GC2's exclusive rights to make derivative works. These games include: Pharaoh's Fortune, Coyote Moon, Lucky Lion Fish, Festival Fantastico, Wild Goose Chase, and Kingpin Bowling.  IGT's Todd Nash also identified Kitty Glitter as an unlicensed use.  Investigation may reveal additional works.

27.     Filed concurrently herewith on physical disk are examples of GC2's video artwork and 2D graphics for each of these works, attached as Exhibit 3 (Pharaoh's Fortune), Exhibit 4 (Coyote Moon), Exhibit 5 (Lucky Lion Fish), Exhibit 6 (Festival Fantastico), Exhibit 7 (Wild Goose Chase), Exhibit 8 (Kingpin Bowling) and Exhibit 9 (Kitty Glitter).

28.     Each of the works in Exhibit 3-9 are original works of authorship of GC2.

29.     GC2 has complied with the statutory requirements for registration and has applied for and owns Copyright registrations for several of the games, including: Pharaoh's Fortune, Coyote Moon, Lucky Lion Fish, Festival Fantastico, Wild Goose Chase, Kingpin Bowling and Kitty Glitter.

30.     Copies of these registrations as reflected in the Copyright Office's records are attached as Exhibits 10-16 (hereinafter "Registrations").

31.     The registrations for the Copyrighted Works are valid and enforceable.

32.     GC2 is also the owner of all rights in the federally registered trademark, GC2, (the "GC2 Registered Mark") which is registered in the United States (Reg. No. 3,031,361) and which GC2 requires to be placed on all GC2-approved games. (Exhibit 17).

33.     GC2 did not know about, authorize, approve or license the Defendants' use of the GC2 Copyrighted Works in the matter at issue in this Complaint before they were used by Defendants.

**B.      International Game Technology PLC (IGTPLC)**

34.     Defendant IGTPLC is a public limited company organized under the laws of England and Wales, has its corporate headquarters in London, England, and its operating headquarters in Rome, Italy, Providence, Rhode Island, and Las Vegas, Nevada.

35.     IGT PLC is the successor to GTECH S.p.A, a societia per Azioni incorporated under the laws of Italy, and the sole shareholder of International Game Technology (IGT), a Nevada corporation.

36.     IGTPLC does business in this district through agreements with the Illinois Lottery, and through its wholly owned subsidiaries IGT and DoubleDown Interactive LLC.

37.     In its recent SEC Form 20-F filing, IGTPLC describes the interactive and social gaming segment of its business as including products such as DoubleDown Casino, Online Casino, and another called Platform. (Relevant Portions of the SEC Form 20-F filing are attached as (Exhibit 22.)

38.     In its recent SEC Form 20-F filing, IGTPLC describes DoubleDown Casino as follows: "DoubleDown Casino, which is IGT PLC's online social gaming casino offering, operates largely through Facebook, Apple's IOS platform and Google Android's platform."

(Exhibit 22.)  This filing also describes DoubleDown Casino as a product of IGT PLC and IGT. (Exhibit 22).

39.     IGTPLC represents in its Form 20-F Filing that its North American Gaming and Interactive segment generates revenue from social gaming.  It states that "social gaming revenue is derived from customer's purchase of virtual currency for use in non-wagering interactive games (play for fun) played over the internet".  (Exhibit 22.)

40.     IGTPLC represents in its Form 20-F that "Interactive revenues are principally generated from online social gaming and online real money products and services."  (Exhibit 22.)

**C.     International Game Technology (IGT)**

41.     IGT is a Nevada corporation with a principal place of business in Reno, Nevada and is wholly owned by IGTPLC.

42.     IGT is registered to do business in Illinois and in this district, and has done business in this district directly and through its wholly owned subsidiary DoubleDown Interactive LLC.

43.     IGT had a former game development relationship with GC2, a relationship related to the games referenced in paragraph 24.

44.     As a result of the past relationship with GC2, IGT is in possession of and had access to the GC2 Copyrighted Works.

45.     Pharaoh's Fortune, Coyote Moon, King Pin Bowling, Lucky Lion Fish, Festival Fantastico, Wild Goose Chase and Kitty Glitter are among the GC2 Copyrighted Works in IGT's possession.

46.     IGT admits its knowledge of GC2's ownership rights in the video artwork and 2D graphics for these games (a) in the agreements between them (Exhibit 18-20 filed concurrently

herewith under seal), (b) in IGT's advertisement of the land based games (Exhibits 73); and (c) on the physical land based games. (Exhibits 68-72.)

47. IGT represents in its SEC 10-K filing that IGT was the entity that introduced its content onto the DoubleDown Casino platform. (See Exhibit 21, p. 32.)

48. GC2 games Pharaoh's Fortune, Coyote Moon, and Kitty Glitter appear on the DoubleDown Casino platform. (*See*, Exhibits 30-32, 35-37, 43-45.)

49. IGT has also facilitated the access, copying, public display, and distribution of several of the GC2 Copyrighted Works into this district directly through at least the DoubleDown Casino, and through relationships with co-Defendants Masque and Encore Software.

**D.      DoubleDown Interactive LLC (DoubleDown)**

50. Defendant DoubleDown is a Washington Corporation with a principal place of business in Seattle, Washington.

51. DoubleDown operates a device known as a virtual casino called DoubleDown Casino.

52. DoubleDown does business in this district, and has represented in other recent Court filings that (a) its DoubleDown Casino has been accessed from Illinois, and/or (b) customers or end users bought chips from DoubleDown from an Illinois IP address. *See* Civil Action No. 15-cv-04301, Docket # 59.

53. In order to access DoubleDown Casino, such Illinois residents would have to agree to DoubleDown Terms of Use. (See Exhibit 2.)

54. DoubleDown Casino has several of the GC2 Copyrighted Works (or derivatives thereof) on its virtual casino, and the unlicensed GC2 Copyrighted Works in question are

accessible from Illinois and have been accessed and used in Illinois. (*See e.g.* Exhibits 30-32, 35-37, 43-45.)

55.     DoubleDown's Terms of Use are central to the bait and switch licensing scheme at issue in the Consumer Fraud count of this complaint. (Exhibit 2.)

**E.      Masque Publishing Inc. (Masque)**

56.     Defendant Masque is a Colorado company with a principal place of business in Lone Tree, Colorado.

57.     Masque holds itself out as an entertainment software publisher and developer specializing in family entertainment and casino games.

58.     Masque maintains a website https://www.masque.com/ that publicly displays and permits the downloading of certain of the GC2 Copyrighted Works at issue. (*See* Exhibits 46-49.)

59.     Masque also sells and distributes copies of the GC2 Copyrighted Works by physical CD/DVD from this website and from other websites, such as Amazon. (*See* Exhibits 50-55.)

60.     Masque sells and ships purchases of the GC2 Copyrighted Works at issue into this District directly or through Amazon. (*See*, Exhibits 56-58.)

**F.      WD Encore Software LLC (Encore)**

61.     Defendant Encore on information and belief is a Minnesota company with a principal place of business in Eden Prairie, Minnesota and North Syracuse, New York.

62.     Encore holds itself out as a provider of pre-packaged software services.

63.     Encore maintains a website http://www.encore.com/c-32-casino-games.aspx that permits the downloading of certain of the GC2 Copyrighted Works at issue by end users in this District.  (*See* Exhibits 59-60.)

64.     Encore also sells and distributes copies of certain of the GC2 Copyrighted Works by physical CD/DVD from Encore's website and from other websites, such as Amazon.  (*See* Exhibits 61-67.)

65.     Purchases of games containing the GC2 Copyrighted Works at issue have been sold and shipped into this District from Encore either directly or through Amazon. (*See*, Exhibit 61-67.)

## G.     DOE DFT Category 1 (IGT Interactive Casino Customers)

66.     IGT has represented, and on information and belief, a reasonable opportunity for discovery will show that IGT and/or IGT PLC have copied, displayed and distributed the GC2 Copyrighted Works (or derivatives thereof) through their "Interactive platform" to unnamed and unidentified casinos in the US and worldwide.  (Exhibit 25.)

67.     On information and belief, a reasonable opportunity for discovery will show that there are potentially 38 Interactive "rgs" Casino Customers.  Discovery is also likely to identify additional and other categories of interactive casino customers that have been provided with unlicensed content containing GC2's Copyrighted Works..

68.     On information and belief, a reasonable opportunity for discovery will show that the IGT interactive Casino Customers copy, play and/or re-distribute certain of the GC2 Copyrighted Works at issue in this case to their respective customers/end users through use of this platform.

69.     Since the identity of the Interactive casino customers (that are in possession of the unlicensed GC2 Copyrighted Works) is solely and uniquely in IGT's and IGT PLC's knowledge, custody and control, discovery is necessary before such customers can be specifically named as defendants.  Thus they are identified herein as DOE DFT Category 1 (IGT Interactive Casino Customers) (1-100).

**H.     DOE Defendants Category 2 (End Users of Defendants' products and services)**

70.     On information and belief, a reasonable opportunity for discovery will show that over 18,000 Illinois individuals or with an Illinois IP address have accessed and used the DoubleDown Casino.  Discovery is likely to identify many more.

71.     IGT's form 10-K filings identify as many as 1.785 million daily users of the DoubleDown Casino as of 2014.  Discovery is likely to show that the daily users have increased between the date of the filing and the filing of this complaint.

72.     Defendants IGTPLC, IGT, DoubleDown, Masque, and Encore and their service providers Facebook, Amazon, Apple, Android and GooglePlay are solely and uniquely in possession of the identities of the end users that have used, downloaded and/or accessed the products involving the GC2 Copyrighted Works.

73.     Since the identities of the end user customers are solely and uniquely in the respective Defendants knowledge, possession, custody and control, discovery is necessary before such End User customers can be specifically named as defendants.  Thus they are identified herein as DOE Defendants Category 2 (End users of Defendants' products and services).

74.     On information and belief, a reasonable opportunity for discovery will show that the DOE End User Customers use and download of the GC2 Copyrighted Works creates an unauthorized copy of the copyrighted work and thus requires a license for such use.  Unlicensed

copying and use by End Users through the Defendants' various platforms (Facebook, Apple, Android, Google Play, and Amazon and IGT Interactive Services) constitutes copyright infringement by both the end user and the platform.

**Facts Common to All Counts**

**III.      GENERAL BACKGROUND OF THE PARTIES**

75.      GC2 and Defendant IGT had a prior relationship.  During the parties' prior relationship, GC2 developed many of Defendant IGT's best-selling video slot machine games. Defendant IGT became one of the world's leading manufacturers and distributors of video reel slot machine games in part as a result of obtaining rights to license, sell and distribute GC2's games.

