**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GC2 INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | Case No.: 1:16-cv-08794 |
| ) | |
| vs. ) | Judge: Matthew F. Kennelly |
| ) | Magistrate Judge: Mary M. Rowland |
| INTERNATIONAL GAME TECHNOLOGY ) | |
| PLC, ET AL. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MOTION TO COMPEL DEFENDANTS' RESPONSES TO GC2'S DISCOVERY**
**REQUESTS CONCERNING THE TECHNOLOGY USED TO**
**INFRINGE GC2'S COPYRIGHTED WORKS**

Plaintiff GC2 Incorporated ("GC2") respectfully requests that this Court issue an order

under Federal Rules of Civil Procedure 26 and 37 compelling Defendants International Game

Technology ("IGT"), IGT ("IGT NV") and DoubleDown Interactive LLC ("DDI") (collectively,

"Defendants") to respond to a series of interrogatories and document requests that seek technical

information from Defendants supporting GC2's copyright infringement claims. GC2 respectfully

requests an order requiring Defendants to respond within fourteen (14) days.[1]

Through discovery, GC2 has sought to obtain information proving Defendants' direct,

indirect and contributory copyright infringement, as well as "per violation" evidence necessary

for statutory damage calculations under the Digital Millennium Copyright Act ("DMCA") count.

Despite GC2's requests, Defendants have blocked all discovery concerning technology used (and

---

[1]Discovery is GC2's only opportunity to obtain this evidence in admissible fashion because
Defendants' initial disclosures do not identify anyone "knowledgeable" about the technical
issues, they have denied or claimed "lack of knowledge or information" on how their own
technology works, they have stated they do not intend to call any witnesses on how the
technology works for the Remote Game server products, and have declined to enter into
stipulations on technical issues in the case. (See, e.g., Dkt 163 ¶ 118.)

how) to copy, create, display and distribute GC2 games throughout their distribution channel and ultimately to millions of end users. Defendants are the source from which the evidence can be obtained. See Fed. R. Civ. P. Rule 26(b) (stating that the parties' relative access to the relevant information is a consideration when ordering discovery).

Specifically, in its amended complaint, GC2 includes allegations about how ***Defendants own technology works*** to commit acts of infringement. In responding to these allegations, Defendants contend either **"**lack knowledge or information sufficient to form a belief" about this information (Dkt. 163 ¶ 118), or outright deny having knowledge (Dkt. 163 ¶¶ 268, 295-297, 360), thus making the technology related issues and their responses relevant and appropriate for discovery. In fact, when answering certain discovery requests on this topic, Defendants refuse to answer and "object" as "not relevant," or they profess a "lack of understanding" or state that responding would be "burdensome," then respond by stating they will not even "search for" the requested information. (See IGT NV's Answer to GC2's Interrogatory No. 5; DDI's Answer to GC2's Interrogatory No. 3; IGT's Answer to GC2's Interrogatory No. 4.; and IGT NV's Response to Request for Production Nos. 13 and 19; see also IGT's Response to Request for Production No. 7; and DDI's Response to Request for Production Nos. 9 and 19 (hereinafter and collectively referred to as the "How the Technology Works" Group of Discovery Requests).)[2]

Despite Defendants' so-called "lack of knowledge" as to "How the Technology Works" requests, their U.S. patent filings belie this statement (see, e.g., IGT's U.S. Patent No. 9,767,643 titled "Internet Remote Game Server", attached hereto as __Exhibit D__) and instead reveal a sophisticated intellectual property conglomerate that knows full well how their technology works. Defendants appear to be doing nothing other than playing discovery related games aimed

---

[2] Defendants IGT, IGT NV, and DDI's discovery responses are attached as __Exhibits A__, __B__, and __C__, respectively.

at obstructing GC2's ability to prepare its case for trial within this Court's timeframe and are unnecessarily (and improperly) increasing GC2's costs by requiring GC2 to enforce its rights.

In any event, despite numerous attempts to meet and confer with Defendants' counsel since GC2 served discovery requests on Defendants in February and March of this year, Defendants have failed and refused to respond to GC2's interrogatories and requests.

