UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GC2 INCORPORATED, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>INTERNATIONAL GAME TECHNOLOGY )<br>PLC, ET AL. )<br>)<br>Defendants. )<br>) | Case No.: 1:16-cv-08794<br><br>Judge:         Matthew F. Kennelly<br>Magistrate Judge:  Mary M. Rowland |

## GC2'S OPPOSITION TO DEFENDANT DOUBLEDOWN INTERACTIVE LLC'S MOTION FOR PROTECTIVE ORDER AND GC2 INCORPORATED'S CROSS MOTION TO COMPEL

GC2 Incorporated's (GC2) response in opposition to Defendant DoubleDown Interactive LLC's ("DDI") Motion for Protective Order (Dkt. 203) and GC2's Cross Motion to Compel discovery from DDI. As discussed in detail herein, there are several reasons why DDI's Motion for Protective Order was filed without reasonable basis.

### I.  BACKGROUND

Defendant DoubleDown Interactive (DDI) is a separate entity and is a separately named defendant from International Game Technology and IGT NV. As such, it has separate discovery obligations from the other defendants.[1]  DoubleDown Casino is a separate product line from the IGT Interactive Product line, thus discovery issues do not have the same "IGT Family" complexity as the Interactive Product line. Nevertheless, despite this distinction:

---

[1] At one point DDI was a wholly owned subsidiary of International Game Technology, but in June 2017, International Game Technology sold DDI, which is now a "under new ownership" and operates under a license with IGT NV for the games at issue.

- DDI has never served Initial Disclosures that are separate from the other IGT Defendants. This has blurred the lines as to the witnesses DDI may call and what documents DDI may intend to use at trial for issues directed to them.

- DDI did not produce documents identified in its initial disclosures, despite being requested to do so in Request for Document No. 1, now served almost a year ago.

- DDI has objected to virtually every document request served upon it. While its counsel complains of burden, to date DDI has produced only 14,765 documents (approximately 11,637 of which are "art asset files" not produced in the form requested by GC2).

- DDI has not served separate supplemental initial disclosures since its new ownership, again, blurring the lines between what IGT Defendants are identifying and DDI is identifying as witnesses with knowledge and documents they will be relying upon.

- DDI has not supplemented any interrogatory answers since its new ownership.

In mid-December 2017, DDI served answers to GC2's Financial Interrogatories. DDI's answers affirmatively state it will produce reports in lieu of answering the interrogatory, but now by protective order DDI objects to producing the reports. See **Exhibit A**, DDI Answer to Financial Interrogatories.

In November 2017, employees of DDI namely Amy Baker (controller), John Clelland (Head of Marketing and the "data lake" on usage of DoubleDown Casino) and Joe Sigrist (General Manager) were deposed. Each of these deponents were identified in Defendants' "collective" Initial Disclosures as having knowledge and information Defendants would rely upon in the case. During their deposition, these deponents identified various documents and reports that could be generated which would produce relevant information for liability and damages issues in the case. And, although GC2 asked DDI's counsel for production of these documents and reports at the deposition, *DDI's counsel insisted that GC2 serve a request for production of documents.* Thus, in order to honor their request, GC2 obtained the transcript, prepared the request, and served new document requests on the Defendant DDI. GC2 prepared

the Requests and served them on the Defendants in December 2017. In addition, as part of an earlier filed Motion to Compel filed by GC2 the Court instructed GC2 to serve new discovery requests directed to damages. GC2 did that. In fact, these financial requests were contained in the same Requests for Production as the requests directed to documents identified during depositions. In addition, GC2 served new requests directed to information its damages expert will need. In total, GC2 issued 61 Requests for Production of Documents (Exhibit A) and each is addressed below.

Rather than respond to GC2's document requests as required under Fed. R. Civ. P. 34, DDI's counsel simply tacked DDI Requests for Production to the end of the Motion for Protective Order the IGT Defendants (now not owners of DDI) filed. In that motion, DDI argues burden about production relating to issues that are different and concern an entirely different product line (IGT Interactive). Moreover, the portion of the Motion for Protective Order concerning DDI's Requests for Production of Documents, confirm that no "meet and confer" was held. (Motion p. 10, fn 7.) The Motion states "it does not have space" to address the issues DDI purportedly has with respect to the Requests. In other words, without lodging any specific objection to any specific request for production, DDI claims burden—based on discovery requests served on other Defendants. That is not a legitimate basis to refuse to respond to requests for documents.[2] GC2 respectfully submits that DDI's Motion for Protective Order should be denied.

