1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3

 4   GC2 INCORPORATED,                  )   Docket No. 16 C 8794
                                        )
 5                      Plaintiff,      )
                                        )
 6           vs.                        )
                                        )
 7   INTERNATIONAL GAME TECHNOLOGY PLC, )   Chicago, Illinois
     et al.,                            )   December 21, 2017
 8                                      )   10:25 o'clock a.m.
                        Defendant.      )
 9

10            TRANSCRIPT OF PROCEEDINGS - MOTION
         BEFORE THE HONORABLE MATTHEW F. KENNELLY
11

12   APPEARANCES:

13

14   For the Plaintiff:    GREENSFELDER, HEMKER & GALE, P.C.
                           BY:  MR. RYAN J. YAGER
15                         200 West Madison Street, Suite 2700
                           Chicago, IL  60606
16                         (312) 345-5018

17

18   For the Defendants:   NOVACK & MACEY, LLP
                           BY:  MR. JOSHUA EDWARD LIEBMAN
19                         100 North Riverside Plaza, Suite 1500
                           Chicago, IL  60606
20                         (312) 419-6900

21

22

23
     Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                         Official Court Reporter
                           219 S. Dearborn Street, Suite 2102
25                         Chicago, Illinois  60604
                           (312) 435-5639
```

1     (The following proceedings were had in open court:)

2          THE CLERK:  Case No. 16 C 8794, GC2 Incorporated v.

3     International Game.

4          MR. YAGER:  Good morning, your Honor.  Ryan Yager for

5     the plaintiffs.

6          THE COURT:  Say it again?  I'm sorry.

7          MR. YAGER:  Ryan Yager for the plaintiff.

8          MR. LIEBMAN:  Good morning, your Honor.  Josh Liebman

9     on behalf of the defendants.

10          THE COURT:  Okay.  So I actually want to talk first

11     about the second thing that got filed, which is the motion on

12     the number of depositions.  So one of the things that's

13     referenced in the motion is the number of people identified in

14     the 26(a)(1) disclosures by the various defendants.

15          So have you done sort of a grand total?  Or can you

16     give me a ballpark grand total?

17          MR. YAGER:  I want to say it's about 22.

18          THE COURT:  Okay.  And are the -- this is a really

19     important question, so answer it carefully.  Are the 26(a)(1)

20     disclosures good enough -- in other words, compliant with the

21     rule -- that they can allow you to identify who you really

22     need to depose?

23          MR. YAGER:  No.

24          THE COURT:  Then why haven't you been in here telling

25     me they aren't good enough?

1    Basically, the scenario here is you basically have
2    told me, well, there's this huge number of witnesses that have
3    been identified.  We can't be limited to 10 depositions.  I
4    mean, the general level, I get that, but then the obvious
5    question is -- I mean, so if the 26(a)(1) disclosures were
6    good and compliant and they said it's pretty clear that the
7    defendants really have all of these 20-however-many people
8    that they are going to call as witnesses, I would say, that's
9    kind of a no-brainer.  You get to depose all those people.
10    If the answer is, we are having to kind of pick
11    through and figure out who to depose because the 26(a)s aren't
12    good enough, then the question is like, where have you been?
13    Because the 26(a)s were served months and months ago, right?
14    A long time ago.  I think I had you supplement them back in
15    July after I had ruled on the motions to dismiss.
16    So what about that?
17    MR. YAGER:  Well, I would say we have asked the
18    defendants to supplement their initial disclosures multiple
19    times, and we've -- both parties basically agreed to
20    supplement at a reasonable time, and that was after discovery.
21    But beyond that, we have -- you know, we took a
22    deposition of one of the individuals, Ms. Domeeno (phonetic),
23    identified by the defendants.  We asked her about the initial
24    disclosure, and she had no idea what was even said in those
25    initial disclosures about her.

4

1    THE COURT:  Well, you wouldn't expect her to, though.
2  I mean --
3    MR. YAGER:  Right.
4    THE COURT:  -- those things aren't getting vetted by
5  every witness that's named.
6    MR. YAGER:  Sure.  But she didn't have any of the
7  knowledge that they identified that she had had, so we didn't
8  really know it was as big of an issue as it was until, you
9  know, November.  Since then, we've tried to identify -- you
10  know, we've tried to be reasonable about which witnesses we
11  want to depose, we've identified them with particularity
12  except for the few additional ones beyond the 14 that we are
13  requesting.
14    And, you know, so I think we've made an effort to
15  pull through that and find the relevant witnesses and then
16  rely on basically what these individuals are saying during the
17  depositions to identify who, in fact, are the relevant
18  witnesses.
19    THE COURT:  So what you're asking for -- so if I give
20  you what you ask for, what is the total number -- putting
21  aside experts, because I think that's a separate matter, so
22  how many depositions will you end up taking?  How many fact
23  depositions?
24    MR. YAGER:  Yes.  So putting aside the experts, we
25  are --

1      THE COURT:  And if you count each 30(b)(6) as one.

2      MR. YAGER:  Right.

3      Fourteen.  And I want to put one little caveat on

4  this, if I can, and that is, again, a lot of -- during the

