**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GC2 INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-8794 |
| | ) | |
| INTERNATIONAL GAME TECHNOLOGY PLC, | ) | Judge Matthew F. Kennelly |
| INTERNATIONAL GAME TECHNOLOGY, IGT, | ) | |
| DOUBLEDOWN INTERACTIVE LLC, MASQUE | ) | Magistrate Judge Mary W. Rowland |
| PUBLISHING, WD ENCORE SOFTWARE, DOE | ) | |
| DEFENDANTS 1-100, DOE DEFENDANTS 101- | ) | |
| 2,000,000 | ) | |
| | ) | |
| Defendants. | ) | |

**GC2'S LIMITED RESPONSE TO INTERNATIONAL GAME TECHNOLOGY'S
PROTECTIVE ORDER SEEKING TO LIMIT THE RULE 30(B)(6) DEPOSITION**

GC2 Incorporated (GC2) respectfully files its Limited Response to International Game
Technology's (IGTNV) Motion for a Protective Order. This response solely addresses IGTNV's
effort to limit the time GC2 may have to complete its Rule 30(b)(6) deposition.

## I.     IGTNV's EFFORT TO LIMIT PREVIOUSLY UNPREPARED WITNESSES ON KEY SUBJECT MATTERS

In Section II of their Motion for a Protective Order, IGTNV seeks a protective order
limiting the time GC2 should have to depose two new witnesses who IGTNV identified to testify
about key subject areas. The two new witnesses were designated because IGTNV's prior witness
was unprepared to testify about: a) IGTNV's costs and revenues, and b) certain third-party
licensing agreements and apportionment. *See* Dkt #238. IGTNV's time-limit request should be
denied, especially since these two new witnesses only need to be deposed because of IGTNV's
failure to previously prepare its prior witness on these subject areas, as well as their decision to
designate witnesses who are seven-hours apart from each other.

## II.     GC2'S RESPONSE TO IGTNV's TIME LIMIT REQUEST

In their deposition time-limit request, IGTNV omits to detail the reason why the deposition of Mr. RJ Haffke (who will testify about costs and revenue) and Mr. Todd Nash (who will testify about licensing agreements) need to be re-taken. IGTNV also omits to detail the significance and complexity of the two depositions. Their request should be denied.

### A)  IGT NV's 30(b)(6) Cost and Revenue Witness

*First*, as noted above, IGTNV agreed to produce their 30(b)(6) witness regarding costs and revenue because the initially designated witness was unprepared to testify in January 2018. IGTNV is producing this witness as a result of a meet and confer agreement.

*Second,* IGTNV agreed to produce Mr. Haffke[1] in order to address detailed native financial spreadsheets and revenue and cost information needed for expert reports. This witness is also being produced to clarify inconsistent testimony of two prior witnesses. Specifically, IGTNV's revenue information produced in the litigation was shown to be missing revenue, demonstrably incorrect and/or materially different from financial information provided to GC2 prior to the litigation. In fact, two witnesses deposed were unable to explain the differences. This is why IGTNV agreed to correct the information and appear again for deposition. In fact, despite IGTNV's representation that corrected revenue information would be provided well before the deposition (not the night before as on prior occasions) to date, the corrected revenue information has yet to be received. IGTNV's failure to provide GC2 with timely information is unfair, prejudicial and prevents GC2 counsel from preparing for the deposition.

*Third,* Mr. Haffke is also expected to be prepared to testify about complete cost information, another area in which the initial IGTNV Rule 30(b)(6) witness was unprepared.

---

[1] Mr. Haffke's Deposition is currently set to occur in Reno, Nevada on February 28, 2018.

B) <u>IGT NV's 30(b)(6) Licensing Agreement Witness</u>

In addition to having an unprepared 30(b)(6) witness to testify about cost and revenue information, IGTNV's witness was also unprepared to testify about licensing agreements, one of the topic subjects in the original notice. The prior deposition regarding this subject area was to occur in early January 2018 in San Francisco. However, after GC2 incurred significant travel expense to take the deposition, IGTNV did not produce the agreements from which the ten could be selected. Rather, IGTNV said it prepared its witness on certain "licenses" that it unilaterally chose and produced just days before the deposition. Nevertheless, despite this, at the deposition, the witness was unprepared about subject areas he was so designated – the license agreements.

C) <u>GC2's Compromise and Need to Complete Discovery on the Subject Areas</u>

GC2 agreed to a compromise with IGTNV because GC2 honestly believed IGTNV would designate one witness as to both subject areas. However, as it turns out, IGTNV has now designated an additional witness who they will produce on a completely different date in an entirely different city over seven hours away from Mr. Haffke's deposition. This will now require additional travel, hotel and expense to GC2. Given the extensive travel expenses (now twice incurred) to remedy IGTNV's initial failure to appear on Topic 19, it would be unjust to set a random three-hour limit on each deposition because the ten agreements are very detailed, multi-paged and exhibits are complicated multi-tabbed excel spreadsheets which are difficult to calculate and are complicated. And, while each examination could take longer than three hours, it may not, if the witnesses are fully prepared this time. On this note, past history reveals that a randomly set time limit risks potential gamesmanship to block a fair examination, something GC2 should not have to risk.

### III. CONCLUSION

The information needed from these two 30(b)(6) witnesses is critical and necessary to the case because they involve issues relating to cost, revenue and licensing agreements. IGTNV agreed to this compromise and should be required to honor its commitment. The time has come to finally obtain this information, so that GC2 may proceed to the next stage of this matter.

Dated: <u>February 18, 2018</u>                    Respectfully submitted,


By:  <u>/s/ Ricardo Meza                   </u>
     Kara E. F. Cenar (ARDC 6198864)
     (kcenar@greensfelder.com)
     Ricardo Meza (ARDC 6202784)
     (rmeza@greensfelder.com)
     Susan Meyer (ARDC 6226450)
     smeyer@greensfelder.com
     Ryan J. Yager (ARDC 6308231)
     (ryager@greensfelder.com)
     Greensfelder, Hemker & Gale, P.C.
     200 W. Madison St., Ste. 3300
     Chicago, IL 60606
     312-419-9090 (T); 312-419-1930 (F)

     John E. Petite
     (jep@greensfelder.com)
     Kirsten M. Ahmad
     (km@greensfelder.com)
     Greensfelder, Hemker & Gale, P.C.
     10 South Broadway, Ste. 2000
     St. Louis, Missouri  63102
     314-241-9090 (T); 314-241-8624 (F)

     *Attorneys for Plaintiff GC2 Incorporated*

## **CERTIFICATE OF SERVICE**

        I hereby certify that on February 18, 2018, a true and correct copy of the foregoing was served upon the following via the Court's ECF system:

Eric Macey
emacey@novackmacey.com
Joshua E. Liebman
JLiebman@novackmacey.com
Brandon M. Thompson
bthompson@novackmacey.com
Rebekah Parker
rparker@novackmacey.com
Novack and Macey
100 N. Riverside Plaza, Suite 1500
Chicago, IL 60606

*Attorneys for International Game Technology PLC,*
*International Game Technology, IGT (NV),*
*DoubleDown Interactive LLC, Masque Publishing, Inc.,*
*and WD Encore Software, LLC*

H. Sam Mabry, III
smabry@hsblawfirm.com
Jeffrey T. Stover
jstover@hsblawfirm.com
Haynsworth Sinkler Boyd, PA
One North Main
2nd Floor
Greenville, SC  29601

*Attorneys for WD Encore Software, LLC*

                                    /s/ Ricardo Meza