# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GC2 INCORPORATED, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INTERNATIONAL GAME TECHNOLOGY PLC, )<br>INTERNATIONAL GAME TECHNOLOGY, IGT )<br>DOUBLEDOWN INTERACTIVE LLC, MASQUE )<br>PUBLISHING, WD ENCORE SOFTWARE, DOE )<br>DEFENDANTS 1-100, DOE DEFENDANTS 101- )<br>2,000,000, )<br>)<br>Defendants. ) | Case No. 1:16-cv-8794<br><br>Judge Matthew F. Kennelly |

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON COUNT XII (DIGITAL MILLENNIUM COPYRIGHT ACT)**

Eric N. Macey (#3122684)
*emacey@novackmacey.com*
Joshua E. Liebman (#6283377)
*jliebman@novackmacey.com*
Christopher S. Moore (#6256418)
*cmoore@novackmacey.com*
Rebekah H. Parker (#6301907)
*rparker@novackmacey.com*
Brittney N. Cato (#6323715)
*bcato@novackmacey.com*
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL   60606
(312) 419-6900

Defendants International Game Technology ("International Game Technology"), IGT ("IGT NV"), and DoubleDown Interactive LLC ("DoubleDown") (collectively, "Defendants") by and through their attorneys, pursuant to Federal Rule of Civil Procedure 50(a), respectfully submit this Motion for Judgment as a Matter of Law on Plaintiff GC2 Incorporated's ("GC2") Claim under the Digital Millennium Copyright Act (the "DMCA") and GC2's copyright infringement claim against International Game Technology.

## INTRODUCTION

Count XII alleges that Defendants violated the DMCA by (1) providing or distributing false copyright management information ("CMI"); and (2) removing CMI from GC2's copyrighted works and/or distributing the works with the CMI removed. Trial has made clear that both claims are based on the same images -- the "splash screen" or "loading screen" to Pharaoh's Fortune (PX18, 21 & 22)[1] and Coyote Moon (PX9, 13 & 14)[2] of the games. GC2 claims that the splash screens are copied from the glass artwork for the land-based versions of the games, which contain GC2 artwork; that one of the Defendants removed the GC2 logo that had appeared on the land-based glass artwork when converting it to online; and that Defendants included false CMI in the splash screen attribution lines. (*E.g.*, Vol. 1-A at 15:3-9 (GC2 opening).)[3]

GC2 has now had seven days to fully present its DMCA claims as to each Defendant. Yet, no reasonable jury could find -- based on the evidence adduced at trial -- that any Defendant violated the DMCA, or particular sections of the DMCA, for at least three independent reasons. *First*, there is not a sufficient evidentiary basis to find that any Defendant possessed the requisite

---

[1] True and correct copies of the referenced exhibits are attached as Group Exhibit A.

[2] True and correct copies of the referenced exhibits are attached as Group Exhibit B.

[3] Relevant excerpts from Transcript Vol. 1-A are attached as Exhibit C.

*mens rea* at the time of the alleged violations.  *Second*, GC2 fails to state a claim for removal because it was IGT NV that designed the glass artwork, created original artwork for it, and affixed GC2's logo to it in the first place.  *Third*, at the very least, GC2 has not introduced any evidence that any Defendant distributed the allegedly removed CMI (as opposed to the allegedly copyrighted work).

## ARGUMENT

**I.     Legal Standard**

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue . . . [and] a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue." Fed. R. Civ. P. 50(a)(1).  "In other words, the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff.  '[A] mere scintilla' of evidence, however, will not suffice."  *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008) (citations omitted).

**II.    No Rationale Jury Could Find That Any Of The Defendants Possessed The Requisite *Mens Rea* To Sustain Count XII (DMCA)**

There is no evidence that any Defendant possessed the requisite *mens rea* for liability under Sections 1202(a) or (b).  Each subsection has a "double scienter requirement[.]"  *Krechmer v. Tantaros*, 17 C 4061, 2018 WL 4044048, at *2 (2d Cir. Aug. 24, 2018) (summary order). Section 1202(a) requires that Plaintiff prove that the IGT Defendants and DoubleDown "*knew* that the CMI was false, *and* provided or distributed the false CMI with the *intent* to induce, enable, facilitate, or conceal infringement."  *Aaberg v. Frencesca's Collections, Inc.*, No. 17-cv-115, 2018 WL 1583037, at *6 (S.D.N.Y. March 27, 2018) (emphasis added).  Similarly, Section 1202(b) requires that the IGT Defendants and DoubleDown *intentionally* removed the

2

alleged CMI or distributed it *knowing* it had been removed and had *knowledge,* or reason to know, that it would induce, enable, facilitate or conceal an infringement.

