**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GC2 INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16 C 8794** |
| | ) | |
| **INTERNATIONAL GAME  TECHNOLOGY;** | ) | |
| **IGT; DOUBLEDOWN INTERACTIVE** | ) | |
| **LLC; and MASQUE PUBLISHING, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>INSTRUCTIONS TO THE JURY</u>

Date:  February 1, 2019

Members of the jury, you have seen and heard all the evidence, and you are about to hear the arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow my instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them. You must also continue to follow the instructions that I gave you at the start of the trial that you may not communicate about the case or about people involved in the case with anyone other than your fellow jurors until after you have returned your verdict.

Perform these duties fairly and impartially. Each party to the case is entitled to the same fair consideration.

Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's national origin, race, color, age, or sex.

Nothing I am saying now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

To the extent that these instructions differ from the instructions that I read you at the beginning of the case, the instructions that I am giving you now are the ones that govern your consideration of this case.

The evidence consists of the testimony, the exhibits, and stipulations. A stipulation is an agreement between both sides that certain facts are true.

Certain testimony was presented to you by playing video depositions. You should consider the deposition testimony just as you would if the witnesses had testified here in court.

In determining whether any fact has been proved, you should consider all of the evidence bearing on that fact, regardless of who offered the evidence.

You must make your decision based on what you recall of the evidence. You will not have a written transcript of the testimony to consult.

Certain things are not evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence, and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers say, your memory is what counts.

In addition, certain summaries, charts, and diagrams were shown to you to help explain other evidence that was admitted. These summaries, charts, and diagrams are not themselves evidence or proof of any facts, so you will not have them during your deliberations. If they do not correctly reflect the facts shown by the evidence, you should disregard them and determine the facts from the underlying evidence.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we sometimes look at one fact and conclude from it that another fact exists. In law we call this an "inference."  A jury is allowed to make reasonable inferences, so long as they are based on the evidence in the case.

You may have heard the phrases "direct evidence" and "circumstantial evidence."  Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact.  Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

You are to consider both direct and circumstantial evidence.  The law allows you to give equal weight to both types of evidence, but it is up to you to decide how much weight to give to any evidence in the case.

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- the reasonableness of the witness's testimony in light of all the evidence in the case; and

- any false testimony or inconsistent statements or conduct by the witness.

It is proper for an attorney to meet with any witness in preparation for trial.

You have heard witnesses who gave opinions about digital video games and financial and technological issues.  You do not have to accept the testimony of such a witness.  You should judge it in the same way you judge the testimony of any other witness.  In deciding how much weight to give to this testimony, you should consider each such witness's qualifications, how the witness reached his opinions, and the factors I have described for determining the believability of testimony.

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial.  Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

You may find the testimony of one witness or a few witnesses to be more persuasive than the testimony of a larger number of witnesses.  You need not accept the testimony of the larger number of witnesses.

**The parties and the claims**

The plaintiff in this case is GC2, Inc. I will refer to it as GC2.

The defendants in this case are the following companies:

- International Game Technology;

- IGT, which I will refer to as IGT NV;

- DoubleDown Interactive LLC, which I will refer to as DoubleDown; and

- Masque Publishing, Inc., which I will refer to as Masque.

GC2 Inc. develops artwork and graphics for video slot games. International Game Technology owns IGT NV. IGT NV designs, makes and sells video slot machine games for casinos and for use on computers and mobile devices. DoubleDown operates an online social (non-wagering) casino. Masque designs and makes video slot machine games for off-line play on computers.

GC2 has asserted claims against the defendants for direct copyright infringement, indirect or vicarious copyright infringement, and contributory copyright infringement, as well as for violations of a federal law called the Digital Millennium Copyright Act.

GC2's direct, vicarious, and contributory copyright infringement claims concern video reel game artwork and 2-D graphics for 6 video reel slot games called Pharaoh's Fortune, Coyote Moon, Wild Goose Chase, Festival Fantastico, Lucky Lionfish, and King Pin Bowling. I will refer to these as the "At-Issue Games."

Next I will describe the issues that you must decide on each of GC2's claims against each of the defendants. Keep in mind that you must consider each claim and each defendant separately.

**Preponderance of the evidence**

In these instructions, I will use the term "preponderance of the evidence." When I say that a party has to prove a proposition by a preponderance of the evidence, I mean that the party must prove that the particular proposition is more likely true than not true.

