IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |
|---|---|
| GC2 INCORPORATED, <br><br> Plaintiff, <br><br> vs. <br><br> INTERNATIONAL GAME TECHNOLOGY PLC, et al., <br><br> Defendants. | Case No. 16 C 8794 |

**ORDER OF PERMANENT INJUNCTION
AND DESTRUCTION**

Pursuant to 17 U.S.C. § 502(a), 17 U.S.C. § 503(b), 17 U.S.C. § 1203(b)(1), 17 U.S.C. § 1203(b)(6), Fed. R. Civ. P. 65, this Court's Memorandum and Opinion Order of July 15, 2019 (Dkt. 471), and the Jury verdict (Dkt. 409) the Court orders as follows:

**Reasons for Issuance Rule 65(d)(A) Fed.R.Civ. P.**

1. Plaintiff GC2, Inc. ("GC2") developed artwork, images, and thematic elements for games that are primarily displayed on physical wagering machines such as slot machines. GC2 has created artwork and videos for a series of wagering games, including those at issue in this suit: Coyote Moon, Pharaoh's Fortune, Lucky Lion Fish, Festival Fantastico, Kingpin Bowling, and Wild Goose Chase. Dkt. 471, p. 2.

2. There are four defendants in this case: International Game Technology ("IGT Holding"), IGT ("IGT NV"), DoubleDown Interactive LLC ("DoubleDown"), and Masque Publishing, Inc. ("Masque"). IGT Holding owns IGT NV, a Nevada corporation (collectively, "defendants"). IGT NV produces and sells land-based games played in physical casinos. Until

June 2018, IGT Holding also owned DoubleDown. DoubleDown develops and distributes digital slot machine games. Masque sells digital casino games and licensed art from IGT NV. Dkt. 471, p. 2.

3. GC2 licensed some of its artwork to IGT NV beginning in 2003 for use in the development of these physical slot machine games. Although these games were successfully developed and deployed to casinos, several disputes arose between the companies, leading to a 2007 contract intended to wind up their relationship. In this contract, IGT NV retained a perpetual license to the GC2 artwork used for the physical land-based machines the companies jointly developed. But the agreement did not give up all the rights to the art used in the disputed games; it expressly reserved GC2's rights to its artwork for use in, among other things, development of internet gaming programs. Dkt. 471, p. 2-3.

4. In September 2016, GC2 sued IGT Holding, IGT NV, Doubledown, and Masque, alleging copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA"). Dkt. 471, p. 3.

5. GC2's claims for direct, vicarious, and contributory copyright infringement and violations of the DMCA against defendants went to trial in January 2019. The jury unanimously found for GC2. Specifically, it found each of the defendants had both directly and vicariously violated GC2's copyrights in relation to all six of the disputed games; that IGT Holding, IGT NV, and DoubleDown had also contributorily infringed with respect to all six games; and that IGT Holding, IGT NV, and DoubleDown had committed 696 separate violations of the DMCA in relation to the Coyote Moon and Pharaoh's Fortune games. The jury also awarded damages to GC2. Dkt. 471, p. 3.

6. The jury found artwork and graphics for the six games to be infringing: Coyote Moon, Pharaoh's Fortune, Lucky Lion Fish, Festival Fantastico, Kingpin Bowling, and Wild Goose Chase. (collectively "At-Issue Games"). Dkt. 409.

7. The copyright registrations for these six games are:

| Title of Work | Copyright Registration Number | Nature of Claim | Date of Copyright | Holder of Copyright |
|---|---|---|---|---|
| Pharaoh's Fortune | PA0001998473 | Video reel game artwork and 2d graphics | August 30, 2016 | GC2 Incorporated |
| Coyote Moon | PA0001998419 | Video reel game artwork and 2d graphics | August 30, 2016 | GC2 Incorporated |
| Festival Fantastico | PA0001998442 | Video reel game artwork and 2d graphics | August 30, 2016 | GC2 Incorporated |
| Kingpin Bowling | PA0001998474 | Video reel game artwork and 2d graphics | August 30, 2016 | GC2 Incorporated |
| Lucky Lion Fish | PA0001998469 | Video reel game artwork and 2d graphics | August 30, 2016 | GC2 Incorporated |
| Wild Goose Chase | PA0001998438 | Video reel game artwork and 2d graphics | August 30, 2016 | GC2 Incorporated |

8. The product lines where infringement was found by the jury are the online real money gaming (desktop and mobile), non-wagering gaming, social gaming, including DoubleDown casino, and the Masque/Encore CD/DVD and downloadable versions. Dkt. 409.