**A.      Prior Agreements Between IGT And GC2**

76.      GC2 first entered into an initial exclusive game development agreement with IGT in January 2003 (the "Initial Prior Agreement").  A copy of the Initial Prior Agreement is filed concurrently herewith under seal and will be referred to herein as Exhibit 18.

77.      During the calendar year periods 2003 through 2007, inclusive, the Initial Prior Agreement ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

78.      The Initial Prior Agreement and Prior Amendments were valid and enforceable.

79.      GC2 created and developed originally designed and demonstrably proprietary games featuring GC2's Copyrighted Works for implementation and distribution by IGT as

hosted on IGT's land-based video slot gaming platform and machines ("Projects"). (See Paragraphs 23 and Exhibit 18, Appendix A.)

80. Pursuant to the Initial Prior Agreement and, by reference, each Prior Amendment, GC2 agreed ████████████████████████████████████████

████████████████████████████

81. Each Project included ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ (Exhibit 18, § 3.14.)

82. Exhibit 3 to 9 shows the examples of the video graphics and 2d artwork provided for the GC2 Copyrighted Works.

83. Under the Initial Prior Agreement and, by reference, each Prior Amendment, IGT agreed to ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ (Exhibit 18, § 3.15.)

84. The Initial Prior Agreement and, by reference, each Prior Amendment, required IGT to ████████████████████████████████████████████

████████████████████████████ Exhibit 18, § 3.16.

85. Attached as Exhibit 68-72 are photographs of GC2 land based games presently in casinos in Nevada showing the GC2 mark.

86.     Attached as Exhibit 73 are copies of IGT advertisements for the land based games giving GC2 the required attribution in the copyright management information section of the advertisement.

87.     Under the Initial Prior Agreement and, by reference, each Prior Amendment, each party ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ (Exhibits 18-20, §§ 1.13 and 4.1.)  Accordingly, GC2 owns all rights in and to the GC2 Copyrighted Works.

**B.      Termination of Prior Agreements**

88.     The Initial Prior Agreement and, by reference, each Prior Amendment, provided IGT with ██████████████████████████████████████████████████████████████ ██████████

89.     IGT ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████

90.     On or about January 3, 2007, the parties ██████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████ Exhibit 20, filed concurrently herewith under seal, is a true and correct copy of Prior Amendment #7.

**C.      Prior Amendment #7**

91. Prior Amendment #7 granted IGT, ████████████████████████

████████████████████████████████████████████████████

████████████████████████ Exhibit 20, §1.

92. The definition of gaming machine in Prior Amendment #7 ***specifically excluded***

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ (Exhibit 20) (Emphasis Added)

93. The definition of gaming machine in Prior Amendment #7 ***specifically excluded***

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ (Exhibit 20, § 1.) (emphasis added.)

94. Prior Amendment #7 further provided that, ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ (Exhibit 20, § 3.)

95. Furthermore, Prior Amendment #7 provided that ████████████████████

████████████████████████████████████████████████████

Exhibit 20, § 5.

## IV. ACTS OF INFRINGEMENT

96. As the owner of the Copyright rights under 17 USC §106, GC2 has the exclusive

right to: **Make Copies** (17 USC §106 (1) to reproduce the copyrighted work in copies or

phonorecords); **Create Derivative Works** (17 USC §106(2) to prepare derivative works based upon the copyrighted work;); **Distribute** (17 USC §106(3) to distribute copies or phonerecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;); **Perform the Works Publicly** (17 USC §106) (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;); and **Display the Works Publicly** (17 USC §106(5)) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly).

**A.      Unlicensed Mobile, On-Line And Internet "Real Money" Gaming.**

97.      IGTPLC and IGT describe "Interactive Gaming" (or iGaming) as that which "enables game play **via the internet for real money** or for fun (Social)".   (Exhibit 23-24) (emphasis added).   IGTPLC describes interactive gaming as one of the four segments of its business.

98.      Internet gaming was expressly excluded from the license in Prior Amendment #7. (Exhibit 20.)

99.      IGT, through its representative Todd Nash, IGT's Director of Content Partners, admitted that IGT does not yet have rights to use the GC2 Copyrighted Works in its interactive business.  (See Exhibit 1.)

100.      IGTPLC SEC Form 20-F filing provides a description of its interactive business. Below is a quote from the pertinent portions of IGTPLC's description (emphasis added in bold):

**INTERACTIVE & SOCIAL GAMING**

Interactive gaming (or iGaming) enables game play via the Internet for real money or for fun (social). IGT designs, manufactures, and distributes a full suite of award winning

customizable products, systems, and services for Internet gaming, including: Internet poker, table games, **slots,** bingo, iLottery and Gaming Management Systems (''GMSs''). IGT PLC holds more than 24 interactive gaming licenses worldwide. IGT PLC also acts as a **mobile casino operator** through its subsidiary, Probability plc. IGT PLC's diverse interactive customer base in iGaming includes Lottomatica (Italy), Veikkaus (Finland), LNB (Belgium), OLG (Canada), William Hill (UK), the Illinois Lottery, the Kentucky Lottery, and the Georgia Lottery.

**Products**

**DoubleDown Casino.** IGT's DoubleDown online casino-style social gaming operation provides a unique opportunity for casino entertainment to reach a broader audience, while complementing IGT's other existing offerings and the core casino audience. Our **North America based online social gaming casino** generates revenues from the sale of virtual casino chips to players for use within the DoubleDown Casino for additional play or game enhancements. Unlike many other online casino-style social games where each game is a unique application, **DoubleDown operates as a single casino application with multiple games where all games are available to the player within a single application. DoubleDown Casino is available online through Facebook and www.DoubleDownCasino.com on a variety of personal computer and mobile devices.**
\*\*\*

**Online Casino.** IGT PLC's online casino products include a wide selection of table **and slot games** with single, multiplayer and tournament play. IGT PLC casino content includes **branded titles and select third party content. Available in download, instant, or mobile formats and as play-for-fun or real money solutions, casino games are available anytime, anywhere, and on any device**
\*\*\*

**Platform. IGT PLC's iGaming systems cover every channel (retail, mobile and web) and vertical from a 360-degree view of the player, web design and an engine to accelerate more game content to customers' websites.** IGT PLC's Interactive Platforms offering includes Player Account Management, the master of player profiles and player accounts, which pulls all player, reward, and financial activity together in one place and provides a one-stop integrated CRM system that allows for advanced marketing and analytical capabilities. Include a highly reliable and secure payment system that allows for a wide range of different payment methods across continents and a dynamic web application framework providing cross-cutting functionalities such as authentication and authorization. **IGT Interactive also includes IGT Connect, which is the integration layer of the IGT PLC Player Account Management system and includes game integration and network layers. IGT Connect integrates with third party player account management systems, third party game engines, and regulatory systems.**

**Remote Games Server. IGT PLC also offers a Remote Games Server, which is a fast gateway to extensive content.** For **customers operating their own or third party systems**, IGT PLC is able to provide a simple plug-and-play approach to all of IGT PLC's and IGT PLC's premium suppliers' content.

101.    Discovery is necessary to determine which of GC2's Copyrighted Works have been included as part of the unlicensed content for these interactive offerings by Defendants.

102.    IGT identifies its "Interactive Gaming" offerings on its website.  (See Exhibits 23-25.)

103.    IGT has described on its website one of its interactive products or service called remote gaming services or "rgs".  (Exhibit 25.)

104.    For this service IGT states "IGT Casino rgs delivers a steady stream of exciting brands and classic titles, along with a feature-rich system, all powered by the world leader in casino games." (Exhibit 25.)

105.    On IGT's webpage, IGT lists a number of IGT Casino "rgs partners" including bet365, Betit, bwin.Party, Eurobet, EveryMatrix, GameSys, PaddyPower, Genting, Golden Nugget,  Borgata, Kerching, BetVictor, Lottomatica, Loto Quebec, Mecca Bingo, Money Gaming, Mr. Green, NetBet, NetPlay, Football Pools, Sisal, Sky Vegas, SpinandWin,  Totesport, Vera John, Caesars Interactive Entertainment, Ladbrokes, BCLC, William Hill, Gaming Realms, BGO , Casino Euro, Grosvenor Casino, Danske,  Spil, and Betfred.  (Exhibit 25.)

106.    On information and belief, a reasonable opportunity for discovery will show that IGT and/or IGTPLC delivered copies of one or more unlicensed GC2 Copyrighted Works to one or more of the listed IGT Casino "rgs" and the IGT Casino "rgs" customers thereafter deliver one or more copies of unlicensed GC2 copyrighted works to their end users.

107.    An example of unlicensed copying, distribution, display and use of the GC2 Copyrighted Works by "IGT rgs Casino partners" is seen in connection with IGT's listing of

"Caesars Interactive Entertainment." IGT's website provides a link to the Caesars Interactive website. (Exhibit 26 - 27.)

108.    Customers who click on the IGT link to Caesars Interactive have the ability to play unlicensed GC2 Copyright Works online or on a mobile device, (*See e.g.* Pharoah's Fortune") for real money. (Exhibit 26 - 27.)

109.    Below and at Exhibit 26 - 27 hereto is a screen shot of the GC2 Copyrighted Work Pharoah's Fortune on this site.



110.    This use is virtually identical to the GC2 Copyrighted Works for the Pharoah's Fortune game. (Compare Exhibit 25 – 26 to Exhibit 3.)

111.    GC2's trademark and Copyright Management Information is not provided on Caesar's use of the Pharoah's Fortune Game. (Exhibit 25 - 26.) Instead, on information and belief, IGT provides false copyright management information.

112.    GC2 did not license Caesars Interactive Entertainment, nor did it license IGT, with any copyright rights in the Pharoah's Fortune game for use on this on line or mobile casino, let alone for wagering.

113.    Exhibit 20 specifically excludes the right to use the Pharaoh's Fortune game with internet gaming (for wager).

114.    On information and belief, a reasonable opportunity for discovery will show that when an end user of the interactive casino (e.g. Caesars) plays a game containing the unlicensed GC2 Copyrighted Work, the end user makes an unauthorized additional copy of the GC2 Copyrighted Work.

115.    On information and belief, a reasonable opportunity for discovery will show that the other IGT Casino rgs partners listed in Exhibit 25 have unlicensed GC2 Copyrighted Works or unlicensed derivative works of the GC2 Copyrighted Works, and are using such works for real money gambling through the internet, online or through a mobile device.  IGT is uniquely in possession of the identity of the customers being provided with GC2 Copyrighted works.

116.    Discovery may show additional ways in which these parties directly infringe the GC2 Copyright rights through wagering use through the interactive segment of their business described in paragraph 100.

**B.    Unlicensed Non-Wager Use**

117.    Exhibits 26, 28-32, 33-38, 46-49, 56-58, 66-67 are true and correct copies of Page Vault captures of on-line information with the accompanying Page Vault authentication information.