## FACTUAL BACKGROUND

GC2 alleges that Defendants have infringed GC2's Copyrighted Works mainly through the IGT Interactive Remote Game Server ("RGS") product line and the DoubleDown Casino product line.[3]  Both of these product lines use the Internet and "technology" to distribute GC2 games through multiple distribution channels to end users for both non-wagering use and internet gaming.  GC2 also alleges that Defendants materially contribute to and/or cause infringement by their end users because when an end user plays a game containing the unlicensed GC2 Copyrighted Work via one of these product lines, the end user makes an unauthorized additional copy of the Work.  (Amended Complaint, Dkt. 18 ¶ 118.)  GC2 further alleges that one or more IGT Defendants and DDI materially contribute to the infringement by others (including Masque, Encore, end user DOE Defendants 1 and 2, Facebook, Apple, Google Play and Amazon.com) because the IGT Defendants and DDI supply the unlicensed GC2 Copyrighted Works as content and they supply the device (the remote game server) to cause others to download, copy, display, publish and distribute the unlicensed GC2 Copyrighted Works.  (Id. ¶ 295.)

In their answer to the Amended Complaint, the IGT Defendants and DoubleDown admit that the agreement IGT NV had with GC2 ***specifically excluded*** non-wagering devices, non-

---

[3] Both the IGT Interactive RGS product line and the DoubleDown Casino product line include the following games: Pharaoh's Fortune, Coyote Moon, and on information and belief, Kitty Glitter.

wagered gaming, and internet gaming. (See Dkt. 163, ¶ 96-97.) However, the same defendants then admit that these product lines are used for non-wagered gaming and internet gaming. (Id. at ¶¶ 133, 145-146 (non-wagering use), ¶101 (game play via the internet for real money).)

To marshal evidence to prove its claims, GC2 has served "How the Technology Works" interrogatories and requests for production of documents on Defendants, all of which are specifically directed to how the Defendants' technology (owned and used by Defendants) functions to copy, display and distribute (throughout the distribution channel) to the end users, up to and including the point where end users are able to download a copy of the infringing game(s) to their own devices.[4] (See Ex. D, at Columns 3-6 (evidencing Defendants knowledge of certain acts) and Columns 6-53 (evidencing multiple "embodiments" Defendants' claim to have "invented" to perform these acts).) Which of the embodiments disclosed in the patent, if any, that comprise the Interactive Remote Game Server product line or the DoubleDown product line at issue is something that is solely and squarely in Defendants' possession.[5]

To date, despite numerous meet and confer efforts, Defendants have launched and continue to advance what GC2 contends are meritless objections resulting in a complete failure to provide answers to interrogatories aimed at determining how the technology works, nor have they provided the underlying requested documents.[6] GC2 respectfully submits that its discovery

---

[4] GC2 has served discovery requests asking Defendants to describe how they "converted" the land based version of the GC2 Games to ***create*** unauthorized copies and derivative works for use in online, mobile and PC versions on their RGS and DoubleDown Casino product lines. (See Ex. B, Defendant IGT NV's Answer to Interrogatory No. 11 where Defendants reference their conversion from land based to mobile, online and PC versions). The parties are currently in meet and confer discussions regarding discovery involving the unauthorized conversion and "creation" of GC2 works and GC2 hopes will be resolved without the need for court intervention.

[5] GC2 requested an inspection of and ability to forensically copy the New Jersey server through its technical experts in order to make this assessment; however, that request is denied.

[6] Defendants counsel asked GC2 to inform the Court that at the last meet and confer (October 12, 2017) Defendants' counsel represented that they would ***ask*** their clients if the clients could

requests have been outstanding since February and March of 2017.  In an effort to prepare its case in accordance with the deadlines set forth in this Court's scheduling order, and to have detailed evidence to present at trial, GC2 needs these detailed interrogatory responses and documents.  Accordingly, GC2 requests that this Court intervene and enter an Order compelling Defendants to respond to these outstanding discovery requests within fourteen (14) days.

## ARGUMENT

**I.      Standard**

The scope of discovery under Rule 26 is broad and liberal. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).  A party may discover "any nonprivileged matter that is relevant to the party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26.

A party may file a motion to compel discovery under Rule 37 if another party fails to respond to a discovery request or where the party's response is evasive or incomplete. Kodish v. Oakbrook Terrace Fire Prot. Dist., 235 F.R.D. 447, 449 (N.D. Ill. 2006).  In responding to a motion to compel, "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." Id. at 450.  As with all discovery matters, courts have broad

---

provide a "general description" rather than the requested detailed interrogatory answer and would "see" if any responsive documents exist.  When GC2's counsel informed counsel for Defendants that GC2 already provided examples of how this information does and must exist, (examples include Ex. D and U.S. Patents 8,784,196 B2 and 8,777,737 B2), counsel for Defendants, nevertheless, did not commit to providing the requested discovery.

discretion in deciding motions to compel. <u>Medicines Co. v. Mylan Inc.</u>, No. 11 C 1285, 2013 WL 120245, at *2 (N.D. Ill. Jan. 9, 2013) (citing <u>Peals v. Terre Haute Police Dept.</u>, 535 F.2d 621, 629 (7th Cir. 2008)).