## II. GC2's Cross Motion To Compel

GC2 is entitled to serve DDI with Requests for Production of Documents. Rule 34 Fed. R. Civ. P. GC2 is also entitled to serve follow-up discovery requests, and/or more specific

---

[2] Likewise, DDI appears to be claiming it has produced a "large" volume of documents, but again, it only points to production from other Defendants. In reality, DDI has produced very few documents.

requests as it discovers the existence of documents during depositions. It is also entitled to serve follow-up discovery seeking documents a witnesses identifies, and/or for reports that witnesses say can be generated by Defendants from data a Defendant may maintain. Rule 34 Fed. R. Civ. P. Finally, GC2 is entitled to serve document requests to obtain information necessary to prepare its expert reports in the time frame set by the case schedule.

Defendant DDI has an obligation to prepare and file written responses to the Requests, and if it fails to do so, it runs the risk of having the objections waived. *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ill. 2006) ("Failure to timely assert objections to discovery requests may result in a waiver of all objections that could have been seasonably asserted."). While DDI filed a Motion for Protective Order, DDI did not assert any substantive objections to any of the individual GC2 Requests. Any objections raised now should be deemed waived. Counsel for GC2 held a meet and confer with counsel for DoubleDown on January 2, 2018. During that meet and confer, Defendants' counsel stated that it would stand on its position set forth in its Motion and would not provide responses. Counsel for DoubleDown also said it would provide the reports referred to in its interrogatory answers "soon" but failed to provide any date for its production. Respectfully, responding by saying you will produce documents "soon" is inappropriate.

### III.   Argument

GC2's Request for Production of Documents seeks relevant information necessary for the presentation of GC2's liability and damages case at trial.

#### A. The Documents Are Relevant to the Copyright Damages Issues

Without citing to a single substantive case on Copyright damages Defendant DDI seeks an order from this Court blocking GC2 from highly relevant and material discovery needed for

4

proper damages expert analysis under the Copyright Act. 17 U.S.C. §504.[3] Defendants' Motion

invites legal error because DDI seeks to block and delay providing information necessary for

GC2's expert witnesses to prepare and complete their reports within the Court's case schedule.

As set forth in 17 USC §504(b) titled "Actual Damages and Profits"—

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

The value of the infringer's use is a permissible basis for estimating actual damages.

*Deltak, Inc. v. Advanced Systems Inc.*, 767 F.2d 357 (7th Cir 1985), *citing, Sid & Marty Krofft*

*Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977). Value

of use "amounts to a determination of what a willing buyer would have been reasonably required

to pay to a willing seller for plaintiff['s] work" is a general principle which remains a known

acceptable measure in the Seventh Circuit. *Sid & Marty Krofft Television Productions*, 562 F.2d

at 1174. *See also*, Seventh Circuit Jury Instruction 12.8.2 Damages -Actual Damages and cases

cited therein. S*ee, e.g., In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 563 (2d Cir. 1994)

(decrease in market value); *Davis v. The Gap, Inc.*, 246 F.3d 152, 161, 167 (2d Cir. 2001) (cost

of hypothetical license; lost profits); *Sid & Marty Krofft Television Products, Inc. v. McDonald's*

*Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977) (cost of hypothetical license); *McRoberts Software,*

*Inc. v. Media 100, Inc.*, 329 F.3d 557, 569 (7th Cir. 2003) (same). In fact, the so-called *Georgia-*

*Pacific* factors are one of the recognized methodologies used in hypothetical negotiation cases

---

[3] GC2's document requests relate to very common and typical factual information on the issue of copyright actual damages and disgorgement of profit damages, both allowable and recognized areas of recovery under the Copyright Act. 17 U.S.C. §504. The requests specifically, and properly seek factual information necessary to present evidence on disgorgement of profits, willing licensor/licensee information, Georgia Pacific Factors and Market analysis.