5  depositions, a lot of the witnesses are sort of -- there's a

6  lot of finger-pointing intracompany between these defendants.

7  I mean, you saw the org chart the last time we were before

8  you.

9      And so I think our problem is we get into a

10 deposition and they say, well, yeah, I'm the chief of

11 marketing, but X person did it, not me.

12     So the depositions are enlightening in a lot of ways

13 into -- as to who has the actual relevant information.  We're

14 trying to take who we think is relevant.  When we're there,

15 we're finding more relevant people.

16     So we would ask for the 14, we would ask for at

17 least --

18     THE COURT:  Not 10 plus 14.

19     MR. YAGER:  Not 10 plus 14.

20     THE COURT:  Fourteen.

21     MR. YAGER:  Fourteen total, we would ask for leave.

22 Plus, we asked for leave to, you know, come to the Court via

23 motion with a particularized need at least if we find out --

24     THE COURT:  Well, I'm not giving you any blank checks

25 in advance.  We can talk about that in a second .

1    So what you're asking for is an -- you're asking me

2    to say that expert depositions don't count against the 10 and

3    give us four?

4           MR. YAGER:  Correct.

5           THE COURT:  Four extra ones, in other words.

6           MR. YAGER:  Four extra.

7           THE COURT:  Extra fact depositions.

8           MR. YAGER:  Correct.

9           THE COURT:  Okay.  So how do you get to 25 to 30 in

10   your response here?

11          MR. LIEBMAN:  Well, in the motion, your Honor, they

12   don't limit themselves to 14.  They say, we've noticed nine --

13   they say, we've taken five, we've noticed nine more, so

14   that's 14, and we may need more.  We don't know how many more.

15          And in our meet-and-confers, we intended to work this

16   issue out, but plaintiff would never tell us definitively what

17   their number was, how many depositions they needed, so it was

18   impossible to agree on anything.

19          We think the rule -- you know, the rule is 10, as

20   your Honor knows, and sometimes --

21          THE COURT:  Yeah, the rule is a default rule which is

22   made -- which is the same rule for a slip-and-fall case in

23   which there are no witnesses other than the plaintiff and a

24   complicated commercial case, and that's why the rule allows

25   modification.  Okay?  And this is closer to the complicated

1   case end than the one-witness slip-and-fall case.  Wouldn't
2   you agree with that?
3           MR. LIEBMAN:  Your Honor, I completely agree with
4   that, your Honor.  This is definitely a significantly more
5   complicated case than a slip-and-fall case, and there are a
6   lot of witnesses, and there are four defendants.
7           However, this case is not as complicated and as broad
8   and cumbersome as plaintiff has made it out to be and --
9           THE COURT:  I don't want to start talking about how
10  many pages of motions to dismiss you guys filed.  If it's all
11  that simple, I am not sure why I got all that stuff.
12          So here's the deal.  I am going to give you the extra
13  four.  I am not going to count the expert depositions against
14  the number.  I am going to give you the extra four.  I am not
15  going to give you a blank check or anything close to a blank
16  check to what happens after that.
17          I am not going to bar you from filing another motion,
18  but this is what you need to understand, so, again, listen
19  carefully.  So the purpose of having limits on the number of
20  depositions is not to say, okay -- let's say we're talking
21  about 10 -- not to say, you know, I take nine depositions, and
22  then I say -- come in and say, I need another 10, Judge.  Why
23  do you need another 10?  Well, because these nine people
24  didn't know anything, and the really important people are the
25  other 10.

1      The idea is you're supposed to kind of understand

2  that you have limits, kind of like page limits on briefs,

3  understand that you have limits and do the more important

4  stuff when you're sure you can get it.

5      So if and when you come in and ask me for more, one

6  of the questions I am going to have is, okay, so why didn't

7  you put this person at the front of the line or somewhere in

8  the middle of the line rather than at the back of the line.

9      MR. YAGER:  Understood.

10     THE COURT:  You have been given your Miranda warnings

11  now.

12     MR. YAGER:  Sure.

13     THE COURT:  So the motion for leave to exceed the 10

14  deposition limit is granted to the extent stated in open

15  court.  Plaintiff can have a total of 14 fact depositions.

16  And just so it's clear, I'm not going to put this in the

17  order, I am counting each 30(b)(6) as one.

18     All right.  Now we are on to the 30(b)(6) stuff.  So

19  I got all the stuff I need to have on that.  I may have a

20  question or two, but sadly for the rest of the people in the

21  courtroom, I got to just kind of plow my way through it here,

22  so give me a second to pull it up on my screen.

23     There we go.

24     All right.  So the first issue -- putting aside the

25  deadline issue, the first issue is the topics that either do

1   or don't ask for legal conclusions.  The topic is acts of
2   infringement, and then I think the other one had something to
3   do with -- yeah, they both refer to acts of infringement.

4            Okay.  So I think both sides have some valid points
5   here.  I don't think that -- I mean, the term "infringement"
6   is -- it's not a purely legal conclusion, but it's a legal
7   conclusion that -- it's an application of law and facts.  But
8   imbedded within it are a bunch of factual things.  So when