While Defendants dispute both of the double-intent prongs, this Motion concerns only the second -- which requires intent to "induce, enable, facilitate, or conceal an infringement" (with respect to 1202(a)), or knowing, or having reasonable grounds to know, that removal "will induce, enable, facilitate or conceal infringement" (with respect to 1202(b)).  In *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018), the Ninth Circuit closely examined the second intent prong:

> [T]he 'induce, enable, facilitate or conceal' requirement is intended to limit liability in some fashion -- specifically, to instances in which the defendant knows or has a reasonable basis to know that the removal or alteration of CMI or the distribution of works with CMI removed *will* aid infringement.

*Id.* (emphasis in original).  GC2 "must make an *affirmative showing* . . . that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions." *Id.* at 674 (emphasis added).  It has not done so.

### A. **IGT NV**

GC2 accuses IGT NV of removing GC2's CMI, replacing it with its own CMI, and distributing the works with the removed and/or false CMI to DoubleDown . (Ex. C [at 15:3-9.) GC2 failed to adduce any evidence whatsoever to show (i) who removed and falsified the CMI; (ii) when the unknown person(s) removed and falsified CMI; or (iii) when IGT NV distributed the allegedly copyrighted works with the removed and falsified CMI to DoubleDown .  The evidence does show, however, that DoubleDown released Coyote Moon on the DoubleDown Casino in May 2013 and Pharaoh's Fortune in March 2015.  (Vol. 4-A (Sigrist Jan. 25, 2019 Testimony at 94:11-22.)[4]  Thus, assuming that IGT NV did what GC2 accuses it of doing, then it did so *before* it

---

[4] Relevant excerpts from Transcript Volume 4-A are attached hereto as Exhibit D.

became aware of any issue arose as to whether IGT NV had the rights to use the Coyote Moon and Pharaoh's Fortune artwork and graphics for interactive and social gaming use.

The evidence at trial shows that, beginning in January 2016, employees of IGT NV expressed confusion as to whether IGT NV had the rights to use GC2 artwork and graphics in the online space. (*E.g.,* PX 378, 380, 82, and 384).[5] There is no evidence that IGT NV was aware of any false or removed CMI with respect to the games Pharaoh's Fortune and Coyote Moon at the time it created the interactive versions of the games, all of which were released in March 2015 or earlier.[6] Accordingly, IGT NV could not have intended to induce, enable, facilitate, or conceal infringement, nor been aware that the probable impact of its conduct would lead to infringement. *See, e.g., Schiffer Pub., Ltd. v. Chronicle Books, LLC*, No. 03-4962, 2004 WL 2583817, at *13– 14 (E.D. Pa. Nov. 12, 2004) ("because Defendants did not believe Plaintiffs had a copyright in their individual photographs, they could not have committed knowing misconduct as required by the DMCA").

That IGT NV did not *intentionally* enable, facilitate, induce, or conceal infringement is also demonstrated by the fact that it was IGT NV that initiated contact with GC2 for the purpose of buying the rights at issue. (PX 418; Vol. 6-A (Nash Jan. 29, 2019 Tr.) at 906:15-907:11, 962:16-965:5).[7] That IGT NV actually brought the rights issue to the attention of GC2 runs directly contrary to any argument that IGT NV affixed the allegedly false CMI, removed CMI, or

---

[5] The referenced exhibits are attached hereto as Group Exhibit E.

[6] GC2 introduced only one exhibit, PX0388, from 2015, but even that email – which concerns games not at issue in this litigation -- is dated June 2015 – three months *after* the second and last game at issue was launched. (A copy of PX0388 is attach ed hereto as Exhibit F.)