**Direct copyright infringement claims (claims 1, 2, and 3)**

GC2 claims that the defendants infringed its copyright in certain works.

- In claim 1, GC2 claims that: (a) International Game Technology infringed GC2's copyright in the artwork and graphics in two of the At-Issue Games: Pharaoh's Fortune and Coyote Moon; and (b) that IGT NV infringed GC2's copyright in the artwork and 2-D graphics in all six of the At-Issue Games.

- In claim 2, GC2 claims that DoubleDown infringed GC2's copyright in the artwork and 2-D graphics used in two of the At-Issue Games: Pharaoh's Fortune and Coyote Moon.

- In claim 3, GC2 claims that Masque infringed GC2's copyright in the artwork and 2-D graphics used in five of the At-Issue Games: Pharaoh's Fortune, Wild Goose Chase, Festival Fantastico, Lucky Lionfish, and King Pin Bowling.

You must consider each claim, each defendant, and each work separately.

To prevail on a claim of direct copyright infringement against a particular defendant regarding a particular work, GC2 must prove each of the following propositions by a preponderance of the evidence:

1.	The particular work is the subject of a valid copyright. This requires the work to be original. A work is original if it is created independently, as opposed to being copied. It must have at least a minimal degree of creativity. It need not be completely new.

2.	GC2 owns a copyright in the work. GC2 owns the copyright in a particular work if the work was prepared by GC2's employees as part of their employment.

11

3.      The defendant did one or more of the following with respect to GC2's copyrighted work:  a) copied protected expression in the work; b) distributed the work; c) publicly displayed the work; d) publicly performed the work; e) prepared a derivative work based on GC2's work; or f) used the work outside of the scope of a license granted by GC2 to IGT NV.  I will define certain of these terms in the paragraphs that follow.

"Protected expression" means any expression in GC2's copyrighted work that was created independently (in other words, not copied from some other work) and involved some creativity.  This includes the way that ideas or themes are expressed in the work, but it does not include the ideas or themes themselves.

"Distributing" a work includes making it available for further distribution, public performance, or public display.

A work is "publicly displayed" if it is shown at a place open to the public or transmitted through a device to the public.  It does not matter if members of the public receive the images in the same place or separate places, and at the same time or different times.

A work is "publicly performed" if its images are, in any sequence, shown at a place open to the public or transmitted through a device to the public.  It does not matter if members of the public receive the images in the same place or separate places, and at the same time or different times.

A derivative work is a work that is based on a preexisting work and includes elements that are substantially similar to protected expression in the preexisting work.

12

**Vicarious copyright infringement claims (claims 4, 5, and 6)**

GC2 also claims that one or more of the defendants is liable for direct infringement by others of GC2's copyright. This is referred to as indirect or "vicarious" copyright infringement.

- In claim 4, GC2 claims that: (a) International Game Technology is liable for direct infringement with respect to Pharaoh's Fortune and Coyote Moon by IGT NV, other IGT entities, DoubleDown, online casino operators, platforms that offer the games for play or download, and end-users that play these games, and (b) that IGT NV is liable for direct infringement with respect to Pharaoh's Fortune and Coyote Moon by other IGT entities, DoubleDown, online casino operators, platforms that offer the games for play or download, and end-users that play these games, and for direct infringement by Masque with respect to Pharaoh's Fortune, Wild Goose Chase, Festival Fantastico, Lucky Lionfish, and King Pin Bowling.

- In claim 5, GC2 claims that DoubleDown is liable for direct infringement with respect to all of the At-Issue Games by International Game Technology, IGT NV, online casino operators, platforms that offer the games for play or download, and end-users who play these games.

- In claim 6, GC2 claims that Masque is liable for direct infringement with respect to the games Pharaoh's Fortune, Wild Goose Chase, Festival Fantastico, Lucky Lionfish, and King Pin Bowling by platforms that sell these games and end-users who play these games.

You must consider each claim, each defendant, and each work separately.

To prevail on a claim of vicarious copyright infringement against a particular defendant regarding a particular work, GC2 must prove each of the following propositions by a preponderance of the evidence:

1.      Someone else infringed GC2's copyright, as defined in the instruction entitled "Direct Copyright Infringement Claims."