3

9. GC2 also sought a permanent injunction and an order requiring the defendants to destroy any remaining copies of the infringing materials. To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Historically, the Seventh Circuit endorsed a presumption of irreparable injury and inadequate remedies in certain intellectual property cases, but the court disavowed that presumption after the Supreme Court's decision in *eBay*. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012) ("*eBay* . . . made clear that there is no such presumption."). Ultimately, whether to grant or deny injunctive relief "is an act of equitable discretion by the district court." *eBay*, 547 U.S. at 391. Dkt. 471, p. 35.

10. The Court is persuaded, assessing each of the four *eBay* equitable factors, that a permanent injunction is appropriate. First, on irreparable harm and the adequacy of the remedy at law, the Court notes that the defendants' efforts to remove the infringing materials have thus far met with only moderate success. For instance, even after briefing on this motion began, GC2 pointed to websites affiliated with the defendants (which the defendants apparently had not discovered) on which the infringing materials were still accessible. Nor do the defendants meaningfully dispute that the games are still on their servers and are again copied, potentially in violation of GC2's copyrights, each time the servers are backed up. They also do not dispute that the games in question are still accessible online. The continued online accessibility of these games is troubling. Dkt. 471, p. 32.

11. The Court is also persuaded by GC2's arguments that the ongoing (and future) infringement injures GC2's intellectual property rights in ways that are not readily compensable

4

by money damages. For instance, if a consumer is exposed to poorly rendered or otherwise subpar versions of GC2's artwork and themes, she/he may attribute the quality to GC2 itself. That loss cannot easily be quantified. The fact that the Copyright Act provides for—and GC2 was awarded—damages for the defendants' past infringement does not prove otherwise. *Cf. BMG Music v. Gonzalez*, 430 F.3d 888, 893 (upholding the issuance of an injunction in addition to a damages award). Taking these considerations together, the Court concludes that GC2 has sufficiently shown that it has suffered and, unless it is granted a permanent injunction, is likely to suffer irreparable harm for which its remedies at law are inadequate. Dkt. 471, p. 37.

12. The Court also concludes that GC2's hardships mostly outweigh the defendants'. Specifically, GC2 faces considerable hardships related to its intellectual property rights likely being continually infringed. The only hardship seriously argued by the defendants in their filings or at the hearing on this motion is that associated with replacing brochures that were inserted in CD cases produced by Masque—only one of a range of ongoing infringements alleged by GC2. It does not, therefore, contest that the hardships tilt in favor of plaintiff on each of the other infringing uses. Dkt. 471, p. 38.

13. The injunction, however, will exclude the existing Masque CD inserts. The defendants argued persuasively during the hearing on this motion and in their filings that it would require significant time and resources to remove the existing brochures from the Masque CD cases. The Court is persuaded that the defendants' burdens outweigh the plaintiff's de minimis injuries in this limited respect. Dkt. 471, p. 38

14. The parties dispute only the first three equitable factors from eBay—that is, the defendants do not contend that the public interest would be disserved by an injunction. The public interest is served by an injunction. Dkt. 471, p. 35.

15. In sum, the Court finds that the equitable factors from *eBay* support the issuance of a permanent injunction. The defendants must delete, destroy, or otherwise abate infringement of GC2's copyrights—with the exception of the existing Masque brochures—subject to the terms of the injunction outlined below. Dkt. 471, p. 39.