118.    Exhibits 26 – 68 show examples of unlicensed non-wager use of one or more GC2 Copyrighted Works.

119.    Discovery is likely to identify more works or additional use, display and distribution.

120.     Pharaoh's Fortune and Coyote Moon are games that exist on the DoubleDown Casino various locations, including the DoubleDown Casino Website, DoubleDown Casino's Facebook Page, Google Play, Amazon, and Apple and Android Apps.  (Exhibit 28 - 45.)

121.     GC2 games are listed under the heading "Popular Games."  (See Exhibits 29, 34 and 42.)

122.     Below and at Exhibit 43 are screen shots of examples of the unlicensed use of the Pharaoh's Fortune GC2 Copyrighted Works on the DoubleDown Casino Apple App.



123.     The use is virtually identical to the GC2 Copyrighted Works for the Pharaoh's Fortune Game. (Compare Exhibit 43 to 3.)

124.     Below and at Exhibit 44 are screen shots of examples of the unlicensed use of the Coyote Moon GC2 Copyrighted Works on the DoubleDown Casino Apple App.



125.     The use is virtually identical to the GC2 Copyrighted Work for Coyote Moon. (Compare Exhibit 44 to Exhibit 4.)

126.     The unlicensed uses are virtually identical to GC2's Copyrighted Works for Pharaoh's Fortune and Coyote Moon.

127.     GC2's Mark and Copyright Management Information do not appear when the works are used.

128.     False Copyright Management Information is provided by DoubleDown in its Terms of Use, and by omission of the GC2 Registered Mark and inclusion of the IGT mark.

129.     IGT PLC, IGT and DoubleDown's use of the games (e.g. Pharaoh's Fortune, and Coyote Moon) on the DoubleDown Casino various locations, (including the DoubleDown Casino Website, Facebook Page, Google Play, Amazon, and Apple and Android Apps, and the various Interactive Services) are for "Social Gaming" and non-wagering use.

130.    Pharaoh's Fortune and Coyote Moon, are two popular GC2 created games where GC2 owns the copyrights in the video artwork and 2d graphics.

131.    GC2 did not license any of the defendants to use GC2's Copyrighted Works in these games for "Social Gaming" and non-wagering use.  (Exhibit 20.)

132.    IGT knew it was not licensed by GC2 for non-wagering use, or social, mobile or internet use of any GC2 game.  (*See* Exhibit 1, Exhibit 20.)

133.    IGT also knows that GC2 owns the copyright rights in the video artwork and 2D graphics for the Pharaoh's Fortune and Coyote Moon games.  (*See* Exhibits 1, 20, 69-74.)

134.    IGT was similarly not licensed to make derivative works of the Pharaoh's Fortune or Coyote Moon games for non-wagering use, or social, mobile or internet use.  (*See* Exhibit 20.)

135.    In addition to the wagering use on the internet described in Paragraphs 97 to 116 above, IGT PLC, IGT and IGT's rgs partners also use the unlicensed GC2 Copyrighted Works for social non-wager use over the internet.  (See Exhibits 26 - 27.)  The screen shot shows that this IGT RGS partner offers the Pharaoh's Fortune Game with the unlicensed GC2 Copyrighted Works for "play for free" as well as for money.  (Exhibit 27.)



136.     This use is virtually identical to GC2 Copyrighted Work in Pharaoh's Fortune Game.  (Compare Exhibits 26 - 27 to 3.)

137.     On information and belief, discovery is likely to show that, similar unlicensed non-wagering uses are being offered through the interactive services described in paragraph 100.

138.     IGT's website also describes other interactive services that discovery is likely to show use the unlicensed GC2 Copyrighted Works.  (Exhibits 23 -25.)

139.     For example, among the described services IGT identifies a "DoubleDown Casino Partner Program".   In connection with this program, IGT states: "DoubleDown Casino brings players a full suite of games. With more than 50 popular Slot games, daily Slot Tournaments, Game King™ Video Poker, Bingo, Poker, Player's Suite Blackjack, and Roulette, players enjoy the thrill of winning wherever they go." (Exhibit 23-25.)

140.   IGT also represents on its website: "As a feature of IGT Advantage™, the DoubleDown Casino Partner Program offers Carded Players a reason to stay connected to the property by earning casino points for playing on your website and the DoubleDown game applications. In addition to player rewards, casino operators also receive and own extensive player data, which is integrated into the Patron Management system. Find out who's playing, what they're playing, and how often with the DoubleDown Casino Partner Program." (Ex 23-25.)

141.   IGT describes its "Play for Fun" IGT Interactive products and services on its website. (Exhibits 23 – 25.)

142.   IGT states on the Interactive section of the website "When you choose IGT's Play-for-Fun solution, you have access to IGT Poker, IGT Bingo, ***and a large selection of IGT Casino games for online and mobile devices.*** With hundreds of titles, game variations, and robust game development, it's easy to keep your game content fresh. With our fully branded solution, you can monetize Play-for-Fun by selling virtual coins for real currency." (Exhibits 23 - 25) (emphasis added).

C.     **Masque Publishing**

143.     Masque has a website where it permits games containing the unlicensed GC2 Copyrighted Works to be downloaded, and/or permits customers to order games with GC2 Copyrighted Work on a CD/DVD. (*See* Exhibits 46 – 49.)

144.     Attached as Exhibits 46 - 49 are Page Vault Captures of the Masque website offering games with unlicensed GC2 Copyrighted Work for at least the following games:

a)     Lucky Lion Fish (https://www.masque.com/game/2432/igt-slots-Texas-Tea), (Exhibit 47).

b)     Wild Goose Chase and Festival Fantastico (https://www.masque.com/game/2466/igt-slots-wolf-run), (Exhibit 48) and

c)     Pharaoh's Fortune, Kingpin Bowling and Maid of Money (https://www.masque.com/game/2786/igt-slots-diamond-galaxy ) (Exhibit 49)

145.     These uses are virtually identical to the GC2 Copyrighted Works for Lucky Lion Fish.  (Compare Exhibit 47 to Exhibit 7.)  The same is true for Wild Goose Chase (Compare Exhibit 48 to 8); for Pharaoh's Fortune (Compare Exhibit 49 to 3); and for Kingpin Bowling (Compare Exhibit 46  to 5.)

146.     Masque also sells its CD/DVDs through Amazon.  (See Exhibits 50 – 58.)

147.     The Amazon website for Masque's sale of the Texas Tea game set, that includes the unlicensed GC2 Copyrighted Work for the Lucky Lion Fish Game, is at Exhibit 56.

148.     The Amazon website for Masque's sale of the Wolf Run game set that includes the unlicensed GC2 Copyrighted Works for the games Festival Fantastico and Wild Goose Chase is at Exhibit 57.

149.     The Amazon link to Masque's sale of the Diamond Galaxy game set, that includes the unlicensed GC2 Copyrighted Works for the Pharaoh's Fortune and Kingpin Bowling games, is at Exhibit 58.

150.     IGT and Masque have created packaging for the disks that uses GC2 Copyrighted Works without license, which is also an act of infringement.  (See Exhibits 50-52.)

151.     When a customer purchases Masque products from Amazon, and on information and belief Masque, it receives the product on a CD/DVD disk in Masque packaging that also displays the unlicensed GC2 Copyrighted Works.  (Exhibits 50-55.)

152.     The IGT slots "Wolf Run" package that Masque sells through Amazon shows unlicensed GC2 Copyrighted Works for Festival Fantastico and Wild Goose Chase games.  The below images show the front and backside of the Masque packaging for the Wolf Run product (*See also* Exhibit 54):



153.    The CD/DVD (image below) contains the unlicensed games.



154.    By way of example, the below images, and Exhibit 54 are images of the screens

leading up to the playing of the Festival Fantastico game from this disk.





155.    This unlicensed use is virtually identical to GC2's Copyrighted Works.

156. By way of example, the below images, and Exhibit 54, are images of the screens leading up to the playing of Wild Goose Chase game from this disk:





157. This unlicensed use is virtually identical to the GC2 Copyrighted Work.

158.    The Masque packaging for the Texas Tea IGT game set, sold by Masque through Amazon, shows the unlicensed GC2 Copyrighted Works for the Lucky Lion Fish Game.   The below images show the front and backside of the Masque packaging for the Texas Tea product (*See also* Exhibit 53):



159.    The CD/DVD inside also includes unlicensed GC2 Copyrighted Works.



160.    By way of example, Exhibit 53 and the images below show examples of the various screens leading up to the playing of the Lucky LionFish Game from this disk.







161.    This unlicensed use is virtually identical to GC2's Copyrighted Works.

162.    The Masque packaging for the Diamond Galaxy game set, sold by Masque through Amazon, shows the unlicensed GC2 Copyrighted Work for the Pharaoh's Fortune and King Pin Bowling games.    The below images show the front and backside of the Masque packaging for the Diamond Galaxy product (see also Exhibit 52):



163.    The CD/DVD inside the packaging also includes unlicensed GC2 Copyrighted

Work.  (Exhibits 52, 55):



164.    By way of example, in Exhibit 55 the following screens appear leading up to the

KingPin Bowling game:







165. The unlicensed uses of KingPin Bowling by Masque are virtually identical to GC2's Copyrighted Works.

166. By way of example, in Exhibit 55, the following screens appear leading up to the Pharaoh's Fortune unlicensed game:







167.    The unlicensed uses are virtually identical to GC2's Copyrighted Works.

168.    When a consumer/end user puts the CD's of Exhibits 50 – 52 into its PC or Mac, IGT and Masque provide end users with a series of instructions to copy the games onto the Consumer/Users PC or Mac.  (See Exhibit 53 - 55.)

169.    By downloading and copying the unlicensed works onto the PC or Mac, the consumer/end user is committing an act of copyright infringement.

**Encore**

170.    Defendant Encore, in an arrangement with IGT, is using unlicensed GC2 Copyrighted Works with games that can be downloaded from its website to an end users' PC and/or with games that can be purchased from other on line venues such as Amazon.

171.    The below is a screen shot of an Encore website showing that Encore was offering for download the Coyote Moon game, which is a game with the unlicensed GC2 artwork (see also Exhibits 59-60):



This download offer has the unlicensed GC2 Copyrighted Work. (Exhibit 59-60.)

172.    A consumer/end user's downloading a copy of unlicensed GC2 Copyrighted Work onto his or her Mac or PC from this site is an act of copyright infringement.

173.    Encore also sells games through Amazon, including games that include unlicensed GC2 Copyrighted Works. (*See e.g.* Exhibits 66-67.)

174.    Attached as Exhibit 61 and below is the front and back of the Encore packaging for the IGT Cleopatra CD/DVD purchased through Amazon. IGT and Encore's packaging use the graphics and 2d artwork for the Coyote Moon game.