**II.**     **Defendants have failed and refused to respond to GC2's interrogatories and requests for production seeking information concerning the technology used in connection with their infringement of GC2's Copyrighted Works.**

IGT's U.S. Patent No. 9,767,643 B2 (issued September 19, 2017) titled "Internet Remote Game Server" reveals Defendants' intimate and detailed knowledge of the specific workings of their patented technology, technology they use to make available the graphics and artwork for the GC2 "At Issue Games" Pharaoh's Fortune, Coyote Moon and Kitty Glitter for display to and use (for game play) by end users on the DoubleDown Casino and through IGT Interactive's online and mobile products (i.e., Remote Game Server products). (See Ex. D.)[7]

Yet, when it comes to being held accountable for acts of copyright infringement via use of their technology, the question of "if" and "how" (number of times) Defendants' ___*own*___ technology (i.e., internet remote game server) functions to copy, create derivative works, display, and distribute their infringing games through their distribution channels up to and including how a copy is made on an end user's computer, tablet or mobile device, Defendants' feign a **"lack** knowledge or information sufficient to form a belief" about (Dkt. 163 ¶ 118), or outright deny knowledge. (Dkt. 163 ¶¶ 268, 295-297, 360.)   These stances in Defendants' Answer (albeit untenable and incredible) place the topic of how the technology works, and Defendants' credibility, at issue.

---

[7] This patent was withheld from discovery even though it appears to reveal Defendants' knowledge that its acts would enable, induce and facilitate infringement and is relevant to the knowledge issue in the DMCA count (<u>see</u> 17 U.S.C. § 1202) as well as to infringement.

Worse, after placing the functioning ***of their own technology*** at issue through their Answers to GC2's Amended Complaint, Defendants have refused to provide GC2 with responses to interrogatories and document requests seeking the information necessary to prove its copyright claims. Again, instead Defendants advance a recurring series of "lack of knowledge," "lack of relevance," "lack of understanding," and/or "too burdensome and oppressive" objections to the following interrogatory:

> "State in detail how the technology works that allow the graphics and artwork for the games Pharaoh's Fortune, Coyote Moon, and/or Kitty Glitter to be made available to (and used by) end users for game play on DoubleDown Casino, remote game servers, and IGT Interactive products.

(See IGT NV's Answer to GC2's Interrogatory No. 5; DDI's Answer to GC2's Interrogatory No. 3; IGT's Answer to GC2's Interrogatory No. 4.)

Defendants raise the same "lack of understanding," "lack of relevance," and "burdensome/oppressive" objections to the following requests by GC2 for production of documents:

> "All Documents sufficient to permit an analysis of the number of copies and distributions made, ***and the servers, technology and processes used for IGT Interactive to make the artwork and graphics for the games Pharaoh's fortune, Coyote Moon, and/or Kitty Glitter available to end users for game play.***" (See IGT NV's Response to Request for Production Nos. 13 and 19; see also IGT's Response to Request for Production No. 7.) (emphasis added)

> "All Documents sufficient to permit an analysis of the number of copies and distributions made, ***and the servers, technology and processes used for DoubleDown Casino to make the artwork and graphics for the games Pharaoh's Fortune, Coyote Moon, and/or Kitty Glitter available to end users for game play.***" (See DDI's Response to Request for Production Nos. 9 and 19.)

Resting on their objections, Defendants state they ***"will not search for or produce documents responsive to th[ese] Requests."*** In taking this stance, these Defendants outright concealed all evidence of their technology (including the existence of their own patent applications, and the

patent documents relating to the same), and they avoided producing any testimony or evidence of their infringing acts, or purported denial of the same.[8]

Rather than agree to respond fully and completely to the discovery requests, during a final telephone meet and confer conference held on October 12, 2017 (with Defendants' counsel Eric Macey, Brandon Thompson and Rebekah Parker), Defendants' counsel represented only that they would ***ask*** their clients if they ***could*** provide a "general description." They, however, would not request that they provide a complete answer to GC2's interrogatories seeking detailed information concerning how Defendants' technology is used to copy GC2's copyrighted graphics and create infringing works, and display and distribute those infringing works to end users.[9] Also, notwithstanding that Defendants' response was due months ago, Defendants' counsel further stated during the October 12, 2017 meet and confer that they would now ***ask*** Defendants if they possess documents that would show how an end user makes its own copy of the infringing games but nevertheless refused to produce any other complete response to the interrogatory or provide a complete set of responsive documents on this issue. Defendants' sole stated ground was that in their view, notwithstanding the denials in their answer and/or their professed "lack of knowledge and information" to answer the allegation of ¶ 118 of the Amended Complaint, GC2's requested information ***is not relevant*** to GC2's claims.