for both patent and Copyright. *Shepherd Mgmt. Grp., Inc. v. Michael Wilkov Cantoni, LP*, No. 1:07-CV-0678-RLV, 2008 WL 11336460, at *6 (N.D. Ga. Dec. 17, 2008) (stating that consideration of the Georgia-Pacific factors is not unreasonable in a copyright infringement case "as they contain common-sense factors that a licensor and licensee would use when negotiating a licensing agreement."); *Real View, LLC. v. 20-20 Techs., Inc.*, 878 F. Supp. 2d 282, 285 (D. Mass. 2012) (finding it a reasonable methodology to consider *Georgia-Pacific* factors in a copyright dispute); *Recursion Software, Inc. v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2012 WL 1576252, at *7 (E.D. Tex. May 4, 2012) (considering the *Georgia-Pacific* factors in a copyright infringement case); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003)("it is not improper for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on 'undue speculation'"). The document requests GC2 has served are fairly standard document requests. They are directed to disgorgement of profits, actual damages determined under a willing buyer/willing seller analysis and the *Georgia-Pacific* factors. The Requests were written so that GC2's requests would obtain the required type of information that damages expert will need in order to conduct their analysis for each of these types of damages. The requests GC2 served are typically produced in every case for expert reports and analysis.

### B. DDI Refusal To Respond is Without Merit

DDI raises no objections (substantive or otherwise) to the GC2 Requests either in written form or in its Motion for Protective Order, other than to say that there are a lot of separate requests. GC2 served 61 requests for Production of Documents, each are discussed below.

> GC2 Request No. 1. Any and all agreements for the period 2011 to Present between DDI and any IGT Entity. **Reason Needed:** Liability, Vicarious Liability. Damages. Calculation of disgorgement of profits.

6

GC2 Request No. 2. Any and all agreements for the period 2011 to Present between DDI and any non-IGT Entity that involve the licensing, sale, transfer, or distribution of the accused games. **Reason Needed:** Damages. Calculation of disgorgement of profits.

GC2 Request No. 3. Any and all agreements with entities to whom DDI has paid royalties or licensing fees for the period 2009 to Present, including but not limited to:
a. Any and all licensing agreements between DDI and High 5 Games, Sony, King Show Games, Design Works Gaming, Action Gaming, and/or Warner Bros.
    i. Any and all licensing agreements between DDI and any other "Licensor" listed in IGTNV 038603-IGTNV 038756 at IGTNV 038745-IGTNV 038478.
**Reason Needed:** Damages. Comparative license agreements for the market approach and *Georgia-Pacific* factors 2, 12, 13, and 15.

GC2 Request No. 4. Any and all contracts and agreements for the period 2011 to Present that show how revenue from the accused games has been and is currently shared between DDI and any other IGT Entities. **Reason Needed:** Damages. Calculation of disgorgement of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13, and 15.

GC2 Request No. 5. Any and all documents showing DDI's U.S revenue from advertising for each of the accused games, broken out by desktop use and mobile use, for the period 2013 to Present. **Reason Needed:** Damages. Calculation of disgorgement of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13, and 15.

GC2 Request No. 6. Any and all documents showing DDI's non-U.S revenue from advertising for each of the accused games, broken out by desktop use and mobile use, for the period 2013 to Present. **Reason Needed:** Damages. Calculation of disgorgement of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13, and 15.

GC2 Request No. 7. Any and all documents showing DDI's U.S. gross casino revenue from slot games by month for the period 2010 to Present. **Reason Needed:** Damages. Calculation of disgorgement of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13, and 15.

GC2 Request No. 8. Any and all documents showing DDI's non-U.S. gross casino revenue from slot games by month for the period 2010 to Present. **Reason Needed:** Damages. Calculation of disgorgement of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13, and 15.

GC2 Request No. 9. Any and all documents showing DDI's U.S. gross casino revenue and net casino revenue received for each of the accused games, broken out by desktop use and mobile use, for the period 2013 to Present. **Reason Needed:** Damages. Calculation of disgorgement of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13, and 15.

GC2 Request No. 10. Any and all documents showing DDI's non-U.S. gross casino revenue and net casino revenue received for each of the accused games, broken out by

desktop use and mobile use, for the period 2013 to Present. **Reason Needed:** Calculation of disgorgement of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13, and 15.