9   we're talking about non-derivative works, it's like, did you
10  copy it, how did you copy it, how did you develop it.
11  Derivative works, same deal.

12           So it seems to me that the factual components of the
13  infringement conclusion are appropriate topics for a 30(b)(6)
14  deposition, but the ultimate conclusion of was this an
15  infringement isn't.  And so, I mean, I kind of get the sense
16  that both sides kind of get that.  I'm not sure that your
17  dispute is as much as you think it is, but that's the best I
18  can do to resolve it.

19           I'm doing these in the sequence in which they're
20  covered in the defendants' response, just so you know.

21           So the next one I've got here is 16, which has to do
22  with representations to the public and its terms of use, and
23  the issue has to do with representations to the public.  I
24  think the defendant has the better of that argument, so I'm
25  ruling in the defendants' favor on that one.

1    No. 19 has to do with identifications of agreements

2    with others for other types of slot games.  And it's kind of a

3    mixed bag on this one.  So the plaintiff is basically saying,

4    well, we need to know how the defendant has dealt with similar

5    issues with others because it helps us determine what a

6    reasonable royalty is.  I'm probably oversimplifying that, but

7    that's the takeaway I got from it.

8    The defendant basically says, there's like 90 other

9    agreements or 70 or some very large number.  It's completely

10   ridiculous to have to produce all of those.  I think you're

11   both right.

12   And so what you ought to be doing here is trying to

13   come up with some sort of a way of getting some sort of a

14   sample of other agreements so that the plaintiff can make the

15   type of comparisons they're talking about.  I am going to say

16   it shouldn't be more than 10, and I'll leave it to you to kind

17   of figure out a way of doing that because anything I would do

18   would be completely arbitrary.

19   Next one is --

20   MR. LIEBMAN:  Your Honor, is this limited to

21   agreements that the 30(b)(6) party has entered into, as

22   opposed to --

23   THE COURT:  Well, I'm looking at topic No. 19, which

24   says, Identifications of agreements and terms of agreements

25   IGT NV has with others, so I think it's limited to whatever is

1   said in the particular --

2           MR. YAGER:  Right.  I think you're --

3           MR. LIEBMAN:  Okay.  I'm sorry.

4           THE COURT:  I'm talking about a total of 10.  Cross

5   off however many people we are talking about here.

6           Next one is No. 20.  I agree that that seeks opinion

7   testimony, so I'm finding in the defendants' favor on that.

8           7 and 8 kind of seem like they relate to the one that

9   I was just talking about --

10          MR. YAGER:  Right.

11          THE COURT:  -- so I don't think I need -- relate

12  to 19, in other words.  I don't think I need to say anything

13  more on that.

14          MR. YAGER:  I think that's where the difference

15  between the party -- you know, they want to limit it to IGT NV

16  as the corporate rep.  We're saying when you depose witnesses

17  in this case, when you talk with people who have knowledge of

18  these companies, they don't make these entity distinctions

19  like defense counsel do --

20          THE COURT:  The answer is you haven't persuaded me

21  yet, so there you go.  When I say "you," I mean the plaintiff.

22          And then the number of hours, it's 10.  Okay?  I

23  split the baby, not necessarily in the middle.  You get 10.

24  That doesn't mean all in one day, because that would be

25  unthinkable.

1       In terms of the deadline -- so I think the other

2   thing was the deadline for amending the pleadings.  It needs

3   to be before the fact discovery cutoff date, at least in my

4   view, and I always set them before the fact discovery cutoff

5   date.  And the reason why I do that is that if you add a

6   party, then there's more fact discovery.  If you make it

7   after, it's a whole mess.

8       So I don't have a problem -- I don't have a problem

9   bumping it a couple of weeks, but that's all you are going to

10  get.

11      So the deadline for amending the pleadings and adding

12  parties is moved to the 31st of January.

13      I think I've now ruled on everything.  So the thing

14  on the motion to compel is going to say it's granted in part

15  and denied in part as stated in open court.  You will just

16  have to order the transcript.

17      Anything else anybody can think of that I missed?

18      MR. YAGER:  I don't think so.

19      MR. LIEBMAN:  Your Honor, we filed a motion for

20  protective order last night.  It's not noticed until next

21  week.

22      THE COURT:  Then I'll see you next week.  What date

23  did you --

24      MR. YAGER:  Well, it's January 2nd.

25      THE COURT:  I am not holding court then.  One of the

1  wonderful things about CM/ECF is it allows the filer to

2  disregard the little pop-up that says the judge ain't holding

3  court on that date.

4          So you are going to have to renotice it.  I am not

5  holding court the 2nd or 3rd.

6          MR. LIEBMAN:  Got it, your Honor.  We will renotice

7  it.  Thank you very much.

8      (Which were all the proceedings had in the above-entitled

9  cause on the day and date aforesaid.)

10     I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.

11

12  Carolyn R. Cox                    Date
   Official Court Reporter
13  Northern District of Illinois

14  /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

15

16

17

18

19

20

21

22

23

24

25