[7] PX 418 is attached hereto as Exhibit G; Relevant excerpts from Transcript Vol. 6-A are attached as Exhibit H.

distributed the artwork with false or removed CMI with the *intent* to induce, enable, conceal or facilitate infringement. *See*, *e.g.*, *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1360 (N.D. Fla. 2010) (granting summary judgment for defendant on DMCA claim where it sold its product "openly," and plaintiff presented no intent that defendant acted "with intent to aid infringement").

### B. International Game Technology

GC2 has introduced absolutely no evidence whatsoever that International Game Technology possessed the requisite *mens rea*. The only evidence presented as to International Game Technology is that it shared legal and accounting departments with IGT NV. But the DMCA requires two levels of *mens rea* -- both intentional or knowing conduct with respect to the CMI and a separate intent or knowledge that the conduct will "induce, enable, facilitate or conceal" an infringement. At best, evidence of shared departments could potentially be relevant to establishing that International Game Technology distributed the works with knowledge of the false or removed CMI (and even that is pretty thin), but it does not establish that International Game Technology did so with the intent to induce, enable, facilitate or conceal infringement, or with knowledge that its conduct would lead to the same. The second intent prong requires something additional to and different from the first. *See*, *e.g.*, *Corelogic*, 899 F.3d at 673-74 n. 4 (court must interpret DMCA to "give effect, if possible, to every clause and word of a statute" and to "avoid superfluity"; (citations omitted).)

### C. DoubleDown

GC2 has also not introduced any evidence that DoubleDown had the requisite *mens rea* when it released Coyote Moon or Pharaoh's Fortune on the DoubleDown Casino in 2013 and 2015, respectively. Only one DoubleDown employee was involved in an email discussion about rights to the artwork, but that communication happened in March 2016 – years after the relevant release

5

dates. (Ex. E (PX0384)).

## III. No Rational Jury Could Find For Plaintiff On Its DMCA Removal Claim

GC2's removal claim is premised on the presence of the GC2 logo on the land-based glass artwork for the games Coyote Moon (PX4-6)[8] and Pharaoh's Fortune (PX10, 23, & 24)[9] and its absence from similar artwork used on the DoubleDown Casino splash screens (Exs. A and B respectively). No rational jury could find for GC2 on this claim as to any of the Defendants for at least two independent reasons.

*First*, the evidence established that, at best, IGT NV created *new* artwork that incorporated elements of GC2's artwork and/or was a derivative thereof, but the DMCA requires that the CMI appear on or near *GC2's* original work. *Second*, the evidence indisputably established that it was IGT NV that affixed GC2's logo on the glass artwork, not GC2. Thus, there was no "pre-existing CMI" on GC2's copyrighted work. For either of these reasons, GC2's removal claim fails.

### A. The Glass Artwork At Issue Is Not GC2's Copyrighted Work

#### 1. The Law Requires That The CMI Be Removed From GC2's Original Copyrighted Artwork

"Section 1202(b)(1) applies only to the removal of copyright management information on (or from) a *plaintiff's **product or original work**.*" *Monotype Imaging, Inc. v. Bitstream Inc.*, 376 F. Supp. 2d 877, 893 (N.D. Ill. 2005) (emphasis added); *accord Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 929 (N.D. Ill. 2013); *Fischer v. Forrest,* 286 F> Supp. 3d 590, 608-09 (S.D. N.Y. 2018); *Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*, No. 1:16 CV 264, 2017 WL 1345195, at *11 (N.D. Ohio Apr. 12, 2017); *Frost-Tsuji*

---

[8] True and correct copies of the referenced exhibits are attached as Group Exhibit I.

[9] True and correct copies of the referenced exhibits are attached as Group Exhibit J.

*Architects v. Highway Inn, Inc.*, No. 13-00496, 2014 WL 5798282, at *5 (D. Hawaii Nov. 7, 2014).