2.      The defendant that you are considering had a direct financial interest in that other person's infringement.

3.      The defendant that you are considering had the right and ability to stop or limit that other person's infringement but failed to do so.

**Contributory copyright infringement claims (claim 7)**

In claim 7, GC2 claims that International Game Technology, IGT NV, and/or DoubleDown caused end-users and/or online casino operators to infringe GC2's copyright with respect to Pharaoh's Fortune and Coyote Moon.

To prevail on this claim against a particular defendant regarding a particular work, GC2 must prove each of the following propositions by a preponderance of the evidence:

1.      End-users and/or online casino operators infringed GC2's copyright, as defined in the instruction entitled "Direct Copyright Infringement Claims."

2.      The defendant that you are considering induced, caused, or actively encouraged the infringement by the end-users and/or online casino operators.

3.      The defendant that you are considering knew of the infringing activity by the end-users and/or online casino operators or strongly suspected or should have known of that infringing activity but took steps to avoid knowing about it.

**Damages / profits on copyright infringement claims**

If GC2 prevails on one or more of its claims of direct, vicarious, and/or contributory copyright infringement against one or more of the defendants, then you must determine the amount of money it is entitled to recover from the particular defendant(s) on the particular claim(s) on which it has prevailed.

If GC2 does not prevail on any of these claims against any of the defendants, then you will not consider this question.

If GC2 prevails on one or more of its claims of direct, vicarious, and/or contributory copyright infringement against one or more of the defendants, GC2 is entitled to recover for any actual losses that it suffered because of the infringement, plus any profits that the particular defendant you are considering made from the infringement that are not taken into account in determining GC2's actual losses.

**Damages – actual losses**

As used in this case, actual losses from copyright infringement means what a willing buyer reasonably would have paid GC2 to obtain a license to copy, display, use, or sell GC2's copyrighted work.

GC2 must prove its losses by a preponderance of the evidence.

**Damages – defendants' profits**

In addition to recovering for its actual losses, GC2 is entitled to recover the profits that a defendant made because of the infringement of its copyright.   A defendant's profits are recoverable, however, only to the extent that you have not taken them into account in determining GC2's actual losses.

A defendant's profits are the revenues that defendant made because of the infringement, minus the defendant's expenses in producing the infringing material.

GC2 need only prove the defendant's revenues, which GC2 must prove by a preponderance of the evidence.  The defendant must prove by a preponderance of the evidence its own expenses as well as any portion of its profits that resulted from factors other than infringement of GC2's copyright.

## Digital Millennium Copyright Act claims

GC2 also claims that defendants International Game Technology, IGT NV, and DoubleDown violated, in various ways, a federal law called the Digital Millennium Copyright Act, or DMCA, in connection with the games Pharaoh's Fortune and Coyote Moon.

You must consider each defendant and each game separately.

To prevail on a DMCA claim against a particular defendant, GC2 must prove each of the following propositions:

1.     The defendant did one or more of the following:

(a)  provided false copyright management information in connection with copies, displays, or the public performance of a work;

(b)  intentionally removed or altered GC2's copyright management information from GC2's work without GC2's authority;

(c)  distributed copyright management information knowing that it had been removed or altered from GC2's work  without GC2's authority; and/or

(d)  distributed or publicly performed works or copies of works, knowing that the copyright management information from GC2's work had been removed or altered without GC2's authority.

2.     The defendant did so knowingly and with the intent to induce, enable, facilitate, or conceal copyright infringement.

The term copyright management information, as used in this case, includes the name and/or other identifying information about the owner of the work that appears on or close to the work.

A violation for providing false CMI occurs when a defendant uploads a copy of GC2's work with false CMI to Amazon Web Services (AWS) with respect to a particular game, not each time an end user downloads the defendants' application or plays the game.

A violation for removing or altering CMI takes place when a defendant removes or alters the CMI, not each time an end-user downloads or uses an application.

On GC2's claims under the DMCA, you will be required to make a determination regarding the number of violations, if any, by each defendant, but you will not be called upon to determine damages to be awarded in the case of one or more violations. That is an issue that I will determine later.

The number of servers used by AWS is not a factor for you to consider when determining the number of violations.

**Final instructions**

Once you are all in the jury room, the first thing you should do is choose a presiding juror. The presiding juror should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard. You may discuss the case only when all jurors are present.