### Order of Permanent Injunction[1]

16. The Court hereby permanently enjoins IGT Holding, IGT NV, DoubleDown, Masque, their officers, agents, servants, employees, and attorneys and all other persons acting in concert or participation with them from:

(A) Distributing, providing, displaying, or marketing GC2's artwork and graphics, including any derivatives, for the titles Pharaoh's Fortune, Coyote Moon, Lucky Lion Fish, Kingpin Bowling, Festival Fantastico, and Wild Goose Chase for online, social, DVD/CD, downloadable versions, internet real money gaming, non-wagering gaming, and any other uses other than licensed for land-based gaming uses on Gaming Machines as that term is defined in Paragraph 17 and the Masque Brochure referred to in Paragraph 18 below;

(B) Retaining GC2's artwork and graphics, including derivatives, for the At-Issue Games on: www.igt.com, accounts held with Amazon Web Services and on Amazon Web Services servers, accounts held with Facebook and on Facebook servers, accounts held with Apple Inc. and on Apple Servers, accounts held with Samsung Electronics America, Inc. and Samsung servers, servers used to distribute the At-Issue internet real money games (a/k/a central servers[2]), AlienBrain Server, physical hard drives, desktops, packaging files, or other materials which

---

[1] Memorandum Opinion and Order pp. 35-39, 47-49. This Court has the authority to issue a permanent injunction under 17 U.S.C. § 502(a). 17 USC 1203(b)(1).

[3] Memorandum Opinion and Order, p. 39. This Court has the authority to order destruction under 17 U.S.C. § 503(b). 17 USC 1203(b)(6).

contain GC2's artwork, other than licensed for land-based gaming uses on Gaming Machines as that term is defined in Paragraph 17 and the Masque Brochure referred to in Paragraph 18; and

(C) Removing, altering, providing, or distributing copyright management information, as that term is defined in 17 U.S.C. § 1202(c), in connection with Pharaoh's Fortune and Coyote Moon which incorporate GC2's artwork and graphics or derivatives thereof in violation of the DMCA. This provision does not apply to land-based gaming uses on Gaming Machines as that term is defined in Paragraph 17 and the Masque Brochure referred to in Paragraph 18.

17. The definition of Gaming Machine(s) in this Order shall be as follows:

"Gaming Machine(s)" shall mean a physical device that would require, if it were to be sold, distributed or otherwise operated in the State of Nevada the approvals and consents of the relevant government regulatory authorities of the State of Nevada for such sale, distribution or operation as a gaming device. This definition includes or shall further include, without limitation, the following wagering devices: (i) video lottery terminals, (ii) terminals connected to a server based system for delivering game content, including said server(s), (iii) class II and III machines as defined by statute, (iv) terminals connected to a central determination system for determining game outcomes, including their associated server(s) (v) amusement with prize machines, and (vi) skill with prize machines.

**The definition excludes or shall be meant to exclude nonwagering devices, machines and systems such as: (a) pinball, (b) arcade machines, and (c) gaming consoles, including but not limited to general purpose computers, for non-wagered gaming; and the following wagering devices, machines and systems: (d) devices used for mobile gaming in the State of Nevada as defined by NRS 463.0176, (e) devices legally used for mobile gaming outside the State of Nevada as defined in that jurisdiction's laws, and (f) Internet gaming. (Emphasis added).**

18. For the reasons stated in this Court's Memorandum Opinion and Order at Dkt. 471, pre-existing copies of the Masque Brochure [appearing at Dkt. 426-4 and attached hereto as Exhibit 3 (the "Masque Brochure")] are not subject to this Order. Additional copies of the Masque Brochure may not be made or used by defendants or any affiliated party.

19. Pursuant to Rule 65(d)(2), each of the defendants shall provide a copy of this Order to its officers, agents, servants, employees, attorneys, and other persons in active concert or

participation with Defendants who Defendants know or reasonably believe have copies of GC2's art related to the At-Issue Games, other than for land-based gaming uses on Gaming Machines.