175.    When a consumer/end user puts this disk into its PC or Mac he or she is provided with a series of instructions to copy the games onto the Consumer/Users PC or Mac.  (*See* Exhibits 64-65.)

176.    By downloading and copying the unlicensed works onto the PC or Mac, the consumer/end user is committing and act of copyright infringement.  On information and belief,

discovery will show that an unlicensed version of Coyote Moon gets downloaded to the PC or MAC when consumers follow the instructions.

## V.      DEFENDANT IGT'S ATTEMPT TO OBTAIN A RETROACTIVE LICENSE

177.    On April 15, 2016, Defendant IGT, through Nash, notified GC2 that, in light of an internal due diligence review and evaluation of all licensed properties and agreements in observance of the on or about April 7, 2015 merger of its parent corporation, it was determined that IGT and others were using certain of GC2's Projects in violation of Prior Amendment #7.

178.    Nash's communication came over a year after the merger and due diligence and thus, on information and belief, over a year after IGT discovered the unlicensed use.

179.    Specifically, IGT, through Nash, informed GC2 that GC2's Projects, Pharaoh's Fortune, Coyote Moon, and Kitty Glitter, were utilized and distributed in various but unidentified, social, online and mobile gaming applications.

180.    Without providing full disclosure of the nature or extent of its unlicensed use, Defendant IGT invited GC2 to enter into a licensing agreement for past and future uses of all of GC2's Projects for SOM Channels.

181.    Defendant IGT, through Nash, informed GC2 that "The issue arose from an overall portfolio assessment as part of the new IGT (since our acquisition last year). We were investigating utilization of rights across multiple channels for all trademarks in the group. When we came across this list of games we realized that we did not have all rights and wanted to explore getting them. Upon further review, we have realized that somehow this gap in rights slipped through the cracks and these games were brought to interactive." (Exhibit 1.)

182.    Upon learning of the unauthorized use of its properties through Nash, GC2 made several inquiries to IGT regarding the scope and magnitude of IGT's use of GC2's Projects.

183. After the contact by Nash in April 2016, and as set forth below, GC2 discovered that while IGT was purporting to offer GC2 a "license" for past and future use, IGT had materially failed to disclose all of the Projects that had been used without authorization by Defendant IGT and the true, full and actual scope of such use.

184. Upon information and belief, a reasonable opportunity for discovery will show that Defendant IGT and/or IGTPLC, for example, entered into, or caused to be entered into, agreements for GC2's Copyrighted Works with additional third parties operating in social, mobile and online channels that are likely to include one or more of the GC2 Copyrighted Works, including, but not limited to, Mr. Green & Co. AB (Mr. Green Casino); Masque Publishing, Inc.; Paddy Power Holdings Limited; GameAccountNetwork (MoneyGaming); WD Encore Software, LLC; Cosmo Gaming Company Ltd. (NetBet Casino); Bwin Party Digital Entertainment; Club World Group (Aladdin's Gold Casino); Caesars Acquisition Company (Caesars Casino and Playtika Ltd.); Virgin Group (Virgin Casino); Online Casinos Vegas; WildTangent, Inc.; Vegas World; and Playtech PLC.

185. GC2 requested specific information on several occasions from IGT regarding the history and unauthorized use by IGT of GC2's Projects.

186. Furthermore, GC2 requested information regarding the performance (game metrics) of IGT's games utilizing GC2's Copyrighted Works and the identities of third-party licensees which IGT had entered into agreements with regarding games that utilized GC2's Copyrighted Works.

187. As noted, GC2 has repeatedly requested such information with no satisfactory response by IGT. IGTPLC, IGT and DoubleDown remain in possession of all information which, on information and belief, Defendants are withholding from GC2 to avoid the substantial

licensing fees and damages due GC2 and to conceal Defendants' infringement and false copyright management information.

188.    GC2 has been especially harmed by Defendants' failure to obtain licensing of applicable GC2's Projects since, as a relatively smaller company, it depends on the bargained for cash flow from licenses for use of its intellectual properties in order to continue its development without incurring additional debt and interest obligations.

## COUNT I
## DIRECT COPYRIGHT INFRINGEMENT

### (IGTPLC and IGT)

189.    GC2 incorporates paragraphs 1 to 188 as if fully restated herein.

190.    GC2 specifically incorporates paragraphs 27-32 as if fully restated herein.

191.    GC2 owns the copyright rights in the GC2 Copyrighted Works used in the games for Kingpin Bowling, Pharaoh's Fortune, Lucky Lionfish, Festival Fantastico, Wild Goose Chase, Coyote Moon, Maid of Money, and Kitty Glitter.

192.    As the owner of the copyright rights, GC2 holds the exclusive rights under 17 U.S.C. § 106.

193.    GC2 specifically incorporates paragraphs 96 to 176, and Exhibits 23 – 67 as if specifically and fully restated herein.

194.    IGTPLC and IGT had access to but were not licensed by GC2 to use GC2 Copyrighted Works in the manner they have used one or more of the GC2 Copyrighted Works.

195.    IGTPLC and IGT have directly infringed GC2's rights because they have reproduced one or more of the GC2 Copyrighted Works in violation of 17 U.S.C. §106(1); they have prepared derivative works based upon one or more of the copyrighted work in violation of 17 U.S.C. §106(2); they have distributed copies of one or more of the GC2 Copyrighted Works

to the public by sale or other transfer of ownership, or by rental, lease, or lending in violation of 17 U.S.C. §106(3); they have performed one or more of the GC2 Copyrighted Works publicly in violation of 17 U.S.C. §106(4); and/or they have displayed one or more of the GC2 Copyrighted Works work publicly in violation of 17 U.S.C. §106(5).

196. GC2 has been damaged by IGT PLC and IGT's actions.

197. IGTPLC and IGT have directly and indirectly profited from their acts of infringement.

198. GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

WHEREFORE, GC2 respectfully requests:

a) Judgment in favor of GC2 and against Defendants;

b) Permanent injunctive relief pursuant to 17 USC §502;

c) An order for impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 USC §503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 USC §503;

e) An award of actual damages pursuant to 17 USC §504;

f) An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 USC §504;

g) An order of costs and allowable attorney's fees pursuant to 17 USC §505; and

h) Any and all relief deemed just and appropriate by the Court.

## COUNT II

## DIRECT COPYRIGHT INFRINGEMENT  (DoubleDown)

199.    GC2 incorporates paragraphs 1 to 188 as if fully restated herein.

200.    GC2 specifically incorporates paras 27-32 as if fully restated herein.

201.    GC2 owns the copyright rights in the GC2 Copyrighted Works used in the games for Kingpin Bowling, Pharaoh's Fortune, Lucky Lionfish, Festival Fantastico, Wild Goose Chase, and Coyote Moon.

202.    As the owner of the copyright rights, GC2 holds the exclusive rights under 17 U.S.C. §106.

203.    GC2 specifically incorporates paragraphs *117* to *133* as if fully restated herein.

204.    GC2 specifically incorporates Exhibits 28 – 45 as if fully referenced herein.

205.    DoubleDown is not licensed by GC2 to use GC2 Copyrighted Works in the manner they have used GC2 Copyrighted Works.

206.    DoubleDown has directly infringed GC2's rights because it has reproduced one or more of the GC2 Copyrighted Works in copies in violation of 17 U.S.C. §106(1); has prepared one or more derivative works based upon the GC2 Copyrighted Works in violation of 17 U.S.C. §106(2); has distributed copies of one or more of GC2 Copyrighted Works to the public by sale or other transfer of ownership, or by rental, lease, or lending in violation of 17 U.S.C. §106(3); has performed one or more of the GC2 Copyrighted Works publicly in violation of 17 U.S.C. §106(4), and/or has displayed one or more of the GC2 Copyrighted Works publicly in violation of 17 U.S.C. §106(5).

207.    GC2 has been damaged by DoubleDown's actions.

208. GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

209. GC2 has been damaged, and Defendants have earned and unless enjoined will continue to earn direct and indirect profits attributable to the infringements alleged herein.

WHEREFORE, GC2 respectfully requests:

a) Judgment in favor of GC2 and against Defendants;

b) Permanent injunctive relief pursuant to 17 U.S.C. § 502;

c) An order for Impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 U.S.C. § 503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 USC § 503;

e) An award of actual damages pursuant to 17 U.S.C. § 504;

f) An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) An order of costs pursuant to 17 U.S.C. § 505; and

h) Any and all relief deemed just and appropriate by the Court.

## COUNT III

## DIRECT COPYRIGHT INFRINGEMENT (Masque)

210. GC2 incorporates paragraphs 1 to 188 as if fully restated herein.

211. GC2 specifically incorporates paras 27-32 as if fully restated herein.

212. GC2 owns the copyright rights in the GC2 Copyrighted Works used in the games Kingpin Bowling, Pharaoh's Fortune, Lucky Lionfish, Festival Fantastico, Wild Goose Chase, and Coyote Moon.

213. As the owner of the copyright rights, GC2 holds the exclusive rights under 17 U.S.C. § 106.

214.    GC2 specifically incorporated paragraphs 117, 143-169 as if fully rested herein.

215.    GC2 specifically incorporates Exhibits 60 – 68, as if fully referenced herein.

216.    Masque is not licensed by GC2 to use GC2 Copyrighted Works in the manner they have used GC2 Copyrighted Works.

217.    Masque has directly infringed GC2's copyright rights because it has reproduced one or more of the GC2 Copyrighted Works in copies in violation of 17 U.S.C. §106(1); has prepared one or more derivative works based upon the GC2 Copyrighted Works in violation of 17 U.S.C. §106(2); and has distributed copies of one or more of the Copyrighted Works to the public by sale or other transfer of ownership, or by rental, lease, or lending in violation of 17 U.S.C. §106(3).

218.    GC2 has been damaged by Masque's actions.

219.    Masque has directly and indirectly profited and unless enjoined will continue to profit from its acts of infringement.

220.    GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

WHEREFORE, GC2 respectfully requests:

a)    Judgment in favor of GC2 and against Defendants;

b)    Permanent injunctive relief pursuant to 17 U.S.C. §502

c)    An order for impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 U.S.C. §503;

d)    An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. §503;

e)    An award of actual damages pursuant to 17 U.S.C. §504;

f)    An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 U.S.C. §504;

g)    An order of costs pursuant to 17 U.S.C. §505; and

h)    Any and all relief deemed just and appropriate by the Court.

## COUNT IV

## DIRECT COPYRIGHT INFRINGEMENT (Encore)

221.    GC2 incorporates paragraphs 1 to 188 as if fully restated herein.

222.    GC2 specifically incorporates paras 27-32 as if fully restated herein.

223.    GC2 owns the copyright rights in the GC2 Copyrighted Works and artwork used in the games for Kingpin Bowling, Pharaoh's Fortune, Lucky Lionfish, Festival Fantastico, Wild Goose Chase, and Coyote Moon.