---

[8] IGT Defendants also have objected to sitting for a Rule 30(b)(6) deposition concerning their patents and how their technology is used to distribute their infringing games to end users, asserting that the "technical aspects" of their RGS server has nothing to do with GC2's claims. This is the subject of a yet another meet and confer discussion to take place this week (week of October 16, 2017). In addition, Defendants' Answers to GC2's contention interrogatories on the issues of apportionment expressly provide that they intend to assert that their use of the "remote game server software" is a factor to support their apportionment defense to GC2's copyright damages claims. (See IGT NV's Defendants' Answer to Interrogatory No. 12, DDI's Answer to Contention Interrogatory No. 15, and IGT's Answer to Interrogatory No. 11.) This further evidences the meritless assertion of a relevance objection.

[9] Defendants also intimated that they could avoid providing a detailed answer by simply "referring to documents."

GC2 respectfully submits that Defendants positions and assertions are untenable. GC2's claims include allegations that Defendants' end users are committing infringement through the use of Defendants' DoubleDown Casino, remote game server, and IGT Interactive products. GC2 must be permitted to obtain precise discovery from Defendants (the only source of this evidence) to be able to understand and present evidence to a jury detailing exactly how Defendants used GC2's copyrighted artwork and graphics to copy, display and distribute infringing interactive and mobile games, display those games, and distribute them to end users, as well as determine the extent of the number of unauthorized copies created during the applicable period of infringement.

Accordingly, GC2 respectfully submits that Defendants' objections to and refusal to respond to GC2's discovery requests is improper and in bad faith and requests an order compelling Defendants to respond to the aforementioned interrogatories and requests for production within fourteen (14) days. The information and documents requested here are also relevant and necessary for depositions currently scheduled to be taken in November 2017 and in an effort to prepare this case for trial in connection with this Court's scheduling order.

## CONCLUSION

For the reasons detailed above, Plaintiff GC2 respectfully requests this Court enter an Order requiring Defendants to respond to and produce the following information and documents:

(1) GC2's Interrogatory No. 4 to IGT and GC2's Request for Production No. 7 to IGT;

(2) GC2's Interrogatory No. 5 to IGT NV and GC2's Request for Production Nos. 13 and 19 to IGT NV; and

(3) GC2's Interrogatory No. 3 to DDI and GC2's Request for Production Nos. 9 and 19 to DDI.

In addition, GC2 requests that Defendants be admonished not to provide anything but full and complete answers to the interrogatories and not simply "refer to documents" in order to sidestep any resulting requirement that they have to answer, as was suggested in the October 12, meet and confer.

Dated: October 16, 2017                           Respectfully submitted,

By:  /s/ Kara E. F. Cenar
       Kara E. F. Cenar (ARDC 6198864)
       (kcenar@greensfelder.com)
       Ricardo Meza (ARDC 6202784)
       (rmeza@greensfelder.com)
       Ryan J. Yager (ARDC 6308231)
       (ryager@greensfelder.com)
       Greensfelder, Hemker & Gale, P.C.
       200 W. Madison St., Ste. 3300
       Chicago, IL 60606
       312-419-9090 (T); 312-419-1930 (F)

       John E. Petite
       (jep@greensfelder.com)
       Kirsten M. Ahmad
       (km@greensfelder.com)
       Greensfelder, Hemker & Gale, P.C.
       10 South Broadway, Ste. 2000
       St. Louis, Missouri 63102
       314-241-9090 (T); 314-241-8624 (F)

       *Attorneys for Plaintiff GC2 Incorporated*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system this 16th day of October, 2017, upon all counsel of record.

                    /s/ Kara E. F. Cenar

## <u>RULE 37 CERTIFICATION</u>

Pursuant to Local Rule 37.2, I hereby certify that detailed meet and confer correspondence on technology related discovery was exchanged (via letter and email) between the parties on June 28, 29, August 25, 28, September 8, 9, 18, 19, 20, 25, 27, and 29th, and October 5 and 6, 2017, between Kara Cenar (counsel for GC2) and Joshua Liebman and Eric Macey (counsel for IGT Defendants). Counsel for the parties also held meet and confer calls on July 6 and 7, August 29, September 20, 27 and 29th, and October 12, 2017, where impasse was finally reached.

Respectfully submitted,

/s/Kara E. F. Cenar