GC2 Request No. 11. Any and all documents showing the cost of goods sold for the U.S. revenue of DDI for each of the accused games, broken out by desktop use and mobile use, for the period 2013 to Present. **Reason Needed:** Calculation of disgorgement of profits and *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 12. Any and all documents showing the cost of goods sold for the non-U.S. revenue of DOI for each of the accused games, broken out by desktop use and mobile use, for the period 2013 to Present. **Reason Needed:** Calculation of disgorgement of profits and *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 13. Any and all documents that detail all costs and cost margins and/or pertain to gross, operating, net, and incremental profit margins for U.S. revenue of DDI for each of the accused games, broken out by desktop use and mobile use, for the period 2013 to Present. **Reason Needed:** Calculation of disgorgement of profits and *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 14. Any and all documents that detail all costs and cost margins and/or pertain to gross, operating, net, and incremental profit margins for non-U.S. revenue of DDI for each of the accused games, broken out by desktop use and mobile use, for the period 2013 to Present. **Reason Needed:** Calculation of disgorgement of profits and *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 15. All of DDI's audited annual financial statements for the period 2010 to Present. **Reason Needed:** Calculation of disgorgement of profits and *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 16. Any and all of DDI's detailed profit and loss ("P&L") statements and/or detailed income statements by month for the period January 2017 to Present. **Reason Needed:** Calculation of disgorgement of profits and *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 17. Any and all documents that were utilized in the creation of, and/or in any way support: DDI_000002, DDI_000529, and DDI_000530. **Reason Needed:** Independent expert review based on documents provided in the ordinary course of business. Their experts will need this as well. Detailed expense accounts are needed to determine which expenses are incremental and which expenses are fixed.

GC2 Request No. 18. Any and all documents that were utilized in the creation of, and/or in any way support the "Gross Revenue Share" values in DDI_000001. **Reason Needed:** Independent expert review based on documents provided in the ordinary course of business. Their experts will need this as well.

GC2 Request No. 19. Any and all documents that were utilized in the creation of, and/or in any way support the "Deductions" values in DDI_000001. **Reason Needed:**

Independent expert review based on documents provided in the ordinary course of business. Their experts will need this as well. Detailed expense accounts are needed to determine which expenses are incremental and which expenses are fixed.

GC2 Request No. 20. Any and all documents that show how the amount of DDI's gross revenue was calculated for each of the accused games in the "Gross Revenue Share" column of DDI_000001. **Reason Needed:** Independent expert review based on documents provided in the ordinary course of business. Their experts will need this as well.

GC2 Request No. 21. Any and all documents that show the how the amount of deductions was calculated for each of the accused games in DDI_000001. **Reason Needed:** Independent expert review based on documents provided in the ordinary course of business. Their experts will need this as well. Detailed expense accounts are needed to determine which expenses are incremental and which expenses are fixed.

GC2 Request No. 22. Any and all documents that break out the "Deductions" column in DDI_000001 by "processing fees, revenue share, refunds and chargebacks, VAT and sales tax." **Reason Needed:** Independent expert review based on documents provided in the ordinary course of business. Their experts will need this as well. Detailed expense accounts are needed to determine which expenses are incremental and which expenses are fixed.

GC2 Request No. 23. Any and all documents that provide an updated version of DDI_000001 that extends through the time period January 2017 to Present. **Reason Needed:** Date ends in December 2016. Report needs to be updated through December 2017 for expert reports.

GC2 Request No. 24. Any and all documents that provide an updated version of DDI_000002 that extends through the time period January 2017 to Present. **Reason Needed:** Date ends in March 2017. Data is needed through December 2017 for expert reports.

GC2 Request No. 25. Any and all documents that provide the same monthly metrics as DDI_000002 (Chips Wagered - All Players, Chips Wagered - Payers Only, DAU, Average DAU, and MAU on last day of month) for the period 2010 to Present for each game on the DoubleDown Casino (including all slot games and other games). **Reason Needed:** Comparative license agreements adjusted to make comparable, apportionment of profits, additional income or profit earned for the income approach, and *Georgia-Pacific* factors 9, 13, and 15.

GC2 Request No. 26. Any and all documents that provide the same monthly metrics as DDI_000002 (Chips Wagered - All Players, Chips Wagered - Payers Only, DAU, Average DAU, and MAU on last day of month) for the period 2010 to Present for the entire DoubleDown Casino (including all slot games and other games). **Reason Needed:** Comparative license agreements adjusted to make comparable, apportionment of profits,

additional income or profit earned for the income approach, and *Georgia-Pacific* factors 9, 13, and 15.