Thus, where a defendant uses some of plaintiff's work in the creation of a *new* or *derivative* work, there can be no removal claim. For instance, in *Fischer*, 286 F. Supp. 3d at 609, the court granted defendant summary judgment on plaintiff's Section 1202(b) claim where defendant created a *derivative* advertisement from plaintiff's brochure and replaced plaintiff's name with the name of a competitor "because no CMI was removed from [plaintiff's] original brochure, his website, or a copy or display of them." Similarly, in *Faulkner Press, LLC v. Class Notes, LLC*, 756 F. Supp. 2d 1352, 1359-60 (N.D. Fla. 2010), the defendant intended to create "its own derivative work" from plaintiff's work by having students take notes from plaintiff's course, which defendant compiled into note packages. The court found that the note packages were a "different product" from plaintiff's copyrighted work, "even if, as [plaintiff] alleges, they included materials from [defendant's] work." Thus, there could be no DMCA violation because "[n]o copyright management information was removed from [plaintiff's] product or original work[.]" *Id.* at 1359.

And, in *Stark Enterprises, Inc.*, 2017 WL 1345195, at *11, the court granted summary judgment where defendant allegedly removed CMI during the process of converting files to CAD because the CAD system created a new product rather than removing CMI from plaintiff's product. Specifically, plaintiff created "a digital layer similar to overlay drafting and the layering instructions result in changes to the materials based on the layering system employed." Accordingly, the court held that "there is no evidence that plaintiff or its agents removed CMI from defendant's ***original work*** or 'distributed' a 'copy' of defendant's work knowing that CMI had been removed." *Id.* (emphasis added).

7

As explained in more detail below, the glass artwork for the land-based games is *not* GC2's original copyrighted artwork; rather, it was created by IGT NV as *new* artwork that incorporated some of GC2's artwork or derivatives thereof along with some of IGT NV's original artwork, which DoubleDown then further changed before releasing it on the DoubleDown Casino.

### 2. **Coyote Moon**

Mr. Janksowski, who worked with the IGT NV artists who designed the glass artwork, testified that:

- IGT NV employee John Yowse designed the glass artwork for Coyote Moon (Vol. 3-A (Jankowski Jan. 24, 2019 Tr.) at 85:17-86:7);[10]

- Mr. Yowse conceived and created the background for the Coyote Moon glass artwork without using any GC2 artwork or graphics (*id.* at 86:25-87:11);

- Mr. Yowse selected which GC2 images to include on the glass artwork -- the coyote and the moon (*id.* at 87:14-16);

- Mr. Yowse then improved on those GC2 images by painting over images and adjusting the overall shape and appearance (*id.* at 87:17-22); and

- The ultimate product – the glass artwork – was not "an original GC2 work." (*Id.* at 88:13-15.)

That the glass artwork is not GC2 copyrighted work is also made clear simply comparing it to the GC2 copyrighted materials with respect to each game. The artwork displaying the allegedly removed CMI appears on Exhibit B, and the GC2 copyrighted images appear in PX41.[11] They are different. Among other things, the backgrounds in Exhibit B do not appear anywhere in the GC2 copyrighted materials, and the coyote and moon are positioned and shaded differently.

---

[10] Relevant excerpts from Transcript Vol. 3-A are attached hereto as Exhibit K.

[11] A copy of PX41 is attached hereto as Exhibit L.

Mr. Jankowski confirmed this in his testimony cited above and also testified that the glass artwork and the artwork used in the splash screens were *not* GC2's original work. (*Id.* at 88:13-15.)

Further, PX13, one of DoubleDown splash screens, includes additional changes to the John Yowse glass artwork. (*Id.* at 88:24- 89:22.) Mr. Jankowski confirmed that it was neither original GC2 artwork nor even IGT NV's original glass artwork. (*Id.* at 89:14-24.)

### 3. **Pharaoh's Fortune**

Mr. Jankowski, who worked with the IGT NV artists who designed the glass artwork for Pharaoh's Fortune, testified that:

- IGT NV employee Marcus Rothkrantz designed the glass artwork for Pharaoh's Fortune (*id.* at 97:8-98:4);

- Mr. Rothkrantz designed and created the border and gold coins appearing in the glass artwork (*id*. at 98:21-99:4; *see also* Vol. 4-A (Jankowski Jan. 25, 2019 Tr.) at 13:13-17).[12]

- Mr. Rothkrantz selected which GC2 images to include on the glass artwork (Ex. K at 98:5-20);

- Mr. Rothkrantz then improved on those GC2 images by repositioning and putting sunglasses on the pharaoh (*id.* at 98:7-20; Ex. M at 13:18-20).