Once you start deliberating, do not communicate about the case or your deliberations with anyone except other members of your jury. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic method of communication, such as by using a telephone, cell phone, smart phone, iPhone, Android, Blackberry, or any type of computer; by using text messaging, instant messaging, the Internet, chat rooms, blogs, websites, or social media, including services like Facebook, LinkedIn, GooglePlus, YouTube, Twitter, Instagram, or SnapChat; or by using any other method of communication.

If you need to communicate with me while you are deliberating, send a note through the court security officer.  The note should be signed by the presiding juror or by one or more members of the jury.  To have a complete record of this trial, it is important that you not communicate with me except by a written note.  I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer.

If you send me a message, do not include the breakdown of your votes.  In other words, do not tell me that you are split 6-6, or 8-4, or whatever your vote happens to be.

A verdict form has been prepared for you. You will take this form with you to the jury room.

[Review the verdict form.]

When you have reached unanimous agreement, your presiding juror will fill in and date the verdict form, and each of you will sign it.

Advise the court security officer once you have reached a verdict. When you come back to the courtroom, I will read the verdict aloud.

The verdict must represent the considered judgment of each juror. Your verdict must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with each other, express your own views, and listen to your fellow jurors' opinions. Discuss your differences with an open mind. Do not hesitate to re-examine your own view and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence just because of the opinions of your fellow jurors or just so that there can be a unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence. You should deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror.

You are impartial judges of the facts.

## Verdict form – Case No. 16 C 8794

We, the jury, unanimously find as follows on the claims by the plaintiff against the defendants:

## Claim 1

In accordance with the instructions regarding claim 1:

**1(a).**   Did International Game Technology infringe GC2's copyright in the video reel artwork and 2-D graphics for:

Pharaoh's Fortune:          yes _____          no _____

Coyote Moon:                  yes _____          no _____

If you answered yes for any game or games, go on to questions 1(b)(1) and 1(b)(2) for that game or games.  If you answered no for all games, go on to instruction 2(a), below.

**1(b)(1).**       What are GC2's actual damages, if any?

Pharaoh's Fortune:          $_____

Coyote Moon:                  $_____

**1(b)(2).**       What are International Game Technology's profits, if any, from the infringement?

Pharaoh's Fortune:          $_____

Coyote Moon:                  $_____


**2(a).**   Did IGT NV infringe GC2's copyright in the video reel artwork and 2-D graphics for:

Pharaoh's Fortune:          yes _____          no _____

Coyote Moon:                  yes _____          no _____

Kingpin Bowling:             yes _____          no _____

Lucky Lionfish:          yes _____    no _____

Festival Fantastico:     yes _____    no _____

Wild Goose Chase:        yes _____    no _____

If you answered yes for any game or games, go on to questions 2(b)(1) and 2(b)(2) for that game or games.  If you answered no for all games, go on to the instruction for Claim 2.

**2(b)(1).**     What are GC2's actual damages, if any?

Pharaoh's Fortune:       $_____

Coyote Moon:             $_____

Kingpin Bowling:         $_____

Lucky Lionfish:          $_____

Festival Fantastico:     $_____

Wild Goose Chase:        $_____

**2(b)(2).**     What are IGT NV's profits, if any, from the infringement?

Pharaoh's Fortune:       $_____

Coyote Moon:             $_____

Kingpin Bowling:         $_____

Lucky Lionfish:          $_____

Festival Fantastico:     $_____

Wild Goose Chase:        $_____

**Claim 2**

In accordance with the instructions regarding claim 2:

**1.** Did DoubleDown infringe GC2's copyright in the video reel artwork and 2-D graphics for:

Pharaoh's Fortune:        yes _____     no _____

Coyote Moon:            yes _____     no _____

If you answered yes for any game or games, go on to questions 1(a) and 1(b) for that game or games. If you answered no for all games, go on to the instruction for the Claim 3.