### Order Of Destruction[3]

20. Subject to the exceptions in Paragraphs 17 and 18 above, and pursuant to the protocols in paragraphs 20-21, IGT Holding, IGT NV, DoubleDown, and Masque, their officers, agents, servants, employees, and attorneys, are ordered to:

(A) **Permanently delete and destroy**: (1) GC2's artwork and graphics for the At-Issue Games, including derivatives, for online, social, DVD/CD, downloadable versions, internet real money gaming, and non-wagering gaming games; (2) GC2's artwork and graphics, including derivatives for each of the game icons and marketing materials related to the At-Issue Games and derivatives thereof; and (3) any other uses of GC2's artwork and graphics for the At-Issue Games, and derivatives thereof, other than for licensed land-based gaming uses on Gaming Machines (as defined herein in Paragraph 17) and the Masque Brochure referred to in Paragraph 18;

(B) **Permanently delete and destroy**: GC2's artwork and graphics, including derivatives for the At-Issue Games and versions on (i) www.igt.com, (ii) Defendants' accounts held with Amazon Web Services, Facebook, Apple Inc., Samsung Electronics America Inc, (iii) servers used by Defendants to distribute the At-Issue Games for internet real money gaming (a/k/a central servers[4]), (iv) AlienBrain Server, (v) physical hard drives, desktops, packaging files, or other materials which contain GC2's artwork, other than for licensed land-based gaming uses

---

[3] Memorandum Opinion and Order, p. 39. This Court has the authority to order destruction under 17 U.S.C. § 503(b). 17 USC 1203(b)(6).
[4] Trial identified the location of these servers in Nevada, New Jersey, Canada, Alderny and Gibraltar.

on Gaming Machines (as defined herein in Paragraph 17) and the Masque Brochure referred to in Paragraph 18;

21. The Protocol for destruction and permanent deletion to be followed by each enjoined defendant is as follows:

### 21.1 IGT Holdco and IGT NV Destruction Protocol[5]

21.1.1 IGT Holdco and IGT NV will instruct appropriate personnel to permanently delete any enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games, but not including any GC2 art for licensed land-based gaming uses on Gaming Machines (defined in Para 17), from:

(a) www.igt.com including the private customer log-in only sections, and backups and archives thereof;

(b) www.igtcasinolounge.com and backups and archives thereof;

(c) IGT NV's servers in Reno, Nevada used for developing the At-Issue Games or for storing the art assets for the At-Issue Games including, without limitation, the AlienBrain servers and backups and archives thereof;

(d) IGT NV's servers in Reno, Nevada which host demo or play for fun versions of the At-Issue Games and backups and archives thereof;

(e) IGT NV's PlayDigital servers in Reno, Nevada and backups and archives thereof;

(f) the servers that hosted online real money gaming versions of the At-Issue Games located in New Jersey, Canada, Gibraltar and Alderney and backups and archives thereof; and

---

[5] This protocol excludes and does not apply to any GC2 artwork related to licensed land-based gaming uses on Gaming Machines as defined in the Order of Permanent Injunction and Destruction.

(g) any other servers utilized by any IGT affiliated entity that are known or believed to contain enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games, including back up servers, and archives.

21.1.2 IGT Holdco and IGT NV will send an email to every one of the over 12,000 worldwide employees employed by any of IGT Holdco's parents, subsidiaries or affiliates instructing that employee to determine whether he or she has accessed the enjoined GC2 artwork and graphics or derivatives thereof for the At-Issue Games in connection with his or her employment.

a) If the answer is no, the employee need take no further action.

b) If the answer is yes, the employee will be instructed to: (a) permanently delete and destroy any enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games (to the extent not related to licensed land-based gaming uses on Gaming Machines), whether on a desktop computer, laptop computer, attached to an email, in hardcopy or in marketing materials; and (b) confirm that any enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games has been deleted or destroyed.

21.1.3 IGT Holdco and IGT NV will complete the process described in paragraph 21.1.1 by August 31, 2019 and will provide a verified statement confirming that, to the best of their knowledge, permanent deletion has occurred and was successful.

21.1.4 As for Paragraph 21.1.2, IGT Holdco and IGT NV will send the email to all employees by August 31, 2019. The employees will be instructed to complete the deletion and destruction process on or before September 30, 2019.