224.    As the owner of the Copyright rights, GC2 holds the exclusive rights under 17 U.S.C. § 106.

225.    GC2 specifically incorporates paragraphs 170-176 as if full rested herein.

226.    GC2 specifically incorporates Exhibits 59-67 as if fully referenced herein.

227.    Encore is not licensed by GC2 to use GC2 Copyrighted Works in the manner they have used GC2 Copyrighted Works.

228.    Encore has directly infringed GC2's copyrights rights because it has reproduced one or more of the GC2 Copyrighted Works in violation of 17 U.S.C. § 106(1); has prepared derivative works based upon one or more of the GC2 Copyrighted Works in violation of 17 U.S.C. §106(2); and/or has distributed copies of one or more of the GC2 Copyrighted Works to the public by sale or other transfer of ownership, or by rental, lease, or lending in violation of 17 U.S.C. §106(3).

229.    GC2 has been irreparably harmed by the acts alleged herein and has no adequate remedy at law.

230. GC2 has been damaged, and Defendants have earned and unless enjoined will continue to earn direct and indirect profits attributable to the infringements alleged herein.

WHEREFORE, GC2 respectfully requests:

a)      Judgment in favor of GC2 and against Defendants;

b)      Permanent injunctive relief pursuant to 17 U.S.C. § 502

c)      An order for impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 U.S.C. § 503;

d)      An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. §.503;

e)      An award of actual damages pursuant to 17 U.S.C. § 504;

f)      An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 USC §504;

g)      An order of costs pursuant to 17 USC §505 and

h)      Any and all relief deemed just and appropriate by the Court.

## COUNT V

## DIRECT COPYRIGHT INFRINGEMENT

### DOE Defendants 1 – (Interactive Customers)

231.    GC2 incorporates paragraphs 1 to 188 as if fully restated herein.

232.    GC2 specifically incorporates paras 27-32 as if fully restated herein.

233.    GC2 owns the copyright rights in the GC2 Copyrighted Works used in the games for Kingpin Bowling, Pharaoh's Fortune, Lucky Lionfish, Festival Fantastico, Wild Goose Chase, and Coyote Moon.

234.    As the owner of the copyright rights, GC2 holds the exclusive rights under 17 U.S.C. §106.

235.    GC2 specifically incorporates paragraphs 96-117, and 120-142 as if fully restated herein.

236.    DOE Defendants 1 – Interactive Casino Customers and End Users are not licensed by GC2 to use GC2 Copyrighted Works in the manner they have used GC2 copyrighted works.  GC2 specifically incorporates paragraphs 92 to 109 as if fully restated herein.  GC2 specifically incorporates Exhibits 25 to 27 as if fully referenced herein.

237.    On information and belief, a reasonable opportunity for discovery will show, DOE Defendants Category 1 – Interactive Customers and End Users, directly infringed GC2's copyright rights in violation of 17 U.S.C. §106(1) by making unauthorized copies; by preparing one or more derivative works based upon the GC2 Copyrighted Works in violation of 17 U.S.C. §106(2); by distributing copies of one or more of the GC2 Copyrighted Works to the public by sale or other transfer of ownership, or by rental, lease, or lending in violation of 17 U.S.C. §106(3); by performing one or more of the GC2 Copyrighted Works publicly in violation of 17 USC §106(4); and/or by displaying one or more of the GC2 Copyrighted Works publicly in violation of 17 U.S.C. §106(5).

238.    The end users of the device of the DOE Defendants 1 ( Interactive Customers ) directly infringed GC2's rights because these end users accessed the site or the Application platform provided by IGT and/or the casino to play the game containing the GC2 Copyrighted Works and/or because the GC2 Copyrighted Work is downloaded to their device or computer. This constitutes an act of infringement of GC2's exclusive copyright rights under 17 U.S.C. § 106 (1)-(2) and GC2's exclusive right to distribute its copyrighted works under 17 U.S.C. § 106 (3).

239.    GC2 has been damaged by DOE Defendants 1 (Interactive Customers) and their end users.

240.    GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

241.    GC2 has been damaged, and Defendants have earned and unless enjoined will continue to earn direct and indirect profits attributable to the infringements alleged herein.

WHEREFORE, GC2 respectfully requests:

a)    Judgment in favor of GC2 and against Defendants;

b)    Permanent injunctive relief pursuant to 17 U.S.C. §502;

c)    An order for Impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 U.S.C. §503;

d)    An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e)    An award of actual damages pursuant to 17 U.S.C. § 504;

f)    An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g)    An order of costs pursuant to 17 U.S.C. § 505; and

h)    Any and all relief deemed just and appropriate by the Court.

## COUNT VI

## DIRECT COPYRIGHT INFRINGEMENT

### DOE Defendants 2- (End Users of IGTPLC, IGT, DoubleDown, Masque, Encore.)

242.    GC2 incorporates paragraphs 1 to 188  as if fully restated herein.

243.    GC2 specifically incorporates paras 27-32 as if fully restated herein.

244.    GC2 owns the copyright rights in the GC2 Copyrighted Works used in the games for Kingpin Bowling, Pharaoh's Fortune, Lucky Lionfish, Festival Fantastico, Wild Goose Chase, and Coyote Moon.

245.    As the owner of the Copyright rights, GC2 holds the exclusive rights under 17 U.S.C. §106.  GC2 incorporates Exhibits 28 – 68 as if fully referenced herein.

246.    GC2 specifically incorporates paragraphs 97-176 as if fully stated herein.

247.    DOE Defendants 2- End Users are not licensed by GC2 to use GC2 Copyrighted Works in the manner they have used one or more of the GC2 Copyrighted Works.

248.    On information and belief, a reasonable opportunity for discovery will show that DOE Defendants 2- End Users have directly infringed one or more of GC2's rights because the End Users (DOE Defendants 2) have accessed the site or the Application provided by IGTPLC; and IGT, DoubleDown, Masque, Encore, IGT Casino rgs and these Defendants cause customers to play the game containing the GC2 Copyrighted Works when the copyrighted work is downloaded to their device or computer. These acts constitute acts of infringement of GC2's exclusive copyright rights under 17 U.S.C. § 106 (1)-(2) and GC2's exclusive right to distribute its copyrighted works under 17 USC § 106 (3).

249.    GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

250.    GC2 has been damaged, and Defendants have earned and unless enjoined will continue to earn direct and indirect profits attributable to the infringements alleged herein.

WHEREFORE, GC2 respectfully requests:

a)      Judgment in favor of GC2 and against Defendants;

b)      Permanent injunctive relief pursuant to 17 USC § 502;

c)      An order for impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 U.S.C. § 503;

d)      An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e)      An award of actual damages pursuant to 17 U.S.C. § 504;

f)      An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g)      An order of costs pursuant to 17 U.S.C. § 505; and

h)      Any and all relief deemed just and appropriate by the Court.

## COUNT VII

## VICARIOUS LIABILITY FOR DIRECT COPYRIGHT INFRINGEMENT
## (IGTPLC, IGT)

251.    GC2  incorporates paragraphs 1 to 250 as if fully restated herein.

252.    IGTPLC and IGT are vicariously liable for one or more of the acts of direct infringement set forth in paragraphs 96-250 above and in Exhibits 26 – 68 and on information and belief for any additional direct infringement identified during discovery.

253.    IGT PLC and IGT represent in the Form 20-F filings with the SEC that they have a direct financial interest in the IGT Interactive operations, and IGTPLC and IGT have a direct financial interest in DoubleDown, Masque, Encore, DOE DFT Category 1, DOE DFT Category 2.

254.    IGTPLC and IGT, at all material times, have had the full right and ability to supervise and control the content that is used by IGT Interactive, DoubleDown, Masque, Encore, DOE DFT Category 1, and DOE DFT Category 2.  The End User's use of the unlicensed works in the ways shown in Exhibits 26 – 68 is a direct infringement.

255.    As such, both IGT PLC and IGT are vicariously liable for acts of copyright infringement that are committed by IGT Interactive Casino (and their end users), DoubleDown (and its users), Encore (and its end users), Masque (and its end users), DOE DFT Category 1 and 2, and third party platforms or providers such as Facebook, Amazon, Googleplay, Apple and Android, and uses of the works through the ways shown in Exhibits 26 – 68.

256.    GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

257.   GC2 has been damaged, and Defendants have earned and unless enjoined will continue to earn direct and indirect profits attributable to the infringements alleged herein.

WHEREFORE, GC2 respectfully requests:

a)    Judgment in favor of GC2 and against Defendants;

b)    Permanent injunctive relief pursuant to 17 U.S.C. § 502

c)    An order for Impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 U.S.C. § 503;

d)    An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e)    An award of actual damages pursuant to 17 U.S.C. § 504;

f)    An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 USC §504;

g)    An order of costs pursuant to 17 USC §505 and

h)    Any and all relief deemed just and appropriate by the Court.

## COUNT VIII

## VICARIOUS LIABILITY FOR DIRECT COPYRIGHT INFRINGEMENT

### (DoubleDown)

258.   GC2  incorporates paragraphs 1 to 250 as if fully restated herein.

259.   GC2 specifically incorporates paragraphs 96-142 and 242-250 as if fully restated herein.

260.   DoubleDown is vicariously liable for one or more of the acts of direct infringement set forth in paragraph 96-142 and 242-250 above and in Exhibits 26 - 45, and on information and belief, for any additional direct infringement identified during discovery.

261.   DoubleDown has a direct financial interest in DoubleDown Casino Device and DOE DFT Category 2 End Users use of DoubleDown Casino Device, and on information and

belief have a direct financial interest in any use of the DoubleDown Casino Device for interactive services.

262.     DoubleDown has posted a Terms of Use for the Double Down Casino (Exhibit 2) evidencing its ability to control content on its site.

263.     On information and belief, a reasonable opportunity for discovery will show that DoubleDown at all material times had the full right and ability to supervise and control the content supplied by its parent IGT that is used by DoubleDown Casino Device and the various platforms used by DoubleDown, including Facebook, Apple and Android, Amazon, Google Play and the DoubleDown Website.

264.     End Users of DoubleDown Casino, in the ways shown in Exhibits 28 – 45, commit acts of direct infringement when they access GC2 Copyright Works.

265.     As such, DoubleDown is vicariously liable for acts of copyright infringement that are committed by the various platforms of DoubleDown, including Facebook, Apple and Android, Amazon, Google Play and the End Users that play the games through these platforms on the Double Down Casino.

266.     GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

267.     GC2 has been damaged, and Defendants have earned and unless enjoined will continue to earn direct and indirect profits attributable to the infringements alleged herein.