GC2 Request No. 27. Any and all documents that define "lines played" (as seen in Appendix D of the July 12, 2012 Confidential Development and License Agreement between High 5 Games and IGT).

      a. Any and all documents that provide monthly "lines played" (as seen in Appendix D of the July 12, 2012 Confidential Development and License Agreement between High 5 Games and IGT) for the period 2010 to Present for each game on the DoubleDown Casino (including all slot games and other games).

**Reason Needed:** Comparative license agreements adjusted to make comparable, apportionment of profits, additional income or profit earned for the income approach, and *Georgia-Pacific* factors 2, 9, 12, 13, and 15.

GC2 Request No. 28. Any and all documents that define "lines played" (as described on pages 19-20 of the Deposition of Amy Baker, November 17, 2017 [Rough Draft Transcript]).

      a. Any and all documents that provide monthly "lines played" (as described on pages 19-20 of the Deposition of Amy Baker, November 17, 2017 [Rough Draft Transcript]) for the period 2010 to Present for each game on the DoubleDown Casino (including all slot games and other games).

**Reason Needed:** Calculation of disgorgement of profits, apportionment of profits, comparative license agreements needed for market approach, additional revenue or profit earned for the income approach, and *Georgia-Pacific* factors 8, 9, 10, 11, 13 and 15.

GC2 Request No. 29. Any and all documents that provide lifetime DAU by month for the period 2010 to Present for each game on the DoubleDown Casino (including all slot games and other games). **Reason Needed:** Calculation of disgorgement of profits, apportionment of profits, comparative license agreements needed for market approach, additional revenue or profit earned for the income approach, and *Georgia-Pacific* factors 9, 8, 10, 11, 13, and 15.

GC2 Request No. 30. Any and all documents that list the games made available to DDI by IGT for potential use in the DoubleDown Casino, for the period 2011 to Present. **Reason Needed:** Apportionment of profits and *Georgia-Pacific* factor 9.

GC2 Request No. 31. Any and all documents that show the metrics provided to DDI by IGT regarding the performance of land-based games that IGT made available to DDI for potential use in the DoubleDown Casino, for the period 2011 to Present. **Reason Needed:** Apportionment of profits, comparative license agreements for the market approach, income approach – additional revenues or profits earned, and *Georgia-Pacific* factor 9.

GC2 Request No. 32. Any and all documents that show the metrics provided to DDI by IGT regarding the performance of Interactive games that IGT made available to DDI for

potential use in the DoubleDown Casino, for the period 2011 to Present. **Reason Needed:** Apportionment of profits, comparative license agreements for the market approach, income approach – additional revenues or profits earned, and *Georgia-Pacific* factor 9.

GC2 Request No. 33. All documents for the period 2012 to Present related to the expected performance of the accused games, including but not limited to pro forma or forecasted P&L statements, estimates, budgets, forecasts, pro forma financial statements, projections and hurdle rates. **Reason Needed:** What was known at the date of the hypothetical negotiation, apportionment of profits, and *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 34. All plans or studies for the period 2012 to Present related to marketing, operations, competition, market dynamics, market penetration, and/or business strategy related to the accused games. **Reason Needed:** What was known at the date of the hypothetical negotiation, apportionment of profits, and *Georgia-Pacific* factors 13 and 15.

GC2 Request No. 35. All documents, studies, reports, industry reports, and articles for the period 2007 to Present that describe or pertain in any way to the online real money gambling, social gambling, mobile gambling, and casino gambling markets in which IGT operates, including but not limited to: (a) Market shares; (b) Market growth rates; (c) Competitors; (d) Actual and anticipated market shares; and (e) Product sales and profitability. **Reason Needed:** What was known at the date of the hypothetical negotiation, apportionment of profits, and *Georgia-Pacific* factors 13 and 15.

GC2 Request No. 36. Any and all documents that were utilized in the creation of, and/or in any way support IGT's 2015 Sustainability Report (Clelland Exhibit 76), including but not limited to the omnibus study that supports the claim on page 49 of the report that there are more than 71 million social casino players in U.S. alone. **Reason Needed:** Apportionment of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13, and 15.

GC2 Request No. 37. Any and all documents that were utilized in the creation of, and/or in any way support IGT's 2016 Sustainability Report (Clelland Exhibit 77). **Reason Needed:** Apportionment of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13.