That the glass artwork is not GC2 copyrighted work is also made clear simply comparing it to the GC2 copyrighted materials with respect to each game. The artwork displaying the allegedly removed CMI appears on Ex. A, and the GC2 copyrighted images appear in PX40.[13] They are different. Among other things, the border, gold coins, scarab on the pharaoh's head, and positioning of the pharaoh's head do not appear in the GC2 copyrighted materials. Mr. Jankwoski

---

[12] Relevant excerpts from Volume 4-A are attached hereto as Exhibit M.

[13] A copy of PX40 is attached as Exhibit N.

9

confirmed this in his testimony and also testified that the glass artwork and the artwork used in the splash screens were *not* GC2's oriPginal work. (Ex. K at 97:8-99:4; Ex. M at 11:23-14:7.)

Further, DoubleDown splash screens (Exhibit A) includes additional changes to the John Yowse glass artwork. (Ex. M at 12:16-13: 7.) Mr. Jankowski confirmed that it was neither original GC2 artwork nor even IGT NV's original glass artwork. (*Id.* 12:16-18, 14:6-7.)

### B. GC2 Did Not Affix CMI To The Artwork At Issue

Section 1202(b) "prohibits removal of pre-existing CMI or distribution knowing that pre-existing CMI has been removed." (Dkt. 318 at 13); *accord Agence France Presse v. Morel*, No. 10-cv-2730, 2014 WL 3963124, at *8 (S.D.N.Y. Aug. 13, 2014). Indeed, "the existence of CMI on the [infringed work]" is the very first element of any claim under Section 1202(b). *E.g.*, *Fischer v. Forrest*, 286 F. Supp. 3d 590, 608 (S.D.N.Y. 2018); *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 664 (S.D.N.Y. 2017). Thus, "[t]o establish a violation of the [DMCA], a plaintiff must *first* show that it placed [CMI] on its copyrighted work and copies of its works[.]" *Reno-Tahoe Specialty, Inc., v. Mungchi, Inc.*, 2:12-CV-01051-GMN-VC, 2014 WL 7336082, at *11 (D. Nev. Dec. 19, 2014) (emphasis in original).

Here, there is no "pre-existing" CMI because it was *IGT NV* -- not GC2 -- that put GC2's logo on the land-based glass artwork for the games Pharaoh's Fortune and Coyote Moon. (*E.g.,* Ex. K at 84:18-24; 88:9-12; 99:5-11.) Mr. Warzecha also confirmed GC2 did not place its logo on the art before providing it to GC2. (Vol. 2-B (Warzecha Jan. 23, 2019 Tr.) at 2:2-17.)[14] GC2 failed to introduce any evidence that *GC2* put the allegedly-removed logo on the glass artwork.

The GC2 logo may have appeared on the CD cover or in the demo, but neither of these logos were provided for IGT NV to incorporate onto the glass artwork. Indeed, Mr. Jankowski

---

[14] Relevant excerpts from Transcript Vol. 2-B are attached hereto as Exhibit O.

testified that GC2 did not put its logo on the artwork that it sent to IGT NV for IGT NV to use on the glass artwork. (Ex. K at 84:18-24; 85:7-11; 88:9-12; 99:5-11; Ex. M at 14:8-9.)

GC2 also cannot rely on Mr. Jankowski's testimony that GC2 provided its logo to IGT NV at some point during the course of the parties' relationship. (Ex. K at 41:1-3.) For something to constitute CMI, it must be "conveyed in connection with copies" of the work in question. 17 U.S.C. § 1202(c). "Generally, to satisfy that requirement, a copyright notice must be 'close to' the work." *Drauglis v. Kappa Map Group, LLC*, 128 F. Supp. 3d 46, 60 (D.D.C. 2015). There is no evidence as to *when* Mr. Jankowski provided the logo to IGT NV for inclusion on the glass artwork. The logo would not constitute CMI unless he sent it "close to" the artwork provided for the glass -- and there is no evidence that he did.