**1(a).** What are GC2's actual damages, if any?

Pharaoh's Fortune:        $_____

Coyote Moon:            $_____

**1(b).** What are DoubleDown's profits, if any, from the infringement?

Pharaoh's Fortune:        $_____

Coyote Moon:            $_____

**Claim 3**

In accordance with the instructions regarding claim 3:

1.      Did Masque infringe GC2's copyright in the video reel artwork and 2-D graphics for:

Pharaoh's Fortune:          yes ____      no ____

Kingpin Bowling:            yes ____      no ____

Lucky Lionfish:             yes ____      no ____

Festival Fantastico:        yes ____      no ____

Wild Goose Chase:           yes ____      no ____

If you answered yes for any game or games, go on to questions 1(a) and 1(b) for that game or games.  If you answered no for all games, go on to the instruction for the next claim.

**1(a).**   What are GC2's actual damages, if any?

Pharaoh's Fortune:          $_____

Kingpin Bowling:            $_____

Lucky Lionfish:             $_____

Festival Fantastico:        $_____

Wild Goose Chase:           $_____

**1(b).**   What are Masque's profits, if any, from the infringement?

Pharaoh's Fortune:          $_____

Kingpin Bowling:            $_____

Lucky Lionfish:             $_____

Festival Fantastico:        $_____

Wild Goose Chase:           $_____

**Claim 4**

In accordance with the instructions for claim 4:

**1(a).** Is International Game Technology vicariously liable for direct infringement with respect to Pharaoh's Fortune by:

IGT NV:          yes _____  no _____

Other IGT entities:     yes _____  no _____

DoubleDown:      yes _____  no _____

Online casino operators:   yes _____  no _____

Platforms that offer the game: yes _____  no _____

End-users that play the game: yes _____  no _____

**1(b).** Is International Game Technology vicariously liable for direct infringement with respect to Coyote Moon by:

IGT NV:          yes _____  no _____

Other IGT entities:     yes _____  no _____

DoubleDown:      yes _____  no _____

Online casino operators:   yes _____  no _____

Platforms that offer the game: yes _____  no _____

End-users that play the game: yes _____  no _____

**2(a).** Is IGT NV vicariously liable for direct infringement with respect to Pharaoh's Fortune by:

International Game Technology: yes _____  no _____

Other IGT entities:     yes _____  no _____

DoubleDown:      yes _____  no _____

Online casino operators:   yes _____  no _____

Platforms that offer the game:     yes _____      no _____

End-users that play the game:     yes _____      no _____


**2(b).**   Is IGT NV vicariously liable for direct infringement with respect to Coyote Moon by:


International Game Technology:  yes _____      no _____

Other IGT entities:     yes _____      no _____

DoubleDown:     yes _____      no _____

Online casino operators:     yes _____      no _____

Platforms that offer the game:     yes _____      no _____

End-users that play the game:     yes _____      no _____


**2(c).**   Is IGT NV vicariously liable for direct infringement by Masque with respect to:

Pharaoh's Fortune:     yes _____      no _____

Kingpin Bowling:     yes _____      no _____

Lucky Lionfish:     yes _____      no _____

Festival Fantastico:     yes _____      no _____

Wild Goose Chase:     yes _____      no _____

6

**Claim 5**

In accordance with the instructions for claim 5:

**1.**     Is DoubleDown vicariously liable for direct infringement with respect to Pharaoh's Fortune by:

International Game Technology:   yes _____        no _____

IGT NV:                                        yes _____        no _____

Platforms that offer the game:      yes _____        no _____

End-users that play the game:      yes _____        no _____

**2.**     Is DoubleDown vicariously liable for direct infringement with respect to Coyote Moon by:

International Game Technology:   yes _____        no _____

IGT NV:                                        yes _____        no _____

Platforms that offer the game:      yes _____        no _____

End-users that play the game:      yes _____        no _____

7

**Claim 6**

In accordance with the instructions for claim 6:

**1.**    Is Masque vicariously liable for direct infringement with respect to

Pharaoh's Fortune by:

Platforms that offer the game:    yes ____    no ____

End-users that play the game:    yes ____    no ____

**2.**    Is Masque vicariously liable for direct infringement with respect to Wild

Goose Chase by:

Platforms that offer the game:    yes ____    no ____

End-users that play the game:    yes ____    no ____

**3.**    Is Masque vicariously liable for direct infringement with respect to Festival

Fantastico by:

Platforms that offer the game:    yes ____    no ____

End-users that play the game:    yes ____    no ____

**4.**    Is Masque vicariously liable for direct infringement with respect to Lucky

Lionfish by:

Platforms that offer the game:    yes ____    no ____

End-users that play the game:    yes ____    no ____

**5.**    Is Masque vicariously liable for direct infringement with respect to King Pin

Bowling by:

Platforms that offer the game:    yes ____    no ____

End-users that play the game:    yes ____    no ____

**Claim 7**

In accordance with the instructions for claim 7:

**1(a).**   Did International Game Technology cause end-users to infringe GC2's copyright with respect to:

Pharaoh's Fortune:                    yes _____        no _____

Coyote Moon:                          yes _____        no _____

**1(b).**   Did International Game Technology cause online casino operators to infringe GC2's copyright with respect to:

Pharaoh's Fortune:                    yes _____        no _____

Coyote Moon:                          yes _____        no _____

**2(a).**   Did IGT NV cause end-users to infringe GC2's copyright with respect to:

Pharaoh's Fortune:                    yes _____        no _____

Coyote Moon:                          yes _____        no _____

**2(b).**   Did IGT NV cause online casino operators to infringe GC2's copyright with respect to:

Pharaoh's Fortune:                    yes _____        no _____

Coyote Moon:                          yes _____        no _____

**3(a).**   Did DoubleDown cause end-users to infringe GC2's copyright with respect to:

Pharaoh's Fortune:                    yes _____        no _____

Coyote Moon:                          yes _____        no _____

**3(b).**   Did DoubleDown cause platforms that offer the game to infringe GC2's copyright with respect to:

Pharaoh's Fortune:                    yes _____        no _____

9

Coyote Moon:      yes _____     no _____

**DMCA claims**

**Please note: The questions set out below are shorthand versions of the full instructions regarding the DMCA claims. In order for you to find a violation of the DMCA, GC2 must prove all of the propositions required for the claim regarding the particular defendant and the particular work.**

In accordance with the instructions for the DMCA claims:

**International Game Technology**

**1(a).** Did International Game Technology commit a violation of the DMCA by knowingly providing false copyright management information in connection with copies, displays, or the public performance of:

>Pharaoh's Fortune: yes _____ no _____

>Coyote Moon: yes _____ no _____

If you answered no to both questions, proceed to question 2(a). If you answered yes to one or both questions, proceed to questions 1(b)(1) and 1(b)(2).

**1(b)(1).** The number of violations for Pharaoh's Fortune is: _____

**1(b)(2).** The number of violations for Coyote Moon is: _____


**2(a).** Did International Game Technology commit a violation of the DMCA by intentionally removing or altering copyright management information without GC2's authority from:

>Pharaoh's Fortune: yes _____ no _____

>Coyote Moon: yes _____ no _____

If you answered no to both questions, proceed to question 3(a). If you answered yes to one or both questions, proceed to questions 2(b)(1) and 2(b)(2).

11

**2(b)(1).**  The number of violations for Pharaoh's Fortune is:  _____

**2(b)(2).**  The number of violations for Coyote Moon is:  _____


**3(a).**  Did International Game Technology commit a violation of the DMCA by distributing copyright management information knowing that it had been removed or altered without GC2's authority from:

Pharaoh's Fortune:        yes \_\_\_\_        no \_\_\_\_

Coyote Moon:        yes \_\_\_\_        no \_\_\_\_

If you answered no to both questions, proceed to question 4(a).  If you answered yes to one or both questions, proceed to questions 3(b)(1) and 3(b)(2).

**3(b)(1).**  The number of violations for Pharaoh's Fortune is:  _____

**3(b)(2).**  The number of violations for Coyote Moon is:  _____


**4(a).**  Did International Game Technology commit a violation of the DMCA by distributing or publicly performing the following, knowing that the copyright management information had been removed or altered without GC2's authority:

Pharaoh's Fortune:        yes \_\_\_\_        no \_\_\_\_

Coyote Moon:        yes \_\_\_\_        no \_\_\_\_

If you answered no to both questions, proceed to the next page.  If you answered yes to one or both questions, proceed to questions 4(b)(1) and 4(b)(2).

**4(b)(1).**  The number of violations for Pharaoh's Fortune is:  _____

**4(b)(2).**  The number of violations for Coyote Moon is:  _____

**IGT NV**

**1(a).**   Did IGT NV commit a violation of the DMCA by knowingly providing false copyright management information in connection with copies, displays, or the public performance of:

                        Pharaoh's Fortune:        yes ____     no ____

                        Coyote Moon:           yes ____     no ____

If you answered no to both questions, proceed to question 2(a).  If you answered yes to one or both questions, proceed to questions 1(b)(1) and 1(b)(2).