21.1.5 IGT Holdco and IGT NV will sign a certification by October 15, 2019 stating that the protocol is complete.

**21.1.6 Provide Request to Delete and Destroy**:

(i) By August 15, 2019 IGT Holdco and IGT NV will give a copy of this Order of Destruction to and send a request to destroy enjoined materials supplied by defendants (which asks for confirmation of destruction) to the online casino operators that offered one or more of the At-Issue Games. The casino operators are identified in: IGT NV's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 1; and IGT Holdco and IGT NV's Responses to Plaintiff's Combined Financial Interrogatories, Interrogatory No. 8.

(ii) IGT Holdco and IGT NV will provide an identification of the recipients of the Request to Destroy who have confirmed compliance with the Request to Destroy which shall be provided to GC2's counsel by September 15, 2019.

(iii) IGT Holdco and IGT NV will provide an identification of the recipients of the Request to Destroy who affirmatively and inform IGT Holdco and/or IGT NV decline to comply with the Request to Destroy, which should be provided to GC2's counsel by September 15, 2019.

**21.2 DOUBLEDOWN DESTRUCTION PROTOCOL**

21.2.1 **Amazon Web Services (AWS) Accounts And Servers**

DoubleDown will permanently delete any enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games from DoubleDown's Amazon Web Services accounts and cloudfront account, and all DoubleDown back up and archived versions of those accounts.

21.2.2 DoubleDown will instruct all of DoubleDown's approximately 150 employees in writing to: (a) permanently delete and destroy all known enjoined GC2 artwork and graphics and derivatives for the At-Issue Games, whether on a desktop computer, laptop computer, attached to an email, in hardcopy or in marketing materials; and (b) sign a verified

confirmation stating that, to the best of its knowledge, any enjoined GC2 artwork and graphics and derivatives for the At-Issue Games has been deleted or destroyed.

21.2.3  DoubleDown will have this process completed by August 31, 2019.

21.2.4  By August 15, 2019, DoubleDown shall send a copy of the Order of Injunction and Destruction to:

**Amazon Web Services Designated Agent** (Copyright Agent/Amazon Web Services Amazon.com Legal Department, P.O. Box 81226 Seattle, WA  98108; Phone: (206) 266-4064; Email: abuse@amazonaws.com).

### 21.3    MASQUE DESTRUCTION PROTOCOL

21.3.1    Masque will permanently delete any enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games from all of its servers and backup archives.

21.3.2 Masque will inspect all hard drives and computers (whether desktops or laptops) used by any Masque employee and permanently delete all enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games.

21.3.3 CD/DVD Masters:  Masque has a digital master of each product including At-Issue Games, and Coda, Inc. ("Coda") has the glass masters. Masque will permanently delete the enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games in the digital masters and instruct Coda to destroy the enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games in the glass masters.

21.3.4 Unassembled CDs and DVDs:  Masque will throw away all unassembled CDs and DVDs containing enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games in a roll-off dumpster.

21.3.5 Packaging Dies: Masque will instruct Warneke Paper Box Co. ("Warneke") to destroy all dies created for packaging with enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games.

21.3.6 Unassembled Packaging: Masque will return all unassembled packaging with enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games to Warneke with instructions to recycle all materials, or Masque will throw away the materials itself in a roll-off dumpster.

21.3.7 Assembled Packages with CDs/DVDs: Masque will throw away all assembled packages with enjoined GC2 artwork and graphics and derivatives thereof for the At-Issue Games in a roll-off dumpster.

21.3.8 Masque will have this process completed by August 31, 2019.

21.3.9 Masque will sign a certification stating that the protocol is complete.

22. The Court shall retain jurisdiction to enforce this Order.[6]

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 7, 2019

---

[6] This Order of Permanent Injunction and Destruction does not prohibit the parties' attorneys from retaining GC2 Works to the extent they are: (i) included in attorney work-product; (ii) necessary for any potential appellate issues prior to the exhaustion of the time for any appeal; (iii) incorporated into any documents filed with the Court in this matter; or (iv) an exhibit to any deposition or used at trial in this matter.