WHEREFORE, GC2 respectfully requests:

a)     Judgment in favor of GC2 and against Defendants;

b)     Permanent injunctive relief pursuant to 17 U.S.C. § 502;

c)     An order for impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 U.S.C. § 503;

d)      An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e)      An award of actual damages pursuant to 17 U.S.C. § 504;

f)      An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g)      An order of costs pursuant to 17 U.S.C. § 505; and

h)      Any and all relief deemed just and appropriate by the Court.

## COUNT IX

## VICARIOUS LIABILITY FOR DIRECT COPYRIGHT INFRINGEMENT

### (Masque)

268.    GC2  incorporates paragraphs 1  to 250  as if fully restated herein.

269.    GC2 specifically incorporates paragraphs 143-169 and 242-250 as if fully restated herein.

270.    Masque is vicariously liable for one or more of the acts of direct infringement set forth in paragraphs 143-269 and 242-250 above and in Exhibits 46 – 66 and on information and belief for any additional direct infringement identified during discovery.

271.    End Users who access and use GC2 Works through the downloads from the websites shown in Exhibits 46 – 66 commit an act of direct infringement.

272.    Masque has a direct financial interest in the sale, distribution, use, public performance and display of the GC2 Copyrighted Works through its website and through Amazon and in the End Users' use of the GC2 Copyrighted Works through these venues/platforms.

273.    On information and belief, a reasonable opportunity for discovery will show that Masque, at all material times, had the full right and ability to supervise and control the content

that is used by Masque on its website and in the products (CDs and downloads) it provides to End Users, and through other venues/platforms such as Amazon and the End Users.

274.     As such, Masque is vicariously liable for acts of copyright infringement that are committed by the various platforms of Masque (*i.e.* Amazon) and by the End Users use of the GC2 Copyrighted Works.

275.     GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

276.     GC2 has been damaged, and Defendants have earned and unless enjoined will continue to earn direct and indirect profits attributable to the infringements alleged herein.

WHEREFORE, GC2 respectfully requests:

a)      Judgment in favor of GC2 and against Defendants;

b)      Permanent injunctive relief pursuant to 17 U.S.C. § 502;

c)      An order for impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 U.S.C. § 503;

d)      An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. §503;

e)      An award of actual damages pursuant to 17 U.S.C. §504;

f)       An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 U.S.C. §504;

g)      An order of costs pursuant to 17 U.S.C. §505; and

h)      Any and all relief deemed just and appropriate by the Court.

## COUNT X

## VICARIOUS LIABILITY FOR DIRECT COPYRIGHT INFRINGEMENT
### (Encore)

277.     GC2 incorporates paragraphs 1  to 250 as if fully restated herein.

278.    GC2 specifically incorporates paragraphs 170-176 and 242-250 as if fully restated herein.

279.    Encore is vicariously liable for one or more of the acts of direct infringement set forth in paragraphs 170-176 and 242-250 above and Exhibits 59 – 67, and on information and belief for any additional direct infringement identified during discovery.

280.    Encore has a direct financial interest in the sale, distribution, use, public performance and display of the GC2 Copyrighted Works through its website and through Amazon and in the End Users use of the GC2 Copyrighted Works through these venues/platforms.

281.    End Users that use unlicensed GC2 Copyrighted Works in the manner shown in Exhibits 59 – 67 commit direct infringement.

282.    On information and belief, a reasonable opportunity for discovery will show that Encore at all material times, had the full right and ability to supervise and control the content that is used by Encore on its website and for its products (CDs and downloads) and through other venues/platforms such as Amazon and the end users.

283.    As such, Encore is vicariously liable for acts of copyright infringement that are committed by the various platforms of Encore (*i.e.* Amazon) and by the End Users' use of the GC2 Copyrighted Works and shown in Exhibits 59 – 67.

284.    GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

285.    GC2 has been damaged, and Defendants have earned and unless enjoined will continue to earn direct and indirect profits attributable to the infringements alleged herein.

WHEREFORE, GC2 respectfully requests:

a)   Judgment in favor of GC2 and against Defendants;

b)   Permanent injunctive relief pursuant to 17 U.S.C. § 502;

c)   An order for impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 U.S.C. § 503;

d)   An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e)   An award of actual damages pursuant to 17 U.S.C. §504;

f)   An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g)   An order of costs pursuant to 17 U.S.C. § 505; and

h)   Any and all relief deemed just and appropriate by the Court.

## COUNT XI

## CONTRIBUTORY INFRINGEMENT

### (IGTPLC, IGT, DoubleDown)

286.   GC2 incorporates paragraphs 1 to 250 as if fully restated herein.

287.   GC2 specifically incorporates paragraphs 96-142 and 242-250 as if fully restated herein.

288.   There is direct infringement of one or more of GC2's Copyrighted Works by others including IGT interactive Casino customers (and their end users), DoubleDown Casino customers and end users.  (See paragraphs 96-142 above.  See Exhibits 23 – 45.)

289.   IGTPLC, IGT and DoubleDown know that unlicensed use of the GC2 Copyrighted Works is an infringement.

290.   IGT similarly knows GC2 owns the copyright rights in the GC2 Works used. (Exhibits 18-20, 68-73.)

291.   IGTPLC, IGT and DoubleDown materially contribute to the infringement of others (including Masque, Encore, DOE Defendants 1, DOE Defendants 2, Facebook, Apple,

Google Play and Amazon) because they supply the unlicensed GC2 Copyrighted Works as content and they supply the device to cause others to download, copy, display, publish and distribute the unlicensed GC2 Copyrighted Works. (*See, e.g.* Exhibits 2, 23 – 67.)

292. IGTPLC's, IGT's and DoubleDown's acts further constitute inducement of infringement because these Defendants are distributing various technical device platforms (such as rgs, DoubleDown) with the object of promoting its use to infringe the copyrights of the GC2 Copyrighted Works. (*See* Exhibits 23-45.)

293. IGT's SEC filings and website expressly provide that IGT provides these devices to enable users to access IGT content (including unlicensed GC2 Copyrighted Works) which fosters IGT interactive customers to infringe, fosters other end users to infringe, and to cause DoubleDown Casino users to infringe. (Exhibits 21-22.)

294. GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

295. GC2 has been damaged, and Defendants IGTPLC, IGT and DoubleDown have earned direct and indirect profits attributable to the infringements alleged herein.

296. IGTPLC, IGT and DoubleDown are liable for contributory infringement for the direct infringement by Caesars and other IGT Casino rgs partners because IGT knows of the unlicensed use, and thus has knowledge of the infringing use of the Pharaoh's Fortune work, and has provided both the platform to enable the infringement, the IGT interactive services, and the copies of the Copyrighted Works as content.

WHEREFORE, GC2 respectfully requests:

a) Judgment in favor of GC2 and against Defendants;

b) Permanent injunctive relief pursuant to 17 U.S.C. § 502;

c) An order for Impoundment of all copies made or used in violation of the exclusive rights of GC2 pursuant to 17 U.S.C. §.503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e) An award of actual damages pursuant to 17 USC §504;

f) An order for an accounting and an award of Defendants' profits (including direct and indirect profits) pursuant to 17 U.S.C. §.504;

g) An order of costs pursuant to 17 U.S.C. §505; and

h) Any and all relief deemed just and appropriate by the Court.

## COUNT XII

## FALSE COPYRIGHT MANAGEMENT INFORMATION

### (IGT, DoubleDown)

297.    GC2 incorporates paragraphs 1 to 250 as if fully restated herein.

298.    The Digital Millennium Copyright Act (DMCA) at 17 U.S.C. § 1202 prohibits the Defendants from knowingly, and with the intent to induce, enable, facilitate or conceal infringement, providing false copyright management information for certain GC2 games.

299.    The Digital Millennium Copyright Act (DMCA) at 17 U.S.C. § 1202 prohibits the Defendants from distributing or importing false copyright management information ("CMI") under 17 U.S.C. § 1202-§ 1203.

300.    IGT is aware of its obligations under 17 U.S.C. § 1202 and its agreement not to provide false copyright management information. (See Exhibit 18-20.)

**A.    IGT's Knowledge of Correct CMI for GC2 Games**

301.    IGT knows GC2 owns the copyright rights to the video artwork and 2D graphics of the Copyrighted Works at issue in this matter because IGT expressly agreed to and signed an agreement acknowledging GC2's ownership of those rights. (Exhibits 18-20.)

302.     IGT knows that it did not acquire a license to use the GC2 games for social, mobile, or on-line use, or for internet wagering, because it signed an agreement expressly excluding those rights.  (Exhibit 20.)

303.     IGT knows from its prior dealings with GC2, and its prior agreement with GC2, that GC2 requires its GC2 Registered Mark and CMI to appear on all authorized games. (Exhibits 18-20.)

304.     IGT knows of the correct GC2 CMI to use in connection with the GC2 Games. (See Exhibits 68-73.)

**B.     IGT's Past Practices for Placing Correct GC2 CMI on GC2 Games**

      **i.     Pharaoh's Fortune**

305.     Attached as Exhibit 68 is a true and correct photograph of a land based GC2 game for Pharaoh's Fortune showing IGT's placement of the correct GC2 CMI on the GC2 land based game for Pharaoh's Fortune.

306.     Attached as Exhibit 74 is a true and correct copy of an IGT advertisement for the land based GC2 game for Pharaoh's Fortune showing IGT's placement of the correct GC2 CMI on the advertisement for GC2 Land based game for Pharaoh's Fortune.

      **ii.     Coyote Moon**

307.     Attached as Exhibit 69 is a true and correct photograph of a land based GC2 game for Coyote Moon showing IGT's placement of the correct GC2 CMI on the GC2 land based game for Coyote Moon.

308.     Attached as Exhibit 74 is a true and correct copy of an IGT's advertisement for the land based GC2 game for Coyote Moon GC2 game showing IGT's placement of the correct GC2 CMI on the advertisement for GC2 Land based game for Coyote Moon.

### iii.     Kitty Glitter

309.     Attached as Exhibit 70 is a true and correct photograph of a land based GC2 game for Kitty Glitter showing IGT placement of the correct GC2 CMI on the GC2 land based game for Pharaoh's Fortune.

### iv.     Lucky Lion Fish

310.     Attached as Exhibit 71 is a true and correct photograph of a land based GC2 game for **Lucky Lion Fish** showing IGT's placement of the correct GC2 CMI on the GC2 land based game for **Lucky Lion Fish**.

311.     Attached as Exhibit 74 is a true and correct copy of an IGT advertisement for the land based GC2 game for **Lucky Lion Fish** GC2 game showing IGT's placement of the correct GC2 CMI on the advertisement for GC2 land based game for **Lucky Lion Fish**.