GC2 Request No. 38. Any and all studies or other documents that were utilized in the creation of, and/or in any way support the presentation made by Joe Sigrist in Sigrist Exhibit 83. **Reason Needed:** Apportionment of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13, and 15.

GC2 Request No. 39. Any and all monthly player pulse studies conducted by DDI for the period 2010 to Present. **Reason Needed:** Apportionment of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13.

GC2 Request No. 40. Any and all documents that aggregate and/or summarize the information contained in DDI's player pulse studies for the period 2010 to Present. **Reason Needed:** Apportionment of profits and *Georgia-Pacific* factors 6, 8, 10, 11, 13.

GC2 Request No. 41. Any and all consumer surveys and/or studies conducted by DDI for the period 2010 to Present. **Reason Needed:** Apportionment of profits and *Georgia-Pacific* factors 9, 10, and 13.

GC2 Request No. 42. Product overviews and/or summaries for the accused games, for the period 2012 to Present. **Reason Needed:** Apportionment of profits and *Georgia-Pacific* factors 8, 9, 10, 11, 13, and 15.

GC2 Request No. 43. Any and all documents that show how the "Chips Wagered" column in IGTNV 038603-IGTNV 038756 at IGTNV 038745-IGTNV 038478 was determined. **Reason Needed:** Independent expert review based on documents provided in the ordinary course of business. Their experts will need this as well. It is also needed for apportionment of profits.

GC2 Request No. 44. Any and all documents that were utilized in the creation of, and/or in any way support the "Chips Wagered" column in IGTNV _038603-IGTNV _038756 at IGTNV _038745-IGTNV 038478. **Reason Needed:** Independent expert review based on documents provided in the ordinary course of business. Their experts will need this as well. It is also needed for apportionment of profits.

GC2 Request No. 45. Any and all documents relating to the sale of DDI to DoubleU (as described on page 151 of the Deposition of Joe Sigrist, November 15, 2017 [Rough Draft Transcript]). **Reason Needed:** Calculation of disgorgement of profits; *Georgia-Pacific* factors 6, 10, and 15.

GC2 Request No. 46. Any and all valuation reports, market research, and other documents concerning royalty rates relating to games, including but not limited to reports received by DDI from KPMG, for the period 2010 to Present (as described on page 166 of the Deposition of Amy Baker, November 17, 2017 [Rough Draft Transcript]). **Reason Needed:** Calculation of disgorgement of profits, apportionment of profits, and *Georgia-Pacific* factors 12, 13, and 15.

GC2 Request No. 47. Any and all DDI "payment by-product" reports (as described on page 221 of the Deposition of Amy Baker, November 17, 2017 [Rough Draft Transcript]) and other documents that provide monthly purchased chips wagered (i.e. chips wagered excluding free chips) for the period 2010 to Present for each game on the DoubleDown Casino (including all slot games and other games). **Reason Needed:** Calculation of disgorgement of profits, comparative license agreements needed for the market approach, additional income or profit earned for the income approach, *Georgia-Pacific* factors 8, 9, 10, 11, 13, and 15.

GC2 Request No. 48. Any and all monthly "processor reports" for the period 2010 to Present (as described on page 250 of the Deposition of Amy Baker, November 17, 2017 [Rough Draft Transcript]). **Reason Needed:** Calculation of disgorgement of profits, comparative license agreements needed for the market approach, additional income or profit earned for the income approach, *Georgia-Pacific* factors 8, 9, 10, 11, 13, and 15.

GC2 Request No. 49. Any and all monthly "chart[s] of accounts for DoubleDown Interactive" for the period 2010 to Present (as described on page 274 of the Deposition of

Amy Baker, November 17, 2017 [Rough Draft Transcript]). **Reason Needed:** Calculation of disgorgement of profits and *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 50. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) that came from operation of the casino on the DoubleDown Casino website each month for the period 2010 to Present.

      a. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from slot games that came from operation of the casino on the DoubleDown Casino website each month for the period 2010 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

      b. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from each of the accused games that came from operation of the casino on the DoubleDown Casino website each month for the period 2013 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 51. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) that came from operation of the casino on Facebook each month for the period 2010 to Present.