Because Plaintiff cannot establish pre-existing CMI on the artwork that was allegedly used by IGT NV in creating the glass, its Section 1202(b) claim fails as a matter of law. *See*, *e.g.*, *Shell v. Lautenschlager*, No. 1:15cv1757, 2017 WL 4919206, at *10-11 (N.D. Ohio Oct. 31, 2017) (no liability "for removing CMI where none was displayed in the original work"); *Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576, 2015 WL 8375083, at *14 (D. Kan. Dec. 9, 2015) (granting partial summary judgment because plaintiff "has not come forward with any evidence that shows that the images on his website that were allegedly copied and uploaded" contained CMI); *Merideth v. Chi. Tribune Co.*, No. 12 C 7961, 2014 WL 87518, at *3 (N.D. Ill. Jan. 9, 2014) (dismissing complaint because it did not "adequately allege that the photographs came into Defendant's possession with CMI attached").

**IV.    At The Very Least, The Motion Should Be Granted As To Section 1202(b)(2)**

GC2 alleges violations of both sections 1202(b)(2) and (b)(3). Sections 1202(b)(2) and (b)(3) are virtually identical, except that subsection (2) refers to the distribution of CMI, while subsection (3) refers to the distribution of copies of works. Section 1202(b)(2) states no person

shall "distribute or import for distribution [CMI] knowing that the [CMI] has been removed or altered without authority of the copyright owner or the law[.]" Section 1202(b)(3) states no person shall "distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that [CMI] has been removed or altered without authority of the copyright owner or the law[.]"

Plaintiff has not introduced any evidence whatsoever that any Defendant distributed *CMI* knowing that it had been removed. Rather, Plaintiff appears to attempt to state a claim only under 1202(b)(3) -- that Defendants distributed copies of GC2's artwork knowing CMI had been removed. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 n.3 (9th Cir. 2018) is instructive. There, plaintiff alleged violations of both sections 1202(b)(2) and (b)(3), but the Ninth Circuit considered only the section 1202(b)(3) claim, finding that the section 1202(b)(2) claim was duplicative:

> The Photographers do not specifically allege any instances involving the distribution of altered CMI separate from the distribution of the copyrighted photographs. As the elements of the two statutory provisions are otherwise indistinguishable, the Photographers have not plausibly stated a claim under Section 1202(b)(2) different from their claim under Section 1202(b)(3).

Likewise, here, GC2 has not introduced any evidence that any Defendant distributed the removed CMI separate from the distribution of the allegedly copyrighted artwork. While GC2 may recover under different sections of the DMCA based on *different* underlying conduct (*Sheldon v. Plot Commerce*, No. 15 CV 5885, 2016 WL 5107072 (E.D.N.Y. Aug. 26, 2016)), "[t]he law is clear that a plaintiff cannot recover duplicative statutory damages under different legal theories where the conduct underlying the claims is the ***same*** . . . ." *Dish Network L.L.C. v. Whitehead*, 3:09-CV-532-J-32JRK, 2011 WL 6181732, at *6 (M.D. Fla. Dec. 13, 2011) (applying DMCA) (emphasis added). As this Court previously ruled, the DMCA allows for an award of statutory

damages for each violation, which means "each violative act performed by Defendant[.]" *GC2 Inc. v. Int'l Game Tech.*, No. 16 C 8794, 2018 WL 5921315, at *8 (N.D. Ill. Nov. 12, 2018) (quoting *McClatchey*, 2007 WL 1630261, at *6) (Dkt. No. 348 at 4). It therefore follows that GC2 cannot recover multiple awards for the same underlying act.

Accordingly, at the very least, no reasonable jury could find for GC2 on its Section 1202(b)(2) claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court: (a) award judgment in favor of Defendants and against Plaintiff with respect to Plaintiff's DMCA claim (Count XII) in whole or in part; and (b) grant Defendants such other and further relief as is appropriate.

Respectfully submitted,

INTERNATIONAL GAME TECHNOLOGY, IGT, and DOUBLEDOWN INTERACTIVE LLC

By: /s/ *Eric N. Macey*
One of Their Attorneys

## CERTIFICATE OF SERVICE

The undersigned attorney, upon oath, hereby certifies that on February 1, 2019, he caused a true and correct copy of the foregoing ***Defendants' Renewed Motion for Judgment As A Matter of Law on Count XII (Digital Millennium Copyright Act)***, to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system or by email to anyone unable to receive electronic filings as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

      /s/ *Eric N. Macey*