**1(b)(1).**  The number of violations for Pharaoh's Fortune is: _____

**1(b)(2).**  The number of violations for Coyote Moon is:  _____


**2(a).**   Did IGT NV commit a violation of the DMCA by intentionally removing or altering copyright management information without GC2's authority from:

                        Pharaoh's Fortune:        yes ____     no ____

                        Coyote Moon:           yes ____     no ____

If you answered no to both questions, proceed to question 3(a).  If you answered yes to one or both questions, proceed to questions 2(b)(1) and 2(b)(2).

**2(b)(1).**  The number of violations for Pharaoh's Fortune is: _____

**2(b)(2).**  The number of violations for Coyote Moon is:  _____


**3(a).**   Did IGT NV commit a violation of the DMCA by distributing copyright management information knowing that it had been removed or altered without GC2's authority from:

                        Pharaoh's Fortune:        yes ____     no ____

13

Coyote Moon: yes _____ no _____

If you answered no to both questions, proceed to question 4(a). If you answered yes to one or both questions, proceed to questions 3(b)(1) and 3(b)(2).

**3(b)(1).** The number of violations for Pharaoh's Fortune is: _____

**3(b)(2).** The number of violations for Coyote Moon is: _____


4**(a).** Did IGT NV commit a violation of the DMCA by distributing or publicly performing the following, knowing that the copyright management information had been removed or altered without GC2's authority:

Pharaoh's Fortune: yes _____ no _____

Coyote Moon: yes _____ no _____

If you answered no to both questions, proceed to the next page. If you answered yes to one or both questions, proceed to questions 4(b)(1) and 4(b)(2).

**4(b)(1).** The number of violations for Pharaoh's Fortune is: _____

**4(b)(2).** The number of violations for Coyote Moon is: _____

**DoubleDown**

**1(a).**   Did DoubleDown commit a violation of the DMCA by knowingly providing false copyright management information in connection with copies, displays, or the public performance of:

> Pharaoh's Fortune:          yes _____     no _____
>
> Coyote Moon:               yes _____     no _____

If you answered no to both questions, proceed to question 2(a).  If you answered yes to one or both questions, proceed to questions 1(b)(1) and 1(b)(2).

**1(b)(1).**  The number of violations for Pharaoh's Fortune is: _____

**1(b)(2).**  The number of violations for Coyote Moon is:  _____


**2(a).**   Did DoubleDown commit a violation of the DMCA by intentionally removing or altering copyright management information without GC2's authority from:

> Pharaoh's Fortune:          yes _____     no _____
>
> Coyote Moon:               yes _____     no _____

If you answered no to both questions, proceed to question 3(a).  If you answered yes to one or both questions, proceed to questions 2(b)(1) and 2(b)(2).

**2(b)(1).**  The number of violations for Pharaoh's Fortune is: _____

**2(b)(2).**  The number of violations for Coyote Moon is:  _____


**3(a).**   Did DoubleDown commit a violation of the DMCA by distributing copyright management information knowing that it had been removed or altered without GC2's authority from:

> Pharaoh's Fortune:          yes _____     no _____

15

Coyote Moon:  yes _____  no _____

If you answered no to both questions, proceed to question 4(a).  If you answered yes to one or both questions, proceed to questions 3(b)(1) and 3(b)(2).

**3(b)(1).**  The number of violations for Pharaoh's Fortune is: _____

**3(b)(2).**  The number of violations for Coyote Moon is: _____


4**(a).**  Did DoubleDown commit a violation of the DMCA by distributing or publicly performing the following, knowing that the copyright management information had been removed or altered without GC2's authority:

Pharaoh's Fortune:  yes _____  no _____

Coyote Moon:  yes _____  no _____

If you answered no to both questions, proceed to the next page.  If you answered yes to one or both questions, proceed to questions 4(b)(1) and 4(b)(2).

**4(b)(1).**  The number of violations for Pharaoh's Fortune is: _____

**4(b)(2).**  The number of violations for Coyote Moon is: _____


(sign and date the verdict on the next page)

Please sign and date this form below.

_____     _____
Presiding juror

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

Date:  February ____, 2019