### v.     KingPin Bowling

312.     Attached as Exhibit 74 is a true and correct copy of an IGT advertisement for the land based GC2 game for **KingPin Bowling** GC2 game showing IGT's placement of the correct GC2 CMI on the advertisement for GC2 land based game for **KingPin Bowling**.

### vi.     Festival Fantastico

313.     Attached as Exhibit 74 is a true and correct copy of an IGT advertisement for the land based GC2 game for **Festival Fantastico** GC2 game showing IGT's placement of the correct GC2 CMI on the advertisement for GC2 land based game for **Festival Fantastico**.

### vii.     Wild Goose Chase

314.     Attached as Exhibit 74 is a true and correct copy of an IGT advertisement for the land based GC2 game for **Wild Goose Chase** GC2 game showing IGT's placement of the correct GC2 CMI on the advertisement for GC2 land based game for **Wild Goose Chase**.

### C. IGT's Ability To Place Correct CMI on GC2 Games

315. From a technical standpoint IGT is capable of placing correct CMI on these online works because it does so for itself and for other actual licensors of other works. (*See e.g.* Exhibit 74.)

316. There are no technical limitations preventing IGT from providing correct GC2 CMI.

### D. IGT and DoubleDown Do Not Have Ownership in and are Not Licensed to use GC2 Copyright Works for Social, Mobile, Online or Internet.

317. IGT does not have ownership of the GC2 Copyrighted Works for any use. (Exhibits 18-20.)

318. IGT does not have a license to use the GC2 Copyrighted Works for social, mobile, online or Internet uses. (Exhibits 18-20.)

319. DoubleDown does not have ownership of the GC2 Copyrighted Works for any use. (Exhibits 18-20.)

320. DoubleDown, IGT's wholly owned subsidiary, has never had a license with GC2. (Exhibits 18-20.)

### E. IGT and DoubleDown Are Aware of Service Provider's Prohibition on Posting Unlicensed Works.

321. In order to gain entry to the online, social and mobile gaming marketplace, and to induce, enable or facilitate use of content and/or distribute the content in the online, social and mobile gaming marketplace, IGTPLC, IGT and DoubleDown used Facebook, Apple, Google Play, and Amazon. (*See e.g.* Exhibits 28, 33, 38-40.)

322. Facebook, Apple, Google Play, Android and Amazon each have Terms of Use for their respective platforms.

323. IGTPLC, IGT and DoubleDown are aware of the Terms of Use Agreements for Facebook, Apple, Google Play, and Amazon platforms and had to agree to such Terms and Conditions before they could place and distribute their content onto those online platforms.

324. Facebook Terms of Use do not allow posting of unlicensed third party works.

325. Apple Terms of Use do not allow the posting of unlicensed third party works.

326. Google Play Terms of Use do not allow the posting of unlicensed third party works.

327. Amazon Terms of Use do not allow the posting of unlicensed third party works.

**F.    IGT Uploaded Unlicensed GC2 Works as IGT Content**

328. The DoubleDown Casino uses Facebook, Apple, Google Play, and Amazon as a platform to distribute content, and to facilitate and enable use of the content for the DoubleDown Casino.  (*See* Exhibits 28, 33, 38-40.)

329. IGT represents in its SEC 10-K filing that IGT was the entity that introduced its content onto the DoubleDown Casino platform. (*See* Exhibit 21, p. 32).

330. GC2 games Pharaoh's Fortune and Coyote Moon appear on the DoubleDown Casino platform.  Kitty Glitter also appears on the Double Down Casino platform.  (*See* Exhibit 28-45.)

**G.    IGT Omits GC2 CMI and Falsely Places only IGT CMI directly on the Content.**

331. The GC2 CMI does not appear on the Pharaoh's Fortune, Coyote Moon, or Kitty Glitter content on the Double Down Casino.

332. Only IGT CMI is used for the Pharaoh's Fortune, Coyote Moon, or Kitty Glitter content on the Double Down Casino.

333. This is false CMI placement on the content.

334. In order to conceal its infringement, IGT falsely marked the work with IGT CMI only.

335. IGT failed to provide truthful, complete and accurate CMI on the content.

**H.     False CMI in DoubleDown Terms of Use**

336. In order to be able to use and distribute content on platforms such as Facebook, Apple, Google Play, and Amazon, IGT and DoubleDown were required to have their own terms of use.

337. On or in connection with the provision of DoubleDown Casino, Defendants provide Terms of Use.  (Exhibit 2.)

338. A true and correct copy of the DoubleDown Casino Terms of Use for its mobile platform was last updated in July, 2013 and is attached as Exhibit 2.

339. Defendant DoubleDown represents in its DoubleDown Casino Terms of Use that "DoubleDown's social games and related services, which include applications for mobile devices and DoubleDown-branded Web sites" are its services.  (Exhibit 2.)

340. IGTPLC, IGT, and DoubleDown require any user to read and agree to the Terms of Use in order to become "authorized" to use the DoubleDown Casino.

341. Specifically the Terms of Use states:

> "By installing, registering with, using or otherwise accessing the Services, including browsing any DoubleDown Web site, you agree that you read, understood, accept and agree to be bound by these Terms of Use and the Privacy Policy referenced below ("Privacy Policy"). If you do not accept these Terms of Use and/or the Privacy Policy, you are not authorized to use the Services." (Exhibit 2.)

342. DoubleDown states in the Terms of Use for DoubleDown Casino that:

> "DoubleDown and/or its licensors and affiliates own all right, title, and interest, including copyrights, trademarks and other intellectual property rights, in and to all the Services Content."  (Exhibit 2.)

343. This representation is false with respect to the video artwork and 2D graphics for the Pharaoh's Fortune Content.

344. This representation is false with respect to the video artwork and 2D graphics for the Coyote Moon content.

345. Discovery is likely to show, on information and belief, that this representation is false with respect to other content such as Kitty Glitter (*e.g.* based upon IGT's Nash's representations and IGTs past practice of marking Kitty Glitter with GC2 trademark) (*See, e.g.,* Exhibit 70).

346. IGTPLC, IGT, and DoubleDown state in the Terms of Use for DoubleDown Casino that:

> "DoubleDown and its licensors retain all rights in the content within the Services (including, but not limited to, applications, software, designs, graphics, texts, information, pictures, video, sound, music, and other files, and their selection and arrangement) (collectively the "Content")". (Exhibit 2.)

347. This representation is a false with respect to the video artwork and 2D graphics for the Pharaoh's Fortune Content.

348. This representation is a false with respect to the video artwork and 2D graphics for the Coyote Moon content.

349. Discovery may show that this representation is false or misleading with respect to other content such as Kitty Glitter.

### I.     Distribution of CMI That is False

350. In its recent SEC Form 20-F filing, IGTPLC describes DoubleDown Casino as follows: "DoubleDown Casino, which is IGT PLC's online social gaming casino offering, operates largely through Facebook, Apple's IOS platform and Google Android's platform." This filing also describes DoubleDown Casino as a product of IGT PLC and IGT.

351.    Each of the acts set forth above in paragraphs 300 to 349 show that IGT PLC, IGT, and DoubleDown have knowingly, and with the intent to induce, enable, facilitate and/or conceal infringement, distributed CMI that is false.

352.    IGT placed false CMI on the GC2 Copyrighted Works.

353.    DoubleDown placed false CMI in its Terms of Use.

354.    IGTPLC, IGT, and DoubleDown's acts violate 17 U.S.C. §§ 1202-1203.

**J.      Intent to Induce Infringement**

355.    Each of the acts set forth above in paragraphs 300 to 349 show that IGT has an intent to induce infringement of the GC2 Copyrighted Works by providing False Copyright Management Information in one or more of the ways set forth in the paragraphs 300 to 349 above.

356.    IGT PLC, IGT, and DoubleDown use the DoubleDown Casino as the device to access and download the unlicensed GC2 Copyrighted Works. The unlicensed GC2 Copyrights Works are listed under the "Popular" section. (*See e.g.* Exhibit 29, 34 and 49.)

357.    DoubleDown intends for the user to rely upon the representations in the Terms of Use, and in fact requires users to agree to them in order to have the right to access and use the content. (Exhibit 2.)

358.    IGT placed false CMI on the GC2 Copyrighted Works.

359.    DoubleDown placed false CMI in its Terms of Use.

360.    DoubleDown in its Terms of Use then "Licenses" the user to use the content with the false CMI.

361.    In reliance on the Terms of Use, and False CMI in such Terms of Use, and in reliance on the False CMI on the GC2 Games, a user is induced to believe it is engaged in a licensed use when it is actually engaged in an act of copyright infringement.

362.     IGT's acts violates 17 U.S.C. § 1202-1203.

**K.     Intent to Enable Infringement**

363.     Each of the acts set forth above in paragraphs 300 to 349 show that IGT has an intent to enable infringement of the GC2 Copyrighted Works by providing false CMI in one or more of the ways set forth in the paragraphs 264 to 319 above.  The Terms of Use of Facebook, Apple, Amazon and Google do not permit the uploading of unlicensed GC2 Copyrighted Works, and IGT concealed GC2's CMI to enable IGT to hide its inability to upload in compliance with the Terms of Use of the service provider.

364.     GC2 incorporates paragraphs 300 to 349 as if fully restated herein.

365.     IGT's acts violate 17 U.S.C. § 1202-1203.

**L.     Intent to Facilitate Infringement**

366.     Each of the acts set forth above in paragraphs 300 to 349 show that IGT has an intent to facilitate infringement of the GC2 Copyrighted Works by providing false CMI in one or more of the ways set forth in the paragraphs 300 to 349 above.

367.     GC2 incorporates paragraphs 300 to 349 as if fully restated herein.

368.     IGT's acts violates 17 U.S.C. §1202-1203.

**M.     Intent to Conceal Infringement**

369.     Each of the acts set forth above in paragraphs 300 to 349 show that IGT has an intent to conceal infringement of the GC2 Copyrighted Works by providing false CMI in one or more of the ways set forth in the paragraphs 264 to 319 above.

370.     IGT's continued intent to conceal infringement is further established by its activities after it merged with another entity.

371. On information and belief, IGT's merger with GTEch had due diligence that revealed the unlicensed use. Despite that knowledge, Defendants made no effort to put correct CMI on GC2 on works.

372. IGT, post-merger with IGT PLC, discovered the unlicensed use of the GC2 works on the social, mobile and online platforms, yet IGT took no steps to place truthful and complete CMI on the GC2 Copyrighted Works or correct the Terms of Use.

373. IGT was informed by GC2 in May 2016 that the GC2 Registered Mark was supposed to be placed on every GC2 game, yet as of the filing of this lawsuit, IGT has taken no steps to place truthful and complete CMI on the GC2 Copyrighted Works.