      a. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from slot games that came from operation of the casino on Facebook each month for the period 2010 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

      b. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from each of the accused games that came from operation of the casino on Facebook each month for the period 2013 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 52. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) that came from operation of the casino on Apple iOS each month for the period 2010 to Present.

      a. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from slot games that came from operation of the casino on Apple iOS each month for the period 2010 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

      b. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from each of the accused games that came from operation of the casino on Apple iOS each month for the period 2013 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 53. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) that came from operation of the casino on Samsung each month for the period 2010 to Present.

      a. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from slot games that came from operation of the casino on Samsung each month for the period 2010 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

    b. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from each of the accused games that came from operation of the casino on Samsung each month for the period 2013 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 54. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) that came from operation of the casino on Amazon each month for the period 2010 to Present.

    a. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from slot games that came from operation of the casino on Amazon each month for the period 2010 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

    b. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from each of the accused games that came from operation of the casino on Amazon each month for the period 2013 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 55. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) that came from operation of the casino on Pay Pal each month for the period 2010 to Present.

    a. Any and all documents showing the DDI mobile and desktop revenue and costs from slot games (U.S. and non-U.S.) that came from operation of the casino on PayPal each month for the period 2010 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

    b. Any and all documents showing the DDI mobile and desktop revenue and costs (U.S. and non-U.S.) from each of the accused games that came from operation of the casino on PayPal each month for the period 2013 to Present.

**Reason Needed:** *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 56. Any and all documents showing the monthly and annual revenue (U.S. and non-U.S.) DDI received under the agreements in DDI_000009-DDI_000518. **Reason Needed:** Calculation of disgorgement of profits and *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 57. Any and all documents showing the monthly and annual payments to Casino Affiliates (U.S. and non-U.S.) made by DDI under the agreements in DDI_000009-DDI_000518. **Reason Needed:** Calculation of disgorgement of profits and *Georgia-Pacific* factors 8, 10, 11, 13, and 15.

GC2 Request No. 58. Any and all versions or copies of the product roadmap, as identified by John Clelland (Clelland Dep. 28:5-9), referencing Coyote Moon, Pharaoh's Fortune, or Kitty Glitter. **Reason Needed:** Apportionment of profits, comparative license agreements needed for the market approach, and *Georgia-Pacific* factors 8, 9, 10, 11, 13, and 15.

14

GC2 Request No. 59. Any and all Quarterly Business Review documents, as such documents were identified and described by John Clelland (Clelland Dep. 92:1-21), from 2012 until the present. **Reason Needed:** Apportionment of profits.

GC2 Request No. 60. Screenshots of any foreign language version of Coyote Moon, Pharaoh's Fortune, and Kitty Glitter. **Reason Needed:** *Georgia-Pacific* factors 10 and 11.

GC2 Request No. 61. Documents sufficient to identify the how many of the approximately 32 million+ people that have downloaded the DoubleDown Casino mobile app have landed on the slot lobby section of the app where the Coyote Moon icon, Pharaoh's Fortune icon, and Kitty Glitter icon exist from the January 1, 2013 to the present. (Clelland Dep. 268:20-269:1.) **Reason Needed:** Damages. Calculation of Statutory Damages under DMCA. Calculation of disgorgement of profits, apportionment of profits, and *Georgia-Pacific* factors 6, 9, 10, 11, 13, and 15.

## CONCLUSION

Wherefore, GC2 respectfully requests that DoubleDown's Motion for Protective Order be denied, and GC2's Motion to Compel be granted.

Dated: January 3, 2018                             Respectfully submitted,

By:  /s/ Ricardo Meza
Kara E. F. Cenar (ARDC 6198864)
(kcenar@greensfelder.com)
Ricardo Meza (ARDC 6202784)
(rmeza@greensfelder.com)
Ryan J. Yager (ARDC 6308231)
(ryager@greensfelder.com)
Greensfelder, Hemker & Gale, P.C.
200 W. Madison St., Ste. 3300
Chicago, IL 60606
312-419-9090 (T); 312-419-1930 (F)

John E. Petite
(jep@greensfelder.com)
Kirsten M. Ahmad
(km@greensfelder.com)
Greensfelder, Hemker & Gale, P.C.
10 South Broadway, Ste. 2000
St. Louis, Missouri 63102
314-241-9090 (T); 314-241-8624 (F)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system this 3rd day of January, 2018, upon all counsel of record.

/s/ Ricardo Meza