374. Instead IGT continued to provide and distribute CMI that is false.

375. IGT's failure to correct the CMI after its discovery of the unlicensed placement, back over 1 year ago, evidences IGT's intent to continue to enable, facilitate and/or conceal infringement of the GC2 Copyrighted Works.

376. IGT's acts violates 17 U.S.C. § 1202-1203.

**N.    False Copyright Management Information with respect to Masque and Encore, IGT Casino rgs, and Amazon**

377. On information and belief, a reasonable opportunity for discovery will show that IGT represents to others such as Masque and Encore, Amazon and IGT Casino rgs, that it owns and or has a license to the copyright rights for the GC2 Copyrighted Works, when it does not.

378. To conceal its lack of license or right to use the GC2 Copyrighted Works, IGT places false CMI onto the copies it distributes to Masque, Encore, Amazon and IGT Casino rgs so that these entities do not know that IGT was not licensed by GC2 for these types of works.

379. GC2 is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

380.     GC2 has been damaged, and Defendants have earned and unless enjoined will continue to earn direct and indirect profits attributable to the infringements alleged herein.

WHEREFORE, GC2 respectfully requests:

a)       Damages 17 U.S.C. § 1203;

b)       Profits; 17 U.S.C. § 1203

c)       Statutory Damages; 17 U.S.C. § 1203

d)       Impoundment; 17 U.S.C. § 1203

e)       Injunction; 17 U.S.C. § 1203

f)       Costs and reasonable attorneys' fees; 17 U.S.C. §1203

g)       Remedial modification and/or destruction of the device or product involved and such other and further relief as the court deems appropriate.

## COUNT XIII

### Illinois Consumer Fraud

### (IGTPLC, IGT and DoubleDown)

381.     GC2 incorporates paragraphs 1  to 250  as if fully restated herein.

382.     This count is brought to seek injunctive relief, monetary damages, punitive damages, costs and attorneys' fees for Defendants false and fraudulent "bait and switch" consumer licensing scheme in its DoubleDown Casino, where ("bait") consumers are fraudulently induced to enter into a "license" for works DoubleDown does not have the right to license, and then ("switch") consumers are forced to assume all liability for the use of the unlicensed works and indemnify Defendants for all liability incurred in connection with the use of the unlicensed works.

383.     GC2 specifically incorporates paragraphs 96-133 here, and Exhibit 2.

384.    The conduct complained of herein involves trade practices directed to the market generally and every day to at least 1.785 million daily users of the DoubleDown Casino, and therefore has a nexus to consumers generally and in Illinois.    (*See, also* paragraph 48, incorporated herein.)

385.    The conduct complained of implicates consumer protection concerns and thus has a nexus to consumers generally and in Illinois.

386.    GC2 seeks to redress competitive injury it suffers when Defendants deceive customers.

387.    GC2 specifically incorporates paragraphs 77 to 166 herein as if fully restated herein.

388.    Sometime in or after 2013, IGT began to load content onto the DoubleDown Casino product.

389.    IGT represents in its SEC 10-K filing that IGT was the entity that introduced its content onto the DoubleDown Casino platform. (See Exhibit 21 p. 32.)

390.    The DoubleDown Casino App versions listing shows that IGT listed Pharaoh's Fortune as a "new slot" on March 25, 2015 and April 23, 2015.  (See Exhibit 75.)

391.    Nowhere on the DoubleDown Casino do the Defendants identify GC2 in connection with the Pharaoh's Fortune or Coyote Moon Games.

392.    After withholding material information within its own knowledge about the actual ownership and lack of license of the Pharaoh's Fortune and Coyote Moon games, from which a consumer/end user can determine the actual rights in a game, IGTPLC, IGT and DoubleDown then engage in a series of fraudulent representations.

393.     On or in connection with the providing of DoubleDown Casino, on July 2013, Defendant DoubleDown provides a Terms of Use.  (Exhibit 2.)

394.     IGTPLC, IGT, and DoubleDown require any user to read and agree to the terms of use in order to become "authorized" to use the DoubleDown Casino.  Specifically the Terms of Use states:

> "By installing, registering with, using or otherwise accessing the Services, including browsing any DoubleDown Web site, you agree that you read, understood, accept and agree to be bound by these Terms of Use and the Privacy Policy referenced below ("Privacy Policy"). If you do not accept these Terms of Use and/or the Privacy Policy, you are not authorized to use the Services." (Exhibit 2.)

395.     Without obtaining a license to the necessary rights in the Pharaoh's Fortune or Coyote Moon game, Defendants falsely represent that Defendant DoubleDown is the "Owner" of the rights being licensed, that Defendant DoubleDown and its Licensors retain all rights to the content," and that DoubleDown "licenses" to consumers and End Users of its DoubleDown Casino certain rights to download and use content of Pharaoh's Fortune and Coyote Moon. (Exhibit 2.)

396.     After requiring the user to agree to the false license terms, Defendants "switch" and transfer the risk and exposure for use of the unlicensed use to consumer.

397.     The false and fraudulent licensing under false representations is thereafter coupled with language requiring the consumer/end user to agree that Defendants are not liable for Defendants providing the unlicensed works.  (Exhibit 2.) This language states:

> "BY ACCESSING, USING OR DOWNLOADING THE SERVICES YOU ACKNOWLEDGE AND AGREE THAT **YOUR USE IS AT YOUR OWN RISK** AND THAT **NONE OF THE PARTIES INVOLVED** IN CREATING, PRODUCING, OR **DELIVERING THE SERVICES OR ANY OF DOUBLEDOWN, ITS AFFILIATES, SUBSIDIARIES OR ANY OF THEIR EMPLOYEES, AGENTS OR CONTRACTORS (COLLECTIVELY "RELEASED PARTIES") ARE LIABLE** FOR ANY DIRECT, INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL, OR PUNITIVE DAMAGES, OR ANY OTHER LOSSES, COSTS, OR EXPENSES OF

ANY KIND (INCLUDING, WITHOUT LIMITATION, LOST PROFITS, LOSS OF DATA, LEGAL FEES, EXPERT FEES, COST OF PROCURING SUBSTITUTE SERVICES, LOST OPPORTUNITY, OR OTHER DISBURSEMENTS) **WHICH MAY ARISE, DIRECTLY OR INDIRECTLY, THROUGH THE ACCESS TO, USE OF, RELIANCE ON ANY MATERIAL OR CONTENT ON THE SERVICES, OR BROWSING OF THE SERVICES OR THROUGH YOUR DOWNLOADING OF ANY MATERIALS, DATA, TEXT, IMAGES, VIDEO OR AUDIO FROM THE SERVICES, EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.** WITHOUT LIMITING THE FOREGOING, RELEASED PARTIES ASSUME NO RESPONSIBILITY, AND WILL NOT BE LIABLE, FOR ANY DAMAGES RELATING TO OR CAUSED BY ANY VIRUSES, BUGS, HUMAN ACTION OR INACTION OF ANY COMPUTER SYSTEM, PHONE LINE, HARDWARE, SOFTWARE OR PROGRAM MALFUNCTIONS, OR ANY OTHER ERRORS, FAILURES OR DELAYS IN COMPUTER TRANSMISSIONS OR NETWORK CONNECTIONS ON ACCOUNT OF YOUR ACCESS TO OR USE OF THE SERVICES. RELEASED PARTIES CANNOT AND DO NOT GUARANTEE CONTINUOUS, UNINTERRUPTED, OR SECURE ACCESS TO THE SERVICES" (Exhibit 2) (Emphasis added)

398.     The fraudulent licensing scheme also contains language requiring the defrauded consumer or end/user to release and indemnify Defendants for use of the fraudulently licensed material. This language states:

> To the fullest extent permitted by law, you agree to release, discharge, defend, indemnify and hold Released Parties harmless from and against all claims, damages, losses, liability, costs and expenses (including without limitation attorneys fees) arising out of (a) your use of, access to, or activities in connection with the Services or (b) any violation of these Terms of Use by you or through your account. This defense and indemnification obligation will survive these Terms of Use and your use of the Services. (Exhibit 2.)

399.     IGT's SEC Form 10-K filing represents that there are an average 1,785,000 users of the DoubleDown Casino per day. With each use, each End User is committing an act of infringement and becomes responsible for the liability.

400.     The fraudulent licensing scheme also conceals from the actual content owners such as GC2, the identities of the licensees (end users) thereby making it difficult to identify.

401.   GC2 has been damaged, and will continue to be damaged, by these representations. GC2 has lost, and continues to lose, licensing fees to which it would otherwise be entitled. Further, GC2 has been forced to file this action against consumers, which, in turn, has damaged and will continue to damage GC2's goodwill.

402.   The approximately 1.785 million users per day are not identifiable, making it burdensome to seek relief directly.

403.   GC2 has no adequate remedy at law.

404.   Defendants have unlawfully profited from these acts.

405.   GC2 is seeking an award of punitive damages,  The acts pled herein establish a gross and reckless disregard for GC2's rights and the creation of unnecessary obstacles for it to enforce and obtain relief for violations of its rights.

406.   The knowledge that the DoubleDown Casino would be used by so many millions of end users on a daily basis, and that DoubleDown is subjecting the end user to liability for IGT's and DoubleDown's reckless disregard for GC2's rights, supports a finding that punitive damages are appropriate and necessary to deter further acts in this regard.

407.   Defendants' fraudulent "Bait and Switch" licensing scheme violates the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1, et seq.

WHEREFORE, GC2 respectfully requests as relief:

    a)      Judgment in favor of Plaintiff and against Defendant

    b)      An award of actual Damages;

    b)      An award of Defendants' Profits;

    d)      And award of Punitive Damages;

    e)      Permanent Injunctive relief;

     f)       Costs and reasonable attorneys' fees;

     g)       Remedial modification and/or destruction of the device or product involved.

**Jury Trial Is Demanded on All Issues Triable by Jury**

Dated: September 9, 2016

                                      Respectfully submitted,

                                      By:/s/Kara E. F. Cenar_____
                                    Kara E. F. Cenar (ARDC 6198864)
                                    (kcenar@greensfelder.com)
                                    Courtney A. Adair (ARDC 6928188)
                                    (cadair@greensfelder.com)
                                    Greensfelder, Hemker & Gale, P.C.
                                    200 W. Madison St., Ste. 3300
                                    Chicago, IL 60606
                                    312-419-9090 (T)
                                    312-419-1930 (F)

                                    John E. Petite
                                    (jep@greensfelder.com)
                                    Greensfelder, Hemker & Gale, P.C.
                                    10 South Broadway, Ste. 2000
                                    St. Louis, Missouri  63102
                                    314-516-2698 (T)
                                    314-241-8624 (F)

                                    *Attorneys  for  Plaintiff  GC2  